WILLIAM P. BARR
United States Attorney General
BROCK HEATHCOTE
Arizona State Bar No. 014466
Special Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4449
Telephone: (602) 514-7500
Facsimile:  (602) 514-7693
Brock.Heathcote@usdoj.gov
*Attorneys for Defendant United States*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Joseph O'Shaughnessy, *et al.*,<br><br>                    Plaintiffs,<br><br>         v.<br><br>United States of America, *et al.*,<br><br>                    Defendants. | No. 2:20-cv-00268-RFB-EJY<br><br>**MOTION TO DISMISS FIRST AMENDED COMPLAINT (DOC. 11)** |

Defendants United States of America, Nadia Ahmed, Steven Myhre, Daniel Bogden, Mark Brunk, Rand Stover, and Joel Willis (hereafter "Defendants"), through counsel, move the Court to dismiss the First Amended Complaint ("FAC")(Doc. 11) pursuant to Rules 12(b)(1) and (6), Fed. R. Civ. P., for the reasons stated herein.[1]  This motion is supported by the following Memorandum of Points and Authorities.

---

[1] Defendant "Daniel P. Love" is represented by separate counsel.

# I. **TABLE OF CONTENTS**

I.      Table of Contents ................................................................................................. i

II.     Table of Authorities........................................................................................... ii

III.    Memorandum of Points and Authorities .................................................. 1

IV.     The First Claim (42 U.S.C. § 1983) Fails To State A Claim And Was Not Filed Within The Applicable Statute Of Limitations. ....................................................... 6

V.      The Individual Defendants are Entitled to Absolute or Qualified Immunity for Claims Asserted Against Them in Their Individual Capacity (the First and Second Claims) ..................................................................................................... 9

VI.     The Second Claim (*Bivens*) Fails to State a Claim. ................................................. 21

VII.    The Third Claim (Declaratory Relief) Fails to State a Claim. ............................... 36

VIII.   The Fourth Claim (Ftca) Was Filed Prematurely Because Administrative Remedies Were Not Exhausted........................................................................................ 39

IX.     Conclusion.......................................................................................................... 43

X.      Certificate of Service .......................................................................................... 44

## II.  <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                          Page(s)

*Abernathy v. Kingery*, 898 F.2d 156 (9th Cir. 1990) ...................................... 11

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) ........................................... 13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ............................................. 20, 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................ 5-7, 12, 38

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ...................... 15-16

*Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130 (W.D. Wash. 2013) ...................... 36

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) .................................................... 2, 24, 27

*Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005) ...................................... 10

*Boule v. Egbert*, No. 17-106, 2018 U.S. Dist.
    LEXIS 144583 (W.D. Wash. Aug. 24, 2018) ........................................ 33

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................ 15

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ............................................... 11

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ...................................... 18

*Brunoehler v. Tarwater*, 743 F. App'x 740 (9th Cir. 2018) ...................... 26-27

*Buenrostro v. Fajardo*, No. 14-75, 2017 U.S. Dist.
    LEXIS 200002 (E.D. Cal. Dec. 5, 2017) ........................................ 26

*Carlson v. Green*, 446 U.S. 14 (1980) ................................................ 24

*Carvajal v. Domniguez*, 542 F.3d 561 (7th Cir. 2008) ................................ 15

*Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) ................... 5

*Chavez v. Martinez*, 538 U.S. 760 (2003) ............................................ 20

*Cmty. House, Inc. v. City of Boise*, 623 F.3d 945 (9th Cir. 2010) .................... 12

*Collins v. City of Colton*, No. 17-55634, 2018 U.S. App.
    LEXIS 23857 (9th Cir. Aug. 23, 2018) ........................................ 18

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ................................ 24

*Crawford-El v. Britton*, 523 U.S. 574 (1985) ...................................... 33

*Davis v. Passman*, 442 U.S. 228 (1979) ............................................. 24

*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987) .................................. 28

*Denney v. DEA*, 508 F. Supp. 2d 815 (E.D. Cal. 2007) .............................. 16

*Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892 (9th Cir. 2008) ................ 34

ii

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ................................... 16-17, 20-21

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) ........................ 16

*Fry v. Melaragno*, 939 F.2d 832 (9th Cir. 1991) ............................................. 10

*Genzler v. Longanbach*, 410 F.3d 630 (9th Cir. 2005) ............................. 11, 15

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ............................................................ 29

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ................................ 26

*Gonzalez v. Velez*, 864 F.3d 45 (1st Cir. 2017) .............................................. 26

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................ 20

*Graham-Sultz v. Clainos*, 756 F.3d 724 (9th Cir. 2014) ............................. 5, 12

*Gray v. DOJ*, 275 F. App'x. 679 (9th Cir. 2008) ............................................ 15

*Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) ................................... 13

*Hanrahan v. Hampton*, 446 U.S. 754 (1980) ................................................. 39

*Hartman v. Moore*, 547 U.S. 250 (2006) ................................................... 10, 16

*Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994) ............................................... 19

*Hobbs v. City of Long Beach*, 534 F. App'x. 648 (9th Cir. 2013) ................... 18

*Houser v. United States*, 508 F.2d 509 (8th Cir. 1974) .................................. 30

*Ibrahim v. DHS*, 538 F.3d 1250 (2008) ........................................................... 7

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ..................................................... 10

*Jerves v. United States*, 966 F.2d 517 (9th Cir. 1992) ................................... 41

*Jibreel v. Hock Seng Chin*, No. C 13-03470 LB,
    2014 WL 12600278 (N.D. Cal. Apr. 17, 2014) ........................................... 37

*Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983) .......................... 40-41

*Jones v. Hernandez*, No. 16-1986, 2017 U.S. Dist.
    LEXIS 186300 (S.D. Cal. Nov. 9, 2017) ................................................ 33-34

*Krug v. Pellicane*, No. 15-55178, 2017 U.S. App.
    LEXIS 23377 (9th Cir. No. 20, 2017) ....................................................... 26

*Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004) .................... 13

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*,
    No. 3:09-CV-478-RCJ-RAM, 2013 WL 3463192 (D. Nev. July 9, 2013)....... 36

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) ................................... 13

*Malley v. Briggs*, 475 U.S. 335 (1986) ........................................................... 12

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017)....................................... 16, 27

*Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012) ........................... 13

iii

*McCarthy v. Mayo*, 827 F.2d 1310 (9th Cir. 1987) ........................................... 10-11

*McNeil v. United States*, 508 U.S. 106 (1993) .................................................. 41

*Mirmehdi v. United States*, 689 F.3d 975 (2012) .............................................. 30

*Morgan v. United States*, 60 F. App'x 180 (9th Cir. 2003) ............................... 6-7

*Morse v. N. Coast Opps., Inc.*, 118 F.3d 1338 (1997) ........................................ 6

*Mullenix v. Luna*, 136 S. Ct. 305 (2015) ......................................................... 20

*Nautilus Ins. Co. v. Access Med., LLC*, 780 F. App'x 457 (9th Cir. 2019) ................... 36

*Newman v. Cty. of Orange*, 457 F.3d 991 (9th Cir. 2006) ................................... 18

*Osborn v. United States*, 322 F.2d 835 (5th Cir. 1963) ....................................... 31

*Patterson v. Van Arsdel*, 883 F.3d 826 (9th Cir. 2018) ....................................... 10

*Pearson v. Callahan*, 555 U.S. 223 (2009) ....................................................... 12

*Perez v. Seevers*, 869 F.2d 425 (9th Cir. 1989) .............................................. 9, 23

*Pesnell v. United States*, 64 F. App'x 73 (9th Cir. 2003) ................................ 41-42

*Pinkerton v. United States*, 328 U.S. 640 (1946) .............................................. 17

*Plyler v. United States*, 900 F.2d 41 (4th Cir. 1990) ......................................... 42

*Rehberg v. Paulk*, 566 U.S. 356 (2012) ........................................................... 11

*Reichle v. Howards*, 566 U.S. 658 (2012) ....................................................... 25

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ....................................... 13

*S.B. v. County of San Diego*, 864 F.3d 1010 (2017) ........................................... 21

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ............................. 5

*Sanders v. Brown*, 504 F.3d 903 (9th Cir. 2007) ................................................ 5

*Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) ............................................. 38

*Skoog v. Cty. of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) ................................. 16

*Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994) ............................................... 18

*Sparrow v. USPS*, 825 F. Supp. 252 (E.D. Cal. 1993) ......................................... 42

*Thomas v. Matevousian*, No. 17-1592, 2018 U.S. Dist. LEXIS 179459 (E.D. Cal. Oct. 18, 2018) .................................................... 33

*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) .......................................... 34

*United States v. Bingham*, 653 F.3d 983 (9th Cir. 2011) ..................................... 18

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ........................................ 2

*United States v. Bundy*, No. 2:16-CR-46, 2016 WL 3537134 (D. Nev.) ...................... 19

*United States v. Bundy*, No. 98-cv-531 (D. Nev.) ............................................... 1

*United States v. Bundy*, No. 12-cv-804 (D. Nev. July 9, 2013) ........................................ 1

*United States v. Calandra*, 414 U.S. 338 (1974) .............................................. 29

*United States v. Caruto*, 663 F.3d 394 (9th Cir. 2011) .................................... 29

*United States v. Gaudin*, 515 U.S. 506 (1995) ................................................ 29

*United States v. Graham*, 608 F.3d 164 (4th Cir. 2010) ................................... 31

*United States v. Jim*, 865 F.2d 211 (9th Cir. 1989) ..................................... 16-17

*United States v. Mechanik*, 475 U.S. 66 (1986) .............................................. 29

*United States v. Navarro*, 608 F.3d 529 (9th Cir. 2010) ............................. 18-19

*United States v. Orleans*, 425 U.S. 807 (1976) ........................................... 39-40

*United States v. Racing Servs., Inc.*, 580 F.3d 710 (8th Cir. 2009) ............... 31

*United States v. Salerno*, 481 U.S. 739 (1987) ............................................... 30

*United States v. Scott*, 74 F.3d 175 (9th Cir. 1996) ....................................... 17

*United States v. Varig Airlines*, 467 U.S. 797 (1984) ..................................... 40

*United States v. Virginia Erection Corp.*, 335 F.2d 868 (4th Cir. 1964) ....................... 29

*United States v. Washington*, 106 F.3d 1488 (9th Cir. 1997) .......................... 17

*Vacek v. USPS*, 447 F.3d 1248 (9th Cir. 2006) ........................................ 40, 42

*Van Strum v. Lawn*, 940 F.2d 406 (9th Cir. 1991) ......................................... 23

*Vanaman v. Unknown Molinar*, No. 17-222, 2018 U.S. Dist.
    LEXIS 168971 (D. Ariz. Sept. 28, 2018) ..................................................... 33

*Vega v. United States*, 881 F.3d 1146 (2018) ................................................ 33

*Vennes v. An Unknown Number of Unidentified Agents*,
    26 F.3d 1448 (1994) .......................................................................... 32-33

*Wallace v. Kato*, 549 U.S. 384–90 (2007) ................................................ 22-24

*Warren v. DOI BLM*, 724 F.2d 776 (9th Cir. 1984) ........................................ 40

*Watson v. United States*, No. 16- 608, 2017 U.S. Dist.
    LEXIS 104853 (D. Nev. July 6, 2017) ......................................................... 42

*White v. Pauly*, 137 S. Ct. 548 (2017) ............................................................ 20

*Wiens v. U.S. Veterans Hosp.*, No. 17-1672, 2017 U.S. Dist.
    LEXIS 186386 (E.D. Cal. Nov. 7, 2017) ...................................................... 42

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ................................................ 25, 27, 33

*Wilson v. Garcia*, 471 U.S. 261 (1985) ........................................................... 9

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ......................................... 5

*Yorzinski v. Imbert*, 39 F. Supp. 3d 218 (D. Conn. 2014) ............................... 25

*Yousefian v. City of Glendale*, 779 F.3d 1010 (9th Cir. 2015) ........................................ 18

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .............................................................. *passim*

## <u>STATUTES</u>

18 U.S.C. § 922(g) ........................................................................ 38

18 U.S.C. § 924(c)(iii)(D)(ii)(4) ......................................................... 17

18 U.S.C. § 3006A ....................................................................... 31

18 U.S.C. § 3141-51 ..................................................................... 30

18 U.S.C. § 3142(f) ...................................................................... 30

18 U.S.C. § 3142(f)(1) ................................................................... 30

18 U.S.C. § 3142(f)(2) ................................................................... 30

18 U.S.C. § 3142(f)(2)(B) ................................................................ 30

20 U.S.C. 1681 .......................................................................... 39

28 U.S.C. § 515 ......................................................................... 43

28 U.S.C. § 1346(b) ..................................................................... 39

28 U.S.C. § 2073 ........................................................................ 28

28 U.S.C. § 2074 ........................................................................ 28

28 U.S.C. § 2202 ...................................................................... 36-37

28 U.S.C. § 2241 ........................................................................ 30

28 U.S.C. § 2513 ........................................................................ 31

28 U.S.C. § 2513(b) ..................................................................... 31

28 U.S.C. § 2513(e) ..................................................................... 31

28 U.S.C. § 2675(a) ..................................................................... 40

42 U.S.C. § 1681 ........................................................................ 39

42 U.S.C. § 1981(a) ..................................................................... 39

42 U.S.C. § 1982 ........................................................................ 39

42 U.S.C. § 1983 ..................................................................... 6, 9, 39

42 U.S.C. § 1985 ........................................................................ 39

42 U.S.C. § 1986 ........................................................................ 39

42 U.S.C. § 1988 ........................................................................ 39

42 U.S.C. § 2000bb ...................................................................... 39

42 U.S.C. § 2000cc ...................................................................... 39

42 U.S.C. § 2000d ....................................................................... 39

## RULES

Fed. R. App. P. 4(b) ........................................................................ 29

Fed. R. App. P. 9 ............................................................................ 29

Fed. R. Civ. P. 12(b)(1) ........................................................... 1, 5, 39

Fed. R. Civ. P. 12(b)(6) ........................................................... 1, 5, 15

Fed. R. Crim. P. 3, 5.1 .................................................................... 29

Fed. R. Crim. P. 5.1(f) .................................................................... 29

Fed. R. Crim. P. 6-7 ....................................................................... 29

Fed. R. Crim. P. 12 ......................................................................... 29

Fed. R. Crim. P. 12(b)(3) ................................................................ 29

Fed. R. Crim. P. 23 ......................................................................... 29

Fed. R. Crim. P. 23-31 .................................................................... 29

Fed. R. Crim. P. 26.3 ...................................................................... 29

Fed. R. Crim. P. 32-39 .................................................................... 29

Fed. R. Crim. P. 33 ......................................................................... 29

## REGULATIONS

28 C.F.R. § 25.2 ............................................................................. 38

## MISCELLANEOUS

143 Cong. Rec. H7786-04 (Sept. 24, 1997) .................................... 31

Bureau of Alcohol, Tobacco, Firearms and Explosives "Prohibited Persons List,"
https://www.atf.gov/firearms/identify-prohibited-persons .......................................... 38

Department of Homeland Security's Traveler Redress Inquiry Program,
https://www.dhs.gov/dhs-trip ............................................................................ 38

House Rules Committee on Amendment to H.R. 2267,
1997 WL 545756 (Sept. 5, 1997) ................................................. 31

N.R.S. 11.190(4)(e) .......................................................................... 9

Pub. L. No. 105-119, § 617, 111 Stat. 2440 (1997) ......................... 31

S. Rep. No. 98-225, at 18 (1983) ................................................... 30

1
2
3
4
5
6

**MEMORANDUM OF POINTS AND AUTHORITIES**

7    **III.  INTRODUCTION, FACTS, AND STANDARD OF REVIEW**

8        **1.    INTRODUCTION**

9            This suit arises out of a longstanding dispute between nonparty Cliven Bundy

10   (hereafter, "Bundy") and the United States.  On November 3, 1998, a federal court enjoined

11   Bundy from grazing his cattle on federal land.  *United States v. Bundy*, No. 98-cv-531

12   (D. Nev.)  Bundy ignored that order.  Fifteen years later, the court again enjoined Bundy

13   from grazing his cattle on federal land, and "ordered that the United States is entitled to

14   seize and remove to impound any of Bundy's cattle for any future trespasses."  *United*

15   *States v. Bundy*, No. 12-cv-804 (D. Nev. July 9, 2013) (ECF 35, at 5).  In April 2014, as

16   federal officers attempted to seize the cattle, Bundy and hundreds of supporters (including

17   Plaintiffs Dave Bundy, Mel Bundy, O'Shaughnessy and Woods) descended onto the scene.

18   Doc. 11, ¶ 39.  The Ninth Circuit Court of Appeals described the events thus,

19           By April 11, [Bureau of Land Management] BLM had seized approximately
20           400 animals. FBI agents informed BLM that the gathering militia posed a
             significant threat to federal officials and private contractors, and advised
21           BLM to cease the operation. The next day, Bundy and his supporters, then
             estimated to be more than 200 people, assembled to reclaim Bundy's cattle.
22           Clark County Sheriff Doug Gillespie intervened with Bundy and told the
23           group that BLM had called off the impoundment. Bundy made additional
             demands, and when they were not met, told the crowd that it was time to "get
24           those cattle." The crowd then moved to the entrance of the impoundment site,
             located in a dry-wash bed under an Interstate 15 bridge. Armed supporters
25           took up threatening and tactically advantageous positions, pointing guns at
26           BLM officers. Additional supporters arrived, some on horseback, swelling
             Bundy's ranks to more than 400 people. The Bundys demanded that the
27           officers leave. Heavily outnumbered and interested in avoiding bloodshed,
28           federal officials evacuated the impoundment site and left the cattle.

1

*United States v. Bundy*, 968 F.3d 1019, 1024 (9th Cir. 2020).

The incident led to federal charges against Bundy and his supporters on various counts relating to assaulting and threatening federal officers.  The criminal case was trifurcated for case management purposes, into three tiers. Plaintiffs Dave Bundy, Mel Bundy, O'Shaughnessy and Woods were charged and scheduled to be tried in "Tier 2" of the criminal case.  Charges ultimately were dropped against Plaintiffs Dave Bundy, Mel Bundy, O'Shaughnessy and Woods, and they filed this lawsuit.  Joining them in this suit are 13 other plaintiffs who are related to either Dave or Mel Bundy.  Together, they plead a claim under 42 U.S.C. § 1983, several constitutional damages claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), a claim for declaratory relief, and a claim under the Federal Tort Claims Act (FTCA).  This Court should dismiss all claims against the represented federal defendants.  The First Claim (42 U.S.C. § 1983) fails to state a claim and was not filed within the applicable statute of limitations.  The Third Claim (declaratory relief) fails to state a claim, and declaratory relief is not available without an underlying judgment.  The Fourth Claim (FTCA) was filed prematurely and this Court does not have jurisdiction over the claim.

The Second Claim (*Bivens*) also fails to state a claim.  The prosecutor defendants are entitled to absolute immunity in their individual capacities.  All individual Defendants are entitled to absolute immunity for Grand Jury testimony.  Special factors counsel hesitation against creating a new constitutional damages action for wrongful prosecution claims, and the other new contexts alleged by Plaintiffs.  And, even if a remedy existed, the individual Defendants are entitled to qualified immunity in their individual capacities because the FAC is devoid of specific allegations tying them to any of the alleged wrongs and because the complaint otherwise fails to sufficiently plead clearly established constitutional violations.

For all these reasons, this Court should grant the motion to dismiss.

2

## 2.    RELEVANT FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Plaintiffs' 53-page FAC contains a great deal of repetition and conclusory statements masquerading as facts. Additionally, the FAC repeatedly accuses all individual defendants of doing every act, or accuses all individual defendants of directing unknown persons to do acts. For example, the FAC reads, "the GOVERNMENT DEFENDANTS, and others at their direction and control, later brutally arrested, assaulted, beat and kicked Plaintiff Dave Bundy, as Defendants Ahmed, Myhre, Bogden, Love, Stover and Brunk, among others, had planned." Doc. 11, ¶ 60. This kind of non-specific allegation does not fairly apprise the individual Defendants of the allegations against them, and does not comply with pleading standards for *Bivens* cases. *See* discussion below in Qualified Immunity section V(3).

Below are the actual specific facts alleged in the FAC relevant to the claims asserted therein, and the issues raised in this motion to dismiss, stripped of their hyperbole and unsupported conclusions. As done in the FAC, Plaintiffs Dave Bundy, Mel Bundy, O'Shaughnessy and Woods will be referred to as the Tier 2 Plaintiffs.

1.  In November 2017, BLM Special Agent Wooten authored a "whistleblower" memorandum that accused Defendant Love, who, according to Plaintiffs, served as the Special Agent in Charge of the BLM's Gold Butte Cattle Impoundment Operation in April 2014, of numerous investigative improprieties and of covering up exculpatory evidence. Doc. 11, ¶¶ 33, 133.

2.  On March 27, 2014 a BLM agent wrote an email complaining that, "it appears the NV USA is directing tactical decisions, something I've never seen in 19 years of law enforcement.... [I]'m in a unique situation in which I must work with a prosecution agency that is attempt[ing] to direct my enforcement efforts." Doc. 11, ¶¶ 46.

3.  Defendant BLM Agent Brunk reported that he acted as a spotter for a BLM sniper. Defendant FBI Special Agent Willis "corrected" that testimony by having Agent Brunk clarify that he never acted as or said he acted in such a role, and Defendants AUSAs

Bogden, Myhre, and Ahmed (the "defendant prosecutors") informed the Grand Jury that there were no BLM snipers.  Doc. 11, ¶¶ 51, 52.

4.  The "defendants" directed unnamed agents to obtain videographic evidence and testimony from Bundy supporters prior to and during the stand-off through covert means, then defendant prosecutors used it during the prosecution phase in a misleading manner.  Doc. 11, ¶¶ 54-56, 69-74.

5.  Nevada authorities ordered the individual defendants[2] to wind-down their operation and release the Bundy cattle.  The April 12, 2014 stand-off ended when Agents Bogden and Love arranged for a Bundy family member to release the cattle.  The defendant prosecutors then misled the Grand Jury when Prosecutor Bogden questioned and Love testified to the Grand Jury that the Bundy family released the cattle without Agent Love's authority.  Doc. 11, ¶¶ 66-68, 75.

6.  Prosecutor Myhre questioned and Agent Willis falsely testified to the Grand Jury that Dave Bundy was in a restricted area when he was arrested.  Doc. 11, ¶¶ 77-82.

7.  Prosecutor Ahmed questioned and Agent Stover falsely testified to the Grand Jury that Mel Bundy was arrested because he threatened BLM officers; that the threat assessment said the Bundys would react violently; that the BLM did not employ snipers; and that the "First Amendment Zones" were close to the BLM's operations.  Doc. 11, ¶¶ 83-91.

8.  Prosecutors Ahmed, Myhre, Bogden and Agent Willis withheld exculpatory evidence to obtain an indictment and arrest warrants.  On March 3, 2016, the Tier 2 Plaintiffs were arrested.  Thereafter, Defendants withheld evidence from Plaintiffs.  Doc. 11, ¶¶ 92-95, 98.

9.  Prosecutors Ahmed, Myhre and Bogden had no probable cause to arrest, and made false allegations against the Tier 2 Plaintiffs in the indictment.  Doc. 11, ¶¶ 103-119.

---

[2]  The individual Defendants, defined in the FAC as the "GOVERNMENT DEFENDANTS" include Ahmed, Myhre, Bogden, Willis, Love, Stover and Brunk.

10. Prosecutors Ahmed, Myhre and Bogden concealed evidence and made false and misleading statements about the Tier 2 Plaintiffs during the course of their prosecution. Doc. 11, ¶¶ 120-125.

11. During the criminal trial of non-party Tier 1 defendants, Judge Navarro found that the prosecution committed *Brady* violations and withheld exculpatory evidence. She dismissed the case against the non-party Tier 1 defendants with prejudice. Doc. 11, ¶¶ 136.

12. On February 7, 2018 all charges were dismissed against the Tier 2 Plaintiffs with prejudice, and they were released after 23 months in custody. Doc. 11, ¶¶ 137.

**3.    STANDARD OF REVIEW**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint that "lack[s] . . . subject-matter jurisdiction." A Rule 12(b)(1) attack on subject matter jurisdiction "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In a facial challenge, the movant argues that the allegations asserted in the complaint are "insufficient on their face to invoke federal jurisdiction." *Id.* The court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Graham-Sultz v. Clainos*, 756 F.3d 724, 748 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When ruling on a motion to dismiss, courts "take all of the factual allegations in the complaint as true, [they] are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted). "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Finally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor

1  does a complaint suffice if it tenders naked assertion[s] devoid of further factual

2  enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

3  **IV.  THE FIRST CLAIM (42 U.S.C. § 1983) FAILS TO STATE A CLAIM AND
   WAS NOT FILED WITHIN THE APPLICABLE STATUTE OF
   LIMITATIONS.**

4

5  **1.    The First Claim Fails to State a Claim Upon Which Relief May be
        Granted.**

6

7  For their First Claim, Plaintiffs alleged that Ahmed, Myhre, Bogden, Willis, Stover,

8  and Brunk (hereafter, "individual Defendants") acted under color of *Nevada state law* to

9  deprive Plaintiffs of their Constitutional rights, and listed a litany of Constitutional sections

10 and Amendments allegedly violated. Doc. 11, ¶ 144.  Plaintiffs correctly stated the legal

11 standard for pursuing a claim under 42 U.S.C. § 1983 as, "a plaintiff must allege two

12 essential elements: (1) violation of a right secured by the Constitution or laws of the United

13 States, and (2) that the alleged deprivation was committed by a person acting under the

14 color of state law." *Id.*, ¶ 143 (*citing West v. Atkins*, 487 U.S. 42, 48 (1988).[3]

15 Starting with element (2), it is axiomatic that all the individual Defendants were

16 employees of the United States Government, not the State of Nevada, and they acted in the

17 course and scope of their employment.  Doc. 11, ¶¶ 16, 17, 18, 19, 21, 22.  Plaintiffs'

18 allegation of individual capacity acts by the individual Defendants concerns either federal

19 prosecution or acts during the cattle impound operation by federal agencies.  *See* Doc. 1,

20 ¶¶ 43-64.  These were acts in furtherance of the individual Defendants' employment with

21 the United States Departments of Justice and Interior.  None of these acts could fairly be

22 considered conduct on behalf of the State of Nevada, let alone conduct sufficient to create

23 Section 1983 liability.  *Morgan v. United States*, 60 F. App'x 180, 181 (9th Cir. 2003)

24 (district court correctly dismissed Section 1983 claim because federal officers "initiated

25 _____

26 [3] To the extent Plaintiffs may be arguing that these individual defendants could be
   liable under 42 U.S.C. § 1983 for their actions as Federal employees, they cannot.  The
27 Ninth Circuit has stated: "Lest there be any continuing confusion, we take this opportunity
   to remind the Bar that by its very terms, § 1983 precludes liability in federal government
28 actors." *Morse v. N. Coast Opps., Inc.*, 118 F.3d 1338, 1343 (1997).

1   the law enforcement activities at issue" and state officers were working at their "bequest,"

2   thus, even "if they were acting jointly, it was under federal law").

3       Although the Ninth Circuit left open the possibility that federal actors can be subject

4   to Section 1983 liability if they conspire with state actors, that exception only applies

5   "where there is a sufficiently close nexus between the State and the challenged action of

6   the [federal actors] so that the action of the latter may be fairly treated as that of the State

7   itself." *Ibrahim v. DHS*, 538 F.3d 1250, 1257 (2008) (citation omitted).  Even if that limited

8   exception applies here, it could only even theoretically do so with respect to the acts alleged

9   in the FAC to involve Nevada State authorities.

10      The only acts specifically alleged in the FAC to have been done under color of

11  Nevada State law are contained in FAC ¶¶ 66-68 and 146-148, which alleged Defendants

12  Bogden and Love "implemented" the "orders" of Nevada authorities "(i.e., the State

13  action)" to "wind-down their [federal] operation" and for "a Bundy" to open the cattle pen

14  releasing the cattle.  Plaintiffs also alleged that "Defendants Ahmed, Myhre and Bogden"

15  used the fact that a Bundy opened the pen in their federal prosecution, however, using (or

16  misusing) evidence in a federal prosecution does not constitute acting under color of

17  Nevada State law.  *Id.*, ¶ 149.  Plaintiffs did not allege any acts under color of state law by

18  any of the Defendants in the First Claim except by Bogden and Love.  Therefore, the First

19  Claim unquestionably fails to state a claim under the *Iqbal* pleading standard as to all

20  individual Defendants except Bogden and Love and should be dismissed against Ahmed,

21  Myhre, Willis, Stover, and Brunk for that reason.  *Iqbal*, 556 U.S. at 681.[4]

22      The First Claim also fails against Bogden and Love because it does not assert a

23  claim that is plausible on its face.  In spite of the impressive list of Constitutional provisions

---

[4] The FAC allegations are not clear about whether the Nevada authorities directed Bogden and Love to *ensure a Bundy* released the cattle, or just directed them to wind-down the operation and release the cattle.  A reasonable interpretation of Paragraphs 67-68 is that Bogden and Love decided for their own purposes and for the purpose of federal prosecution that a Bundy should release the cattle.  If that is what Plaintiffs intended to say, then they made no allegation of Nevada state action at all, even against Bogden and Love.

in the FAC, the only act alleged under color of state law was when Bogden and Love allegedly wound-down the federal operation, and instructed a member of the Bundy family to release the cattle from the pen.  That member of the Bundy family was not one of the Plaintiffs, it was nonparty Margaret Houston.  Doc. 11, ¶ 68.  There is no plausible inference from Plaintiffs' FAC allegations that either winding-down the operation or the alleged instruction to Margaret Houston violated Plaintiffs' Constitutional rights.

The entire Section 1983 claim is predicated upon the single act of releasing the cattle, which allegedly was the "catalyst giving rise to the fabricated criminal charges," and allowed the Department of Justice to "use that affirmative act to establish" their "fabricated theories of criminal conspiracy, extortion, armed robbery, among other false claims."  Doc. 11, ¶¶ 147-8.  But there is no allegation in the FAC that the act of winding-down the operation and ordering Margaret Houston to release the cattle was itself a violation of Plaintiffs' Constitutional rights, and for good reason—that would be highly implausible.  Plaintiffs' FAC is really about the "fabricated theories" of criminal conspiracy, etc. that they believe violated their Constitutional rights, not about Margaret Houston being told to release the cattle.  Plaintiffs' true allegation is that Bogden and Love violated their Constitutional rights by misusing the fact that Margaret Houston released the cattle in their federal prosecution of the Tier 2 Plaintiffs, not that their Constitutional rights were violated when Bogden and Love allegedly ordered her to do so.  The problem for their Section 1983 claim is that the federal prosecution was not conducted under color of Nevada State law.

To plead a viable Section 1983 claim, Plaintiffs must allege a violation of a Constitutional right that was committed by a person acting under the color of state law.  There is no plausible allegation in the FAC that the single act alleged to be perpetrated under color of state law violated the Constitutional rights of the Plaintiffs.  For this reason, the First Claim fails to state a claim against any of the Defendants, including Bogden and Love, and should be dismissed in its entirety.

1
2

## 2.   The First Claim Was Not Filed Within the Applicable Statute of Limitations Period.

3    The First Claim should also be dismissed in its entirety because the two year statute

4  of limitations to file a lawsuit under 42 U.S.C. § 1983 expired years before the Complaint

5  was filed.  Even assuming for the sake of argument that Bogden and Love's alleged act of

6  "implementing" the "orders" of Nevada authorities constituted acting under the color of

7  state law to violate Plaintiffs' Constitutional rights, which it does not, that act happened on

8  April 12, 2014. Doc. 11, ¶ 51.  Plaintiffs filed their Complaint on February 6, 2020, five

9  years, nine months, and 25 days later. Doc. 1.  The statute of limitations for section 1983

10  claims in Nevada is two years.  *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989); N.R.S.

11  11.190(4)(e); *see Wilson v. Garcia*, 471 U.S. 261 (1985).

12    The First Claim should be dismissed because the statute of limitations expired long

13  before the lawsuit was filed.

14  **V.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE OR QUALIFIED IMMUNITY FOR CLAIMS ASSERTED AGAINST THEM IN THEIR INDIVIDUAL CAPACITY (the First and Second Claims).**

15

16    Of the twelve fact allegations in the FAC itemized above in section III(2) of this

17  motion, one (# 1) solely involves Defendant Love who is not represented by undersigned

18  counsel and is not a subject of this motion to dismiss, and one (# 12) is not an allegation of

19  fault against any defendants.  As discussed in this section, eight of the remaining ten fact

20  allegations involve solely matters protected by absolute immunity for either prosecutorial

21  conduct or Grand Jury testimony, or both.  Only two fact allegations (# 2—as to unnamed

22  Nevada US Attorneys) and (# 8—as to Willis only) may not be subject to absolute

23  immunity but they are protected by qualified immunity, and/or the statute of limitations

24  expired on the claim.[5]

25
26
27
28

---

[5] See sections IV(2) and VI(2) of this motion for statute of limitations discussion.

9

**1.   Defendants Bogden, Myhre, and Ahmed are Entitled to Absolute Prosecutorial Immunity on the First and Second Claims.**

Plaintiffs alleged two constitutional claims (First Claim—Section 1983 and Second Claim—*Bivens*) against Defendants AUSAs Bogden, Myhre, and Ahmed in their individual capacities, arising out of decisions related to their advocacy functions as federal prosecutors.  It has long been understood that prosecutors enjoy absolute immunity for damages suits where they act within the scope of their advocacy functions.  *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  This immunity also applies to U.S. attorneys sued under *Bivens*.  *See Fry v. Melaragno*, 939 F.2d 832, 834, 837 (9th Cir. 1991).  Thus, absolute immunity protects these defendants from civil liability for any decision related to their advocacy functions as federal prosecutors.

Courts generally "take a functional approach when determining whether a given action is protected by prosecutorial immunity."  *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018).  Under that approach, absolute immunity applies to all conduct "intimately associated with the judicial phase of the criminal process."  *Id.* at 830 (quoting *Imbler*, 424 U.S. at 430).  It is well established that "[a]ctions classified as 'advocacy' include initiating a prosecution."  *Id.* (quoting *Imbler*, 424 U.S. at 431).  Accordingly, the Supreme Court and the Ninth Circuit have held that prosecutors are immune from suit for decisions whether to initiate a criminal prosecution.  *See Imbler*, 424 U.S. at 431 (holding "that in initiating a prosecution and in presenting the [government's case], the prosecutor is immune from a civil suit for damages"); *Hartman v. Moore*, 547 U.S. 250, 262-63 (2006) ("A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute."); *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005) ("It is well established that a prosecutor has absolute immunity for the decision to prosecute a particular case.") (citation omitted).

This immunity applies regardless of intent.  *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987) ("The intent of the prosecutor when performing prosecutorial acts plays no

role in the immunity inquiry.").  Thus, prosecutors are entitled to absolute immunity even where it is alleged they "maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial."  *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citation omitted).  This immunity also applies even if it "leave[s] the genuinely wronged defendant without civil redress."  *Id.* (citation omitted).  Based on the foregoing, this Court should dismiss the First Claim (Section 1983) and Second Claim (*Bivens*) against Defendants Bogden, Myhre, and Ahmed in their individual capacities on the basis of absolute immunity.

### 2.    The Individual Defendants are Entitled to Absolute Immunity as to All Claims Based on Grand Jury Testimony.

Plaintiffs asserted Section 1983 and *Bivens* claims based on allegedly fabricated and perjured Grand Jury testimony.  Doc. 11, ¶¶ 50-52, 56, 73-92, 113, 180A, 180C.  On this claim, the individual Defendants are entitled to absolute immunity.  *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983) (witness who testifies at trial enjoys absolute immunity from any § 1983 claim based on his testimony); *Rehberg v. Paulk*, 566 U.S. 356, 367-69 (2012) (holding that grand jury witnesses enjoy the same immunity as witnesses at trial; immunity applies to lay and law enforcement witnesses alike); *see also Abernathy v. Kingery*, 898 F.2d 156 (9th Cir. 1990) (applying *Briscoe* to *Bivens* context; affirming dismissal of *Bivens* claim, holding that "[e]ven if the defendants gave perjured testimony before the grand jury, they are absolutely immune from damages for their testimony").

Moreover, this immunity extends to any allegations that the individual Defendants conspired with other Defendants to present false testimony to the grand jury.  *See Rehberg*, 566 U.S. at 369 (holding that the rule of affording absolute immunity to grand jury witnesses "may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution.")  Plaintiffs' claims against the individual Defendants that are premised on allegations of allegedly fabricated and perjured Grand Jury testimony must be dismissed.

11

### 3. Plaintiffs Fail to State A Claim Because the FAC Fails to Sufficiently Allege Personal Participation by the Individual Defendants, and Defendants Are Entitled to Qualified Immunity Because the FAC Failed to Allege a Clearly Established Constitutional Violation.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Graham-Sultz v. Clainos*, 756 F.3d 724, 748 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Even if a plaintiff has stated a claim, a government official sued in his individual capacity is entitled to qualified immunity, and thus protected from liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). This protection is "ample." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It shields "all but the plainly incompetent or those who knowingly violate the law," *id.*, and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotations omitted).

In addressing qualified immunity, courts answer two questions: first, whether the facts alleged show that the defendant violated a constitutional right, and second, whether that right was clearly established at the time. *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). Courts can decide which question to answer first. *Pearson*, 555 U.S. at 236. If the facts alleged do not show conduct that violated a constitutional right, or if that right was not clearly established at the time of the events alleged, the defendant is immune from suit. *Id.* at 243-45.

Finally, in both *Bivens* and Section 1983 suits, there is no such thing as "vicarious liability." *Iqbal*, 556 U.S. at 676. Thus, absent factual allegations plausibly suggesting each defendant's *direct involvement* in a constitutional violation, that defendant must be dismissed from the suit. *Id.* In this regard, blanket allegations that reference "Defendants" collectively are insufficient to give defendants fair notice of the claims against them.

Courts routinely reject such allegations as insufficient. *See Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (dismissing *Bivens* claim that "fail[ed] to identify what role, if any, each individual defendant had in" the alleged violation).[6]

> **a.    *The FAC Fails to Sufficiently Allege Personal Participation.***

Plaintiffs made the wholly conclusory and non-specific allegation that, "the GOVERNMENT DEFENDANTS' individual-capacity conduct was purposefully directed with a discriminatory purpose against [Plaintiffs] based upon their religious beliefs and status as 'Mormons,' and in express contravention of their equal protection and freedom of expression rights." Doc. 11, ¶ 156. This conclusory allegation does not appear to be supported by any actual factual allegations in the FAC, and it is insufficient to state a claim against any of the Defendants.[7]

The only other allegation of religious bias was that "throughout their incarceration, prison guards, at the direction of the GOVERNMENT DEFENDANTS, interfered with and ridiculed the Tier 2 Plaintiffs' LDS garments." Doc. 11, ¶ 139G. This blanket allegation, which asserts wrongdoing on behalf of non-parties, doesn't even allege personal participation in an alleged Constitutional violation by any of the Defendants, and is also insufficient to state a claim.

On the prosecution-based claims, the complaint contains no specific allegation that Defendants Brunk, Stover, and Willis were responsible for the decision to prosecute Plaintiffs, stating only that they, along with all the other Defendants "obtained an indictment against the Tier 2 Plaintiffs." Doc. 11, ¶ 92. A blanket allegation like this is

---

[6] *See also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (categorical references to all defendants without specifying what each did is improper); *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (en banc) (same); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (same); *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (same); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (rejecting allegation that defendants engaged in misconduct "with no distinction among the fourteen defendants charged").

[7] There is a bald allegation that Defendant Stover exhibited "extreme Anti-Mormon bias and religious hatred against the Bundy family." Doc. 11, ¶ 156. This allegation is wholly unsupported by any factual reference in the FAC.

13

1    insufficient to state a claim against any one defendant.

2        The FAC makes virtually no allegations of constitutional violations solely

3    perpetrated by BLM Special Agent Brunk.  With only one exception, he is either included

4    in the nonspecific moniker "Government Defendants," or in every paragraph of the FAC

5    his name actually appears, lumped into a group of individual Defendants and other

6    unnamed persons without specificity as to what he personally is alleged to have done.  *See*

7    Doc. 11, ¶¶ 36, 48-50, 58-61, 76, 92, 98, 114, 139.  Furthermore, with only one exception,

8    every allegation against Brunk contained in those FAC paragraphs is conclusory.  The

9    single exception—apparently the only actual piece of factual evidence Plaintiffs have

10   involving Brunk—is his testimony to the Grand Jury.  Doc. 11, ¶¶ 51-52.  Defendant

11   Brunk has absolute immunity for his Grand Jury testimony as explained in Section V(2).

12       Likewise, there are few specific allegations against BLM Special Agent Stover.

13   See Doc. 11, ¶¶ 36, 48-50, 58-61, 76, 92, 98, 114, 139.[8]  The exceptions are the allegation

14   that Stover and Love determined that "excessive" tactics were required, *id.* ¶¶ 37, 57; they

15   staged a videotaped confrontation with the Bundy supporters, *id.* ¶¶ 54-55; and that Stover

16   testified falsely to the Grand Jury, *id.* ¶¶ 84-86, 89-91.  The acts alleged in concert with

17   Love during the planning and execution of the Cattle Impoundment operation were not

18   actually alleged to have violated the Plaintiffs' civil rights, and indeed didn't violate their

19   rights in a manner that could possibly give rise to a *Bivens* remedy.  And, Defendant Stover

20   has absolute immunity for his Grand Jury testimony as explained in Section V(2) of this

21   motion above.

22       Defendant Willis is treated similarly.  He is lumped together with the other

23   defendants and unnamed non-parties without specificity several times.  *See* Doc. 11, ¶¶

24   48, 50, 76, 92, 98.  The exceptions are for Grand Jury testimony for which Willis has

25   absolute immunity, *id.* ¶¶ 51-52, 77-83; videotaping the Bundy supporters, *id.* ¶¶ 69-72;

26   and about withholding exculpatory evidence.

27       The FAC does allege that Defendant Willis was aware that exculpatory evidence

28   

---

[8] Note that these are the exact same paragraphs in which Brunk's name appears.

was withheld from the Grand Jury and others during prosecution. But this could not give rise to liability against Defendant Willis (or Brunk or Stover) because the FAC in every instance also alleges in the same breath that the prosecutors were aware of this alleged exculpatory evidence. *See* Doc. 11, ¶¶ 92-94, 98, 111-114. It is well settled that officers discharge their duties under *Brady v. Maryland*, 373 U.S. 83 (1963), when they share exculpatory evidence with the prosecutor. *See Gray v. DOJ*, 275 F. App'x. 679, 681 (9th Cir. 2008) ("We have since clarified the application of *Brady* to law enforcement officers, holding that once the officer turns the evidence over to the prosecutor, her duty is complete and due process satisfied.") (citation omitted); *Carvajal* v. *Domniguez*, 542 F.3d 561, 568 (7th Cir. 2008) (where the prosecutor and officer both know of *Brady* material and fail to disclose it, "it could not logically support a cause of action against [the officer], rather than the prosecutor.") It is also well settled that prosecutors are absolutely immune for any decision whether to disclose *Brady* material. *See Genzler*, 410 F.3d at 637.

In sum, absent factual allegations plausibly suggesting their direct involvement in the alleged constitutional violations, Plaintiffs have failed to state a claim, and their allegations should be dismissed under Rule 12(b)(6). In addition, because Plaintiffs have failed to state a claim, they have not alleged a violation of clearly established statutory or constitutional right, and the individual Defendants are entitled to qualified immunity.

> **b.    *This Court Should Dismiss the Second Claim for Failing to State a Claim for Wrongful Prosecution and Grant Defendants Qualified Immunity Based on Plaintiffs' Failure to Allege a Clearly Established Constitutional Violation.***

Independent of the *Abbasi* question (see *infra* VI(C)), and the personal participation deficiencies, the FAC also fails to sufficiently plead wrongful prosecution-based *Bivens* claims. To state a malicious prosecution claim, a plaintiff must plead "that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation omitted). Where the initiation of prosecution causes one to be detained, the Fourth Amendment is

15

implicated, *see Manuel*, 137 S. Ct. at 914-15; and where the but-for cause of the prosecution is to chill or silence speech, the First Amendment is implicated. *See Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006); *Denney v. DEA*, 508 F. Supp. 2d 815, 830-31 (E.D. Cal. 2007) ("Although previous Ninth Circuit law suggested that plaintiffs need only prove that the retaliatory animus was a 'substantial or motivating factor,' it appears that *Hartman* has elevated the requisite standard to but-for causation.").

In all events, the plaintiff must sufficiently plead as an element of the claim a lack of probable cause. *See Moore*, 547 U.S. at 265-66; *Awabdy*, 368 F.3d 1062, 1066 (9th Cir. 2004).

The Supreme Court recently summarized the probable cause standard:

> To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations and citations omitted). Even where probable cause is lacking, an officer is entitled to qualified immunity if he "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Id.* at 591 (citation omitted). "[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

The Tier 2 Plaintiffs were charged with conspiracy to threaten, assault, and impede a federal officer, use of a firearm during a crime of violence, and aiding and abetting. *See* Doc. 11 ¶ 41. Assault on a federal officer is a general intent crime; the defendant's state of mind is thus irrelevant. *United States v. Jim*, 865 F.2d 211, 212-13 (9th Cir. 1989) (citation omitted). "The only issue would be whether a reasonable man would find that the defendant's actions should have put a federal officer in apprehension of bodily harm."

*Id.* (citation omitted).  To be held liable for using a firearm during a crime of violence, the person need only have "brandished" the firearm, which is statutorily defined to mean to "display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person."  18 U.S.C. § 924(c)(iii)(D)(ii)(4).  Thus, the firearm need not be pointed directly at the victim for criminal liability to attach.  *Id.*; *United States v. Scott*, 74 F.3d 175, 178 (9th Cir. 1996) (simply holding firearm in hand sufficient brandishing).

Finally, these charges were pled along with conspiracy and aiding and abetting allegations, meaning that the Tier 2 Plaintiffs need not have actually committed the substantive offenses themselves for criminal liability to attach.  *See Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946) (explaining elements of criminal conspiracy); *see also United States v. Washington*, 106 F.3d 1488, 1490 (9th Cir. 1997) (defendant held liable for use of firearm where only co-conspirator displayed weapon).

In short, as long as an objectively reasonable person could have believed that any one of the armed Bundy supporters were there to impede law enforcement or place a reasonable officer in apprehension of bodily harm and Plaintiffs provided some assistance, probable cause existed to initiate proceedings against them – even if Plaintiffs themselves did not point a weapon or assault, threaten, or impede a federal officer.   Qualified immunity also allows for reasonable mistakes.  *See Wesby*, 138 S. Ct. at 591.  Thus, unless *every reasonable officer* would have found no probable cause on the facts alleged, qualified immunity applies.  *Id.* at 589.

Here, the Bundy supporters, including Plaintiffs, descended onto the scene heavily armed to protest the legally authorized cattle impoundment operation.  The FAC described the situation as a "powder-keg" that was "escalating out of control" until the federal officers were convinced to leave.  Doc. 11, ¶¶ 65-66.  That is more than sufficient for this Court to find that probable cause existed to charge Plaintiffs for their admitted participation in the standoff.  Plaintiffs allege they were only there to "protest," but their

intent is irrelevant.  As long as their conduct would place a reasonable officer in apprehension of bodily harm, probable cause existed to charge them.  Plaintiffs allege they only acted in self-defense.  But it is well settled that the existence of some evidence suggesting self-defense is an issue for the criminal trier of fact; it does not negate probable cause for the initiation of proceedings.  *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("[The] claim of self-defense apparently created doubt in the minds of the jurors, but probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt.").  That is because once probable cause exists, the Constitution does not require officers to investigate every claim of innocence.  *See Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).

Based on the foregoing, the FAC's allegations alone are sufficient for this Court to find that probable cause existed to initiate proceedings.  But even if not, it is well settled that a grand jury indictment creates a presumption of probable cause.  *Hobbs v. City of Long Beach*, 534 F. App'x. 648, 649 (9th Cir. 2013).  The presumption can only be overcome by specific allegations that the indictment was "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."  *Id.* at 649-50 (quoting *Awabdy*, 368 F.3d at 1067).  "[A] plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment."  *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994); *see also Newman v. Cty. of Orange*, 457 F.3d 991, 995 (9th Cir. 2006).  Inconsistencies in the evidence are also insufficient; instead, a plaintiff must identify knowingly false or fabricated facts that caused the indictment to issue.  *See Collins v. City of Colton*, No. 17-55634, 2018 U.S. App. LEXIS 23857, *4 (9th Cir. Aug. 23, 2018).  Notably, the withholding of exculpatory evidence from the grand jury does not generally overcome the presumption of probable cause because there is no duty to present exculpatory evidence to a grand jury.  *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011) ("[T]he government has no obligation to disclose 'substantial exculpatory evidence' to a grand jury."); *United States v. Navarro*, 608 F.3d 529, 537 (9th Cir. 2010) ("[We] have held that prosecutors have no obligation

18

1   to disclose 'substantial exculpatory evidence' to a grand jury.").  Instead, exculpatory

2   evidence only becomes relevant for purposes of the probable-cause presumption where it

3   completely "obviate[s] probable cause." *See Haupt v. Dillard*, 17 F.3d 285, 290 n.5 (9th

4   Cir. 1994).

5        Here, a grand jury indicted the Tier 2 Plaintiffs creating a presumption of probable

6   cause for their arrest.  Throughout the criminal process, the district court rejected multiple

7   challenges to the indictment and to the continued detention of Bundy's supporters, and

8   denied several motions to acquit, finding that "a rational trier of fact could find [them]

9   guilty of the crimes charged." *United States v. Bundy*, No. 2:16-cr-46 (ECF 2055, at 3).

10  Courts require something more to overcome the presumption of probable cause: either an

11  allegation *with sufficient supporting factual content* that (1) the indictment was induced

12  by knowingly false or fabricated evidence or (2) knowingly withheld exculpatory evidence

13  would have completely obviated the grand jury's probable cause finding.

14       Plaintiffs use the word "fabricated" repeatedly in the FAC as a conclusory

15  accusation against Defendants.  A perusal of the factual allegations, however, reveals there

16  are only a handful of specific allegations of fabrication as described in Section III(2)

17  above.  Even assuming the truth of these allegations, the Tier 2 Plaintiffs' admitted

18  participation in the Bunkerville standoff alone, as described by the Ninth Circuit in Section

19  III(1) above, is sufficient to establish probable cause.  It is difficult to see how Plaintiffs'

20  few and relatively insignificant allegations of fabrication, had any effect considering the

21  overwhelming evidence supporting probable cause.   A brief review of the criminal

22  indictment of Bundy confirms this.  *See United States v. Bundy,* No. 2:16-CR-46, 2016

23  WL 3537134 (D. Nev.)

24       The existence of probable cause should not be in doubt.  But even if it is, Plaintiffs

25  failed to allege specific facts sufficient to overcome the presumption of probable cause

26  created by the grand jury indictment, and their claim should be dismissed on these grounds.

27  In addition, because there was probable cause, Plaintiffs have failed to allege a violation of

28  a clearly established constitutional right, the individual Defendants are entitled to qualified

19

immunity against a malicious prosecution claim.

      **c.**    ***This Court Should Dismiss the Second Claim Against the Individual Defendants for Failing to State a Claim of Excessive Force and Grant Defendants Qualified Immunity Based on Plaintiffs' Failure to Allege a Clearly Established Constitutional Violation.***

Although unclear, the FAC could also be construed to allege that Defendants used excessive force, which would be governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Chavez v. Martinez*, 538 U.S. 760, 773 n.5 (2003). Plaintiffs alleged excessive "tactics" or excessive force a few times in the FAC, as a general reference to the whole operation or to the use of snipers. Doc. 11, ¶¶ 37, 53, 60, 99-100, 133K, 133Q. With the exception of the allegation in paragraph 60 about Dave Bundy's arrest, the allegations of excessive force are conclusory and directed at the Defendants generally. Also, apart from paragraph 60, Plaintiffs do not specify any particular use of force against them directly. And, in paragraph 60, Plaintiffs do not allege the active participation of any of the individual Defendants. *Id.*, ¶ 60 ("the GOVERNMENT DEFENDANTS, and others at their direction and control, later brutally arrested, assaulted, beat and kicked Plaintiff Dave Bundy.") Plaintiffs' allegations not only fail to state a claim against these specific Defendants, which alone is sufficient to dismiss this claim, but they fail to state a clearly established constitutional violation for excessive force. .

Recently the Supreme Court has underscored "the longstanding principle that clearly established law should not be defined at a high level of generality," instead, it "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curium)(internal quotations and citations omitted).[9]

---

[9] "Such specificity is especially important in the Fourth Amendment context because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curium) (internal quotations and citation omitted). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742; *see also Wesby*, 138

The Ninth Circuit has heeded the Supreme Court's call. *See S.B. v. County of San Diego*, 864 F.3d 1010, 1016 (2017) ("[W]e must identify a case where an officer acting under similar circumstances as [the officer here] was held to have violated the Fourth Amendment.")  This as an "exacting standard." *Id.* at 1017.

Since the FAC does not clearly specify what acts by these Defendants constituted excessive force against these Plaintiffs, it seems impossible for this Court to find that the Defendants violated a clearly established constitutional proscription.  Absent any case law clearly establishing that every reasonable official would have understood that the Fourth Amendment prohibits officers from doing whatever it is Plaintiffs think they alleged the Defendants were doing that constituted excessive force, the individual Defendants are entitled to qualified immunity.

## VI.    THE SECOND CLAIM (*BIVENS*) FAILS TO STATE A CLAIM.

### 1.    Plaintiffs Failed to State a Valid *Bivens* Claim For Constitutional and Statutory Violations.

Plaintiffs threw the Constitution at Defendants, alleging dozens of Constitutional and statutory violations they believe stated a *Bivens* claim.  The question for this Court to decide is solely whether a *Bivens* remedy exists for each of the alleged Constitutional and statutory violations.  Within the *Bivens* context, notwithstanding the immunities explained in Section V of this motion, none of Plaintiffs' alleged violations states a claim.  Plaintiffs' claims appear to be summarized in FAC paragraph 139.

The Second Claim purports to assert a *Bivens* claim against the individual Defendants for alleged violations of Plaintiffs First, Second, Fourth, Fifth and Eighth Amendment rights.  Several grounds exist for dismissing these claims.  Specifically, Plaintiffs' *Bivens* allegations, and their deficiencies, are as follows.

First Amendment rights to speech, assembly, and religion: Plaintiffs allege their First Amendment rights were violated by use of a "First Amendment Zone" for protest

---

S. Ct. at 590.

activity and (nonspecific) religious bias against LDS. Doc. 11 ¶¶ 139A and 139G.  There is no *Bivens* remedy for alleged First Amendment violations.

Fourth and Fifth Amendment rights to due process: Plaintiffs allege these rights were violated by wrongful arrest, prosecutorial misconduct and malicious prosecution.  *Id.* ¶ 139C.  There is no *Bivens* remedy as pled for these violations.

The FAC also alleged Fifth Amendment substantive and procedural due process and equal protection violations.  *Id.* ¶ 139D.  Plaintiffs have not stated with any specificity what actions of the individual Defendants allegedly violated these proscriptions other than the alleged placement of the Plaintiffs on a "Prohibited Persons List" which is discussed in section VII of this motion.  *See* id. ¶ 139E.  Aside from the "Prohibited Persons List," this allegation is too vague for Defendants to make a response and should be dismissed for failure to meet the general pleading standard of Rule 8.

The FAC also alleges Eighth Amendment freedom from cruel and unusual punishment.  Plaintiffs appear to allege this right was violated by the fact of their incarceration and by alleged religious bias perpetrated against them in prison by unnamed individuals.  *Id*. ¶¶ 139C and 139G.  The allegations supporting Plaintiffs' Eighth Amendment *Bivens* claim are so far removed from what must be alleged to establish a violation of the Eighth Amendment this claim can be dealt with summarily.  Suing over the fact of incarceration is not an Eighth Amendment claim, it is a common law claim for wrongful arrest or false imprisonment.  The statute of limitations on such a claim runs from the time of arraignment—March 3, 2016 in this case—and expired long before the original complaint was filed here but the damages for continuing injury would theoretically be preserved only by a malicious prosecution claim which is not an Eight Amendment claim.  *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007).  Also, Plaintiffs cannot sue these Defendants for acts perpetrated upon them by unnamed, unidentified prison guards.

Finally, the FAC may be interpreted to allege the violation of Plaintiffs' Second Amendment right to purchase and bear arms.  Plaintiffs allege these rights were violated when they were allegedly placed on a "Prohibited Persons List."  *Id*. ¶ 139B and 139E.

22

However, Plaintiffs do not specifically allege any of the individual Defendants were responsible for putting them on this list. In any case, there is no *Bivens* remedy for alleged Second Amendment violations.

### 2.  The Statute of Limitations Expired as to All *Bivens* Claims Made for Acts Prior to the Stand-off on April 12, 2014.

As an initial, but conclusive, matter, Plaintiffs' *Bivens* claims present statute of limitations issues for the same reasons as Plaintiffs' Section 1983 claim. Like Section 1983 actions, the statute of limitations for *Bivens* actions in Nevada is two years. *See Perez*, 869 F.2d at 426 (Nevada statute of limitations is two years for Section 1983 claims); *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991) (statute of limitations for *Bivens* claims is the same as that for Section 1983 claims). All of the alleged constitutional violations based on actions during the "Cattle Impoundment Operation," and establishment of the "First Amendment Zone" took place more than two years before the original Complaint was filed; those claims are time barred.

### 3.  No *Bivens* Remedy Exists for the Constitutional Violations Alleged by Plaintiffs.

Plaintiffs' *Bivens* claim is premised on violations of numerous alleged constitutional provisions (and thus more accurately described as multiple independent *Bivens* claims), the majority of which the Supreme Court has never recognized as a basis for an implied remedy under *Bivens*. Even where Plaintiffs' claims are premised on constitutional provisions that have previously formed the basis of *Bivens* liability, the circumstances here meaningfully differ from cases in which *Bivens* liability has been recognized. As such, most of Plaintiffs' claims present new contexts for *Bivens* liability. The Supreme Court has counseled hesitation before extending *Bivens* to new contexts, and none of the new contexts presented by Plaintiffs are appropriate for expansion.[10]

---

[10] The First Amendment claims may challenge both prosecution of Plaintiffs, and their arrests and incarceration. However, because Plaintiffs were arrested and incarcerated pursuant to legal process (and not before), all three alleged acts collapse into a single tort for retaliatory prosecution. As the Supreme Court explained in *Wallace v. Kato*, 549 U.S.

In *Bivens*, the Court first recognized an implied cause of action for damages under the Fourth Amendment against federal officials "who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). It did so only after finding no "special factors counselling hesitation." *Bivens*, 403 U.S. at 396. Despite multiple invitations over the years, the Court has only extended *Bivens* twice, the most recent occasion forty years ago. *See Davis v. Passman*, 442 U.S. 228 (1979) (a cause of action exists for gender discrimination pursuant to the equal protection component of the due process clause of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (a cause of action exists for deliberate indifference to an inmate's health care needs under the Eighth Amendment). "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. The Court has indicated "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 1856. That is because "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. Indeed, in the last forty years, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see also Abbasi*, 137 S. Ct. at 1857.

In every *Bivens* case, "[t]he question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857 (internal quotations and citation omitted). "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (internal quotations and citation omitted). "As a result, the Court has urged caution before extending *Bivens* remedies into any new context." *Id.* (internal quotations and citation omitted). Whenever special factors

---

384, 389-90 (2007) (citations omitted): "If there is a false arrest claim, damages for that claim cover the time of detention *up until issuance of process or arraignment*, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."

counsel *any hesitation*, "a *Bivens* remedy will not be available." *Id.*

The Court has refined its special factors analysis into a two-part inquiry. Courts must first determine whether the alleged *Bivens* claim presents a new context. "If the case is different in a meaningful way from previous *Bivens* cases decided by *this* [United States Supreme] *Court*, then the context is new." *Id.* at 1859 (emphasis added). If the case presents a new context, then "there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also Abbasi*, 137 S. Ct. at 1858 (an alternative process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"). In the absence of an alternative process, "a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Id.* (quoting *Bush*, 462 U.S. at 378)). "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Abbasi*, 137 S. Ct. at 1858.

### a.    *The FAC Raises New Contexts for Bivens Purposes.*

The Supreme Court has never recognized a *Bivens* claim for a First or Second Amendment violation. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *see e.g., Yorzinski v. Imbert*, 39 F. Supp. 3d 218, 223 (D. Conn. 2014) ("*Bivens* liability has not been extended to violations of the Second Amendment.") The Court has been quite clear: "a case can present a new context for *Bivens* purposes if it implicates a different constitutional right." *Abbasi*, 137 S. Ct. at 1864. There is no question Plaintiffs' *Bivens* claims premised on alleged violations of the First and Second Amendments raise a new context for *Bivens* liability. Thus, Plaintiffs' allegations respecting alleged First

1    Amendment violations, whether having to do with a "First Amendment Zone" that

2    restricted speech, or with religious freedom, and Second Amendment violations clearly

3    raise new *Bivens* contexts.[11]  *See* Doc. 11, ¶ 58, 86-91, 99, 112, 125, 139A, 156.

4        So too, the Fourth Amendment *Bivens* claim based on malicious prosecution raises

5    a new context.  Doc. 11, ¶ 137C.  While *Bivens* itself involved a Fourth Amendment seizure

6    *in the absence of judicial process*, *i.e.*, a "claim against FBI agents for handcuffing a man

7    in his own home *without a warrant*," *Abbasi.* at 1861 (emphasis added), the Second Claim

8    challenges a different kind of seizure, one *pursuant to criminal process*, *i.e.*, a malicious

9    prosecution claim.  The Supreme Court has never recognized a *Bivens* claim for malicious

10   prosecution.  For *Bivens* purposes, "a modest extension is still an extension," even if the

11   new context has "significant parallels to one of the Court's previous *Bivens* cases" and the

12   differences are "perhaps small."  *Id.* at 1861, 1864, 1865; *see also id*. at 1858 (a context

13   may be considered new "[e]ven though the right and the mechanism of injury [are] the

14   same").  Thus, the context in *Abbasi* (a Fourth Amendment claim related to prison strip

15   searches) was considered new because it was meaningfully different from the context in

16   *Bivens* (a Fourth Amendment claim related to an in-home warrantless search and seizure).

17   *Id.* at 1860; *see also Gonzalez v. Velez*, 864 F.3d 45, 53 & n.3 (1st Cir. 2017) (declining to

18   extend *Bivens* to Fourth Amendment claim challenging search of plaintiff's office after

19   finding the context new).[12]

20

21       [11] Although the Ninth Circuit previously recognized a First Amendment *Bivens*

22   claim, *see Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986), the new context
     inquiry is governed by *Supreme Court* precedent, not Circuit precedent.  *See Buenrostro v.
     Fajardo*, No. 14-75, 2017 U.S. Dist. LEXIS 200002, *7 n.1 (E.D. Cal. Dec. 5, 2017)

23   ("While the Ninth Circuit previously has authorized *Bivens* claims based on the First
     Amendment, [*Abbasi*] states that the proper test involves a consideration of *Bivens* cases

24   decided by the Supreme Court, not by the Courts of Appeals.  Ninth Circuit decisions are
     therefore not controlling.").  Indeed, the Ninth Circuit itself appears to recognize that in

25   light of *Abbasi*, the issue of whether to extend the *Bivens* remedy to First Amendment

26   retaliation claims is now an open one.  *See Krug v. Pellicane*, No. 15-55178, 2017 U.S.

27   App. LEXIS 23377, *1 (9th Cir. No. 20, 2017) ("Assuming without deciding that a *Bivens*
     remedy may be inferred for a First Amendment retaliation claim, *see Abbasi* . . . .").

28
         [12] In *Brunoehler v. Tarwater*, 743 F. App'x 740, 743-44 & n.4 (9th Cir. 2018), a

Moreover, the Supreme Court in *Abbasi* indicated that a claim might present a new context (1) based on the rank of the officers involved; (2) if judicial precedent provides a less meaningful guide for official conduct; or (3) if additional special factors have not been previously considered. *Id.* The law concerning seizures pursuant to criminal process is not clear at this time. Indeed, the Supreme Court recently recognized that the Fourth Amendment governs unreasonable seizures pursuant to criminal process, but declined to determine the elements of any such claim. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 914-15, 920, 922 (2017); *see also id.* at 923 ("What is perhaps most remarkable about the Court's approach is that it entirely ignores the question that we agreed to decide, *i.e.*, whether a claim of malicious prosecution may be brought under the Fourth Amendment.") (Alito, J., dissenting). As for Plaintiffs' *Bivens* claims premised on the Fourth Amendment, The differences between this case and *Bivens* alone indicate that Plaintiffs' claim presents a new context. That the law on malicious prosecution is still in flux removes any lingering doubt. Consequently, the Supreme Court and Ninth Circuit have not yet considered the weighty special factors discussed below.[13]

---

panel majority, over a vigorous dissent, found that a Fourth Amendment "unlawful search and arrest" claim pursuant to a warrant and after a grand jury indictment did not present a new *Bivens* context. However, the plaintiff in that case appears to have raised only a false arrest claim, *not* malicious prosecution claim. In any event, *Brunoehler* is an unpublished, split decision, and with respect, the panel majority erred. As Judge Bea stated in dissent (743 F. App'x at 751):

> The Majority concludes that Brunoehler's arrest was not meaningfully different than Bivens's. The Majority is incorrect, because Bivens was subjected to a warrantless arrest, *see Bivens*, 403 U.S. at 389-90, and Brunoehler was arrested pursuant to a warrant which followed a Grand Jury indictment. The difference is crucial: the officers whom Brunoehler now sues were operating under a different "legal mandate," [*Abbasi*], 137 S. Ct. at 1860, than were the officers in *Bivens*, who executed a warrantless search without probable cause. As a result, per [*Abbasi*], the difference between our case and *Bivens* is "meaningful." *Id.*

[13] In *Wilkie*, the Court considered whether the remedies available through the criminal justice system counted as a special factor and strongly suggested that those avenues for relief might be sufficient reason not to create a new constitutional damages claim for malicious prosecution. 551 U.S. at 551-52 ("For each charge . . . Robbins had some procedure to defend and make good on his position. He took advantage of some opportunities, and let others pass; although he had mixed success, he had the means to be

1    For these reasons, all of the contexts alleged in Plaintiffs Second Claim—whether

2    based on the First or Fourth Amendment[14]—are clearly new and a special factors analysis

3    is required.

### b.   *Special Factors Counsel Hesitation Against Extending Bivens to The New Contexts Presented in Plaintiffs' Bivens Claim.*

6    Here, in each new context Plaintiffs ask the court to recognize a *Bivens* remedy,

7    special factors provide a convincing reason for the Judiciary to stay its hand in creating

8    new implied remedies.  Plaintiffs' Second Claim arises out of the initiation of a criminal

9    prosecution.  Congress has provided several procedures to protect a criminal defendant's

10    constitutional rights, including the grand-jury requirement, probable-cause hearings,

11    preliminary hearings, bond hearings, dismissal motions, jury trials, judgments of acquittal,

12    direct appeals, habeas corpus, and even compensatory schemes.  Congress did so after

13    making critical policy choices about the best way to balance robust prosecutions against

14    wrongful convictions.  These ample protections "amoun[t] to a convincing reason for the

15    Judicial Branch to refrain from providing a new and freestanding remedy in damages."

16    *Abbasi*, 137 S. Ct. at 1858 (citation omitted).

17    The starting point is the Federal Rules of Criminal Procedure.  They are not just

18    rules, but statutorily enacted by Congress and have the force of law.  *See* 28 U.S.C. §§

19    2073, 2074; *see also Deaver v. Seymour*, 822 F.2d 66, 70 n.9 (D.C. Cir. 1987) ("The

20    Federal Rules of Criminal Procedure are a comprehensive set of rules of pleading,

21    practice, and procedure for federal criminal prosecutions" that "have the force of law.")

22    And, they serve many important functions relevant to the claims at issue here.  First, by

---

23    heard.").  But because the plaintiff had challenged many government acts beyond the

24    simple filing of charges, the Court declined to resolve that issue.  *Id.* 551-54.  It instead

25    concluded that the proposed *Bivens* claim – alleging that at some point lawful conduct can

turn into unconstitutional pressure in violation of due process (I find this clause unclear.

26    Was the purported Bivens claim an abstract allegation that lawful process can, at some

point, become unlawful?)– was unworkable as a proposed cause of action, and declined to

27    imply a damages remedy.  *Id.* at 555-61.

28    [14] As noted briefly above Plaintiffs' Second, Fifth and Eighth Amendments *Bivens*
claims are not viable; they also present new contexts.

preserving the grand jury's role and requiring an independent finding of probable cause, the Rules protect "against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974) (citation omitted); *see also United States v. Mechanik*, 475 U.S. 66, 74 (1986); *United States v. Caruto*, 663 F.3d. 394, 398 (9th Cir. 2011); Fed. R. Crim. P. 6-7.   Second, Congress ensured that the accused could challenge defects in the prosecution.   For example, if the government does not adhere to the Criminal Rules, the accused may file a motion raising the violation as a defense, an objection, or a basis for relief.  *See* Fed. R. Crim P. 12(b)(3).  In this regard, Rule 12 specifically affords relief from "selective or vindictive prosecution," "an error in the grand-jury proceeding or preliminary hearing," and the use of evidence illegally obtained.  *See generally* Fed. R. Crim. P. 12; *see also Mechanik*, 475 U.S. at 75 ("courts have consistently employed the remedy of dismissal of the indictment for deviations" from these rules) (O'Connor, J., concurring) (citation omitted).[15]

The Rules also enshrine the constitutional right to trial by jury, another protection against wrongful prosecution.  *See* Fed. R. Crim. P. 23-31; *United States v. Gaudin*, 515 U.S. 506, 510–11 (1995) (jury trials are a necessary protection "against a spirit of oppression" and "great bulwark of [a citizen's] civil and political liberties") (citations omitted).   Congress added procedures that allow for mistrial if the defendant was substantially prejudiced during trial, Fed. R. Crim. P. 23, and to include acquittal at the close of the government's case or notwithstanding a guilty verdict, Fed. R. Crim. P. 26.3, additional post-verdict remedies, Fed. R. Crim. P. 32-39, and even a new trial if the "interest of justice so requires."  Fed. R. Crim. P. 33.  Congress also added appellate remedies to challenge an unlawful detention.  Fed. R. App. P. 4(b), Fed. R. App. P. 9. Congress formulated these procedures "after prolonged, careful and scholarly research." *United States v. Virginia Erection Corp.*, 335 F.2d 868, 870 (4th Cir. 1964).

---

[15] In felony cases initiated by complaint, the defendant is entitled to a timely preliminary hearing.  *See* Fed. R. Crim. P. 3, 5.1; *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).  Absent a finding of probable cause, the "judge *must* dismiss the complaint and discharge the defendant."  Fed. R. Crim. P. 5.1(f) (emphasis added).

Congress also created an alternative existing process for challenging one's detention pursuant to process through the Bail Reform Act.  *See* 18 U.S.C. §§ 3141-51.  That statute carries a presumption *against* confinement and only permits detention in certain cases.  *See* 18 U.S.C. § 3142(f)(1) & (2).  Detention is imposed only after "a full-blown adversary hearing."  *United States v. Salerno*, 481 U.S. 739, 750 (1987).  The government must first "demonstrate probable cause to believe that the charged crime has been committed by the arrestee, but that is not enough."  *Id.*  It must then prove "by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person."  *Id.*  The accused has a right to counsel (which is provided if the accused is indigent) and may testify and present and cross-examine witnesses.  *See* 18 U.S.C. § 3142(f).  There is also an opportunity for further review, including the opportunity to reopen a hearing at any time prior to trial if there is new evidence.  *Id.* at § 3142(f)(2)(B).  The Bail Reform Act, like the Criminal Rules, was the product of careful Congressional deliberation.  *See* S. Rep. No. 98-225, at 18 (1983).  The Supreme Court later upheld the Act as constitutional, noting its "extensive procedural safeguards," Congress's "careful delineation," and the Government's many regulatory interests.  *See Salerno*, 481 U.S. at 751-52.[16]

The Criminal Rules and the Bail Reform Act provide many avenues for challenging one's detention pursuant to criminal process.  But Congress also decided that reasonable

---

[16] Relatedly, the federal *habeas* statutes, 28 U.S.C. § 2241, *et seq.*, establish post-conviction procedures for challenging one's detention.  For example, a prisoner may move to vacate his sentence based on a constitutional violation for which "the claimed error was a fundamental defect which inherently results in a complete miscarriage of justice." *Houser v. United States*, 508 F.2d 509, 512 (8th Cir. 1974) (internal quotations and citation omitted).  This includes "[c]laims of a coerced confession, suppression of helpful evidence by the prosecutor, the Government's knowing use of perjured testimony, or the falsification of a transcript by a prosecutor." *Id.* at 517-18.  *Abbasi* itself recognized habeas as a significant remedy upon emphasizing that "when alternative methods of relief are available, a *Bivens* remedy usually is not." 137 S. Ct. at 1837 (citation omitted).  Even before *Abbasi*, the Ninth Circuit deemed habeas a significant remedy in deciding not to extend *Bivens* to the immigration context, even where the plaintiff alleged his detention was the result of fabricated evidence. *Mirmehdi v. United States*, 689 F.3d 975 (2012).

fees and expenses incurred by Plaintiffs with private counsel may be awarded in certain circumstances. For example, the Hyde Amendment, authorizes a federal court to award a defendant "a reasonable attorney's fee and other litigation expenses" if he is the "prevailing party" and "the position of the United States was vexatious, frivolous, or in bad faith." Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A, historical and statutory notes). Chairman Hyde explained that the bill was intended to remedy against prosecutorial misconduct, including the willful failure to disclose exculpatory evidence. *See* 143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde). The bill sought to strike "the proper balance" of "deter[ing] unjustifiable governmental conduct" without "inhibit[ing] the aggressive prosecution of justifiable cases." Statement of Honorable Henry J. Hyde before House Rules Committee on Amendment to H.R. 2267, 1997 WL 545756 (Sept. 5, 1997). Significantly, Congress deliberately chose *not* to authorize personal liability and instead "made federal prosecutors immune from the tort of malicious prosecution." *Id.*[17]

In short, the criminal-justice system itself is an alternative, existing process through which Congress created numerous procedural safeguards for those wrongfully detained pursuant to process. Where the government acts maliciously and the defendant prevails, Congress provided for fees and costs. Where the convicted defendant proves his innocence, Congress provided for compensation. What Congress did not create is a personal damages remedy against individual Government employees.[18]   That was a

---

[17] Congress also enacted the Unjust Conviction and Imprisonment statute, 28 U.S.C. § 2513, to provide compensation for those wrongfully convicted. *See Osborn v. United States*, 322 F.2d 835, 839 (5th Cir. 1963). A person seeking compensation must present to the Court of Federal Claims a "certificate of innocence" issued by the court that heard the facts leading to the wrongful conviction. 28 U.S.C. § 2513(b); *see also United States v. Graham*, 608 F.3d 164, 169 (4th Cir. 2010); *United States v. Racing Servs., Inc.*, 580 F.3d 710 (8th Cir. 2009). The Court of Federal Claims may award up to $50,000 per year of incarceration or $100,000 per year in capital cases. *See* 28 U.S.C. § 2513(e). Thus, Congress has demonstrated both its ability and its willingness to legislate in this area where it wishes to create a remedy.

[18] The FTCA does provide a civil remedy against the United States in some cases

31

deliberate judgment Congress made after balancing the need for robust prosecutions against the harm of wrongful convictions. This Court should defer to that judgment and decline to create an additional monetary remedy through judicial implication. That Plaintiffs might not have received all of the relief they wanted is of no moment. As the Supreme Court explained:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy.

*Bush*, 462 U.S. at 388.

Understanding this, the Eighth Circuit previously declined to extend *Bivens* to a wrongful-prosecution case arising out of "outrageous" police conduct. *Vennes v. An Unknown Number of Unidentified Agents*, 26 F.3d 1448 (1994). There, the plaintiff brought a *Bivens* suit alleging that officers violated his rights "by coercing and entrapping him into committing [various] crimes, thereby causing 'an illegal indictment' to issue." *Id.* at 1449.[19] The court declined to extend *Bivens*, finding that the plaintiff should have litigated his "allegations of outrageous coercive conduct in the most timely and relevant proceeding, his criminal trial," which is the "process best suited to determining whether the agents in fact violated his due process rights." *Id.* at 1452-53. The court warned that "[e]xpanding *Bivens*" to the criminal-justice context "would have a chilling effect on law enforcement officers and would flood the federal courts with constitutional damage claims by the many criminal defendants who leave the criminal process convinced that they have

---

as well.

[19] Plaintiffs here made the same basic argument that the Defendants' master plan was to goad them into acting unreasonably.

been prosecuted and convicted unfairly." *Id.* at 1452.

Finally, extending *Bivens* to the First Amendment claims is improper.  The Supreme Court has never extended *Bivens* to First Amendment claims, and post-*Abbasi*, the Ninth Circuit and several district courts within this Circuit have refused to do so in various contexts.  *See Vega v. United States*, 881 F.3d 1146, 1153 (2018) (declining to extend *Bivens* to First Amendment access to courts claim); *Thomas v. Matevousian*, No. 17-1592, 2018 U.S. Dist. LEXIS 179459, *16-17 (E.D. Cal. Oct. 18, 2018) (declining to extend *Bivens* to First Amendment retaliation and access to courts claims); *Vanaman v. Unknown Molinar*, No. 17-222, 2018 U.S. Dist. LEXIS 168971, *10-11 (D. Ariz. Sept. 28, 2018) (declining to extend *Bivens* to First Amendment retaliation claim); *Boule v. Egbert*, No. 17-106, 2018 U.S. Dist. LEXIS 144583, *9-11 (W.D. Wash. Aug. 24, 2018) (same); *Jones v. Hernandez*, No. 16-1986, 2017 U.S. Dist. LEXIS 186300, *27-32 (S.D. Cal. Nov. 9, 2017) (same).  That reluctance is with good reason.

In *Wilkie*, the Supreme Court recognized as a special factor the threat that expanding *Bivens* to a new context might "invite an onslaught of *Bivens* actions." *Wilkie,* 551 U.S. at 562.  That concern applies with particular force to First Amendment retaliation claims where "an official's state of mind is easy to allege and hard to disprove." *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1985).  The Court has consistently resisted efforts to embroil the Judiciary in lawsuits over the subjective motive of Executive officials in carrying out official policy.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011) ("[W]e have almost uniformly rejected invitations to probe subjective intent."); *Moss*, 134 S. Ct. at 2070 (declining to infer department-wide subjective intent based on allegations of misconduct by a few).  For these same reasons, retaliation-based claims are a particularly inappropriate subject for non-statutory implied remedies.  As *Abbasi* cautioned, when recognizing a new remedy would open the floodgates, the unusual risk of "burden and demand" on officials is heightened and hesitation against extending *Bivens* is warranted.  137 S. Ct. at 1860; *see also id.* at 1858 (discussing "costs and consequences to the Government itself" in considering new *Bivens* claim); *cf. Jones*, 2017 U.S. Dist. LEXIS 186300, at *29 (applying

33

rationale in declining to extend *Bivens* to a First Amendment claim alleging that officers retaliated against a suspect for cursing).

Those same concerns apply to First Amendment retaliatory prosecution claims given how easy it is to allege that a prosecution was based on some impermissible, retaliatory motive. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) ("There is almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions.")

For all these reasons, this Court should decline the invitation to extend *Bivens* to the new contexts presented by Plaintiffs' Complaint and dismiss the Second Claim with prejudice.

**4.    Plaintiffs' Conspiracy Claim Fails to State a Claim.**

Plaintiffs cited *Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) as the legal basis for a *Bivens* conspiracy claim. Doc. 11, ¶ 160. The *Ting* court held:

> To have an actionable Bivens conspiracy claim, Ting must establish (1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.   A conspiracy to deprive a plaintiff of a civil rights action by lying or concealing evidence might constitute such an actionable deprivation.

*Id.* at 1512.  In *Ting*, the court found there was a factual dispute about the circumstances of the police shooting but there was a lack of evidence of a conspiracy among the officers so the conspiracy claim was dismissed.  *Id.*

Clearly, there can be no *Bivens* conspiracy claim unless the underlying Constitutional right is susceptible to a *Bivens* claim in the first place.  As explained herein, Plaintiffs have not alleged a valid *Bivens* claim against anyone, including the individual Defendants in the first instance so there can be no valid *Bivens* conspiracy claim either.

Even if there was a valid *Bivens* claim, the conspiracy claim would fail.  The alleged conspiracy (i.e., the "express or implied agreement" among the defendants to deprive Plaintiffs of their Constitutional rights) was described in the FAC as the Defendants'

1   "Cattle Impoundment Operation plan," and their alleged "fabrication, destruction and
2   concealment scheme."  Doc. 11, ¶ 160.  It appears from the general tenor of the FAC, that
3   the former "plan" was everything that happened before the Bunkerville standoff on April
4   12, 2014, and the latter "plan" was everything that happened afterwards.  It seems
5   everything the Defendants did was part of a massive conspiracy according to the Plaintiffs.

6   First, the Cattle Impoundment plan did not violate any of these Plaintiffs'
7   Constitutional rights, at least none that are alleged in the FAC.  According to the FAC, the
8   Cattle Impoundment plan was a design to "eliminate ranching operations" and "wage
9   economic and financial warfare against the ranchers by imposing restrictive grazing
10  permits" among other tactics. Doc. 11, ¶¶ 33, 57-59.  Plaintiffs also alleged that Defendants
11  Love and Stover planned to goad the Bundy family into reacting or responding "physically"
12  to justify their own use of force.  Doc. 11, ¶¶ 37, 57, 59.  Plaintiffs have not alleged any
13  Constitutional rights that were violated by these alleged plans.

14  Likewise, Plaintiffs' allegation that the "plan" included placement of snipers near
15  the Bundy ranch was not a Constitutional violation.  Plaintiffs' alleged Constitutional
16  violation with respect to the snipers is that the prosecution did not timely disclose evidence
17  about the presence of the snipers during the prosecution of Bundy, not that the snipers were
18  there in the first instance.  See Doc. 11, ¶¶ 51, 52, 79, 80, 85, 98-100, 112.  In the criminal
19  case, the argument over evidence about snipers was occasioned by Bundy's desire to
20  combat prosecution charges, not that the snipers violated any of his rights.  *Bundy* at 1032
21  ("Had the defendants been able to proffer a basis for genuinely believing that government
22  snipers surrounded the Bundy Ranch, they potentially could have negated the
23  government's scienter theory.  Thus, the defendants contend that the withheld evidence
24  was crucial to defending their case.").  Nor have Plaintiffs alleged any additional facts
25  related to the snipers that would suffice to state a constitutional violation.

26  Therefore, the "Cattle Impoundment Operation plan" cannot be the "express or
27  implied agreement" among the defendants to deprive Plaintiffs of their Constitutional
28  rights, because there was no actual deprivation of those rights resulting from the alleged

35

agreement.  The only other alleged agreement was the alleged "fabrication, destruction and concealment scheme."  Doc. 11, ¶ 160.  But this alleged scheme was part and parcel with the prosecution of the Tier 2 Plaintiffs.  If there is no *Bivens* claim based on the prosecution of those four Plaintiffs, then there can be no *Bivens* conspiracy claim based on the same prosecution.

## VII.    THE THIRD CLAIM (DECLARATORY RELIEF) FAILS TO STATE A CLAIM.

For their Third Claim, Plaintiffs ask the Court to issue an order "restoring" their rights to purchase firearms, and ordering the Defendant United States to remove their names from a "Prohibited Persons List."  Doc. 11, ¶¶ 163-171.  Since the rest of Plaintiffs' FAC is subject to dismissal for the reasons explained herein, Plaintiffs are not entitled to declaratory relief under 28 U.S.C. § 2202 based on the other claims.  *See e.g.*, *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013) (A "court cannot grant declaratory relief in the absence of a substantive cause of action…. The Declaratory Judgment Act creates only a remedy, not a cause of action.")  Section 2202 authorizes a court to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree . . .  after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  *See, e.g.*, *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, No. 3:09-CV-478-RCJ-RAM, 2013 WL 3463192, at *4 (D. Nev. July 9, 2013) (holding that Plaintiff was not entitled to further relief under § 2202 upon concluding that the Ninth Circuit did not award Plaintiff declaratory relief).

The Ninth Circuit has observed that "§ 2202's language is broad and does not seem to impose any stringent pleading requirements."  *Nautilus Ins. Co. v. Access Med., LLC*, 780 F. App'x 457, 459 (9th Cir. 2019).  However, it has also observed that a party's entitlement to further relief is, in part, dependent on the application of relevant underlying substantive law.  *Id.*  (holding that, notwithstanding an award of declaratory judgment to insurer-plaintiff, plaintiff's entitlement to relief under § 2202 "ultimately depends on whether [plaintiff] is entitled to reimbursement under Nevada law.")  Because, as explained

1   below, Plaintiffs here failed to plead a claim under federal law related to their No Fly and
2   "Prohibited Persons List" allegations, their claim for further relief under § 2202 should
3   also be dismissed.

4        The Third Claim itself fails to plead a cause of action for declaratory judgment.
5   Plaintiffs generally alleged they were wrongly placed on, and remain on, a "Prohibited
6   Persons List," which allegedly has the effect of denying them the ability to purchase
7   firearms in violation of their Constitutional rights.  Doc. 11, ¶¶ 40, 139B, 139E, 166, 170.
8   In addition, they alleged that the "Bundy Family" was wrongly placed on the No Fly List.
9   Id. ¶¶ 40, 137.  Plaintiffs did not allege any specific facts supporting either of these
10  conclusory statements.

11       Specifically, Plaintiffs did not allege they have ever been prohibited from flying or
12  traveling, or that their freedom of movement has otherwise been impeded.  Plaintiffs have
13  therefore failed to assert any factual basis to support their claim that they were placed on
14  the No Fly List.  *Cf. Jibreel v. Hock Seng Chin*, No. C 13-03470 LB, 2014 WL 12600278,
15  at *7 (N.D. Cal. Apr. 17, 2014), *report and recommendation adopted*, No. 13-CV-03470-
16  JST, 2014 WL 12617420 (N.D. Cal. May 5, 2014) (plaintiff did not allege "that he tried to
17  fly internationally, and he does not allege any facts that would allow the court to find it
18  likely he is realistically threatened with future injury.")  Indeed, Plaintiffs' Complaint is so
19  lacking in relevant factual details that it appears the No Fly List reference may be an
20  overlooked remnant of Plaintiffs' original Complaint.[20]

21       Furthermore, the Court should require Plaintiffs to exhaust the administrative
22  process pursuant to the Department of Homeland Security's Traveler Redress Inquiry
23
24  _____

25       [20] The original Complaint contained an "Eighth Claim for Relief" that explicitly
26  claimed damages for placement on a "No-fly List" in addition to the claim for relief for
    inability to purchase firearms.  Doc. 1, ¶¶ 242-251.  In the FAC, the firearms claim was
27  modified and retained but the No Fly List claim was dropped.  Doc. 11, ¶¶ 163-171.  The
    No Fly List was mentioned in the body of the original Complaint twice and those mentions
28  may have inadvertently carried into the FAC despite the claim for relief on that basis being
    excised.  *See* Doc. 1, ¶¶ 161, 162i.

Program, before permitting Plaintiffs to assert a No Fly claim.[21]  *See Shearson v. Holder*, 725 F.3d 588, 594 (6th Cir. 2013) ("Shearson should be required to exhaust her administrative procedures by submitting a traveler inquiry form through the Redress Program before she can proceed with this case.")

Neither did Plaintiffs allege facts that they have been prohibited from purchasing, possessing, or otherwise acquiring firearms, either because of failed background checks or for any other reason.  To state a claim for relief, Plaintiffs must make some factual allegation that supports their theory that they have been placed on a "Prohibited Persons List," and that they are harmed thereby.  In the absence of any such allegation, Plaintiffs' allegations are conclusory—and insufficient.  *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.")

The FBI does not maintain a "Prohibited Persons List" that functions to deny Plaintiffs the ability to purchase or acquire firearms, as Plaintiffs allege.  Plaintiffs' allegations about their inclusion on a "Prohibited Persons List," appear to derive from an improper reading of a webpage maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives that summarizes the effect of 18 U.S.C. § 922(g). See https://www.atf.gov/firearms/identify-prohibited-persons (accessed September 2, 2020). Although 18 U.S.C. § 922(g) does make it unlawful for certain categories of persons to ship, transport, receive, or possess firearms or ammunition, the prohibition is statutory. And, while the FBI maintains a record of individuals who fall within § 922(g)'s proscriptions,[22] as Plaintiffs' pointed out, § 922(g)'s terms do not appear to apply to

---

[21] This program serves as a "single point of contact for individuals who have inquiries or seek resolution regarding difficulties they experienced during their travel screening at transportation hubs—like airports—or crossing U.S. borders," to include watch list issues.  See https://www.dhs.gov/dhs-trip (accessed September 2, 2020).

[22] This record is referred to as the NICS Index.  The NICS Index is defined in 28 C.F.R. § 25.2 as "the database, to be managed by the FBI, containing information provided

Plaintiffs. *See* Doc. 11, ¶ 139E.  Because Plaintiffs have alleged no facts supporting their conclusory theory that they are improperly being maintained on such a list, they did not properly plead under *Iqbal* and thus have failed to state a claim upon which relief can be granted.

Plaintiffs' request for relief under 42 U.S.C. § 1988 also fails.  42 U.S.C. § 1988 authorizes a prevailing party to obtain a reasonable attorney's fee in connection with certain actions or proceedings to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of title 42, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or section 12361 of title 34.  The Third Claim of the FAC concerns none of these statutes.  In any event, to obtain entitlement to fees, a plaintiff must prevail on the merits of a substantive issue.  *Hanrahan v. Hampton*, 446 U.S. 754, 758-59 (1980).  Here, Plaintiffs have not even stated a claim for relief.

The Court should dismiss Plaintiffs' Third Claim for failure to state a claim upon which relief can be granted.

## VIII.  THE FOURTH CLAIM (FTCA) WAS FILED PREMATURELY BECAUSE ADMINISTRATIVE REMEDIES WERE NOT EXHAUSTED.

Plaintiffs' Fourth Claim was explicitly brought "[p]ursuant to 28 U.S.C. § 1346(b)" which is the Federal Tort Claims Act (FTCA).  Doc. 11, ¶¶ 172-182.  Because Plaintiffs failed to exhaust administrative remedies before filing their original Complaint, the FAC should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction without granting leave to amend.

The FTCA is a limited waiver of sovereign immunity, providing a remedy against the United States for the torts of its officers and employees while acting within the scope of their employment.  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  Although the

---

by Federal and state agencies about persons prohibited under Federal law from receiving or possessing a firearm."

United States has waived its sovereign immunity through the FTCA, it can only be sued in accordance with the terms of that limited waiver. *Id.* at 814; *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984). The FTCA provides that an "'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted administrative remedies." *Vacek v. USPS*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting 28 U.S.C. § 2675(a)). Thus, "[e]xhaustion of the claims procedures established under the Act is a prerequisite to district court jurisdiction." *Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983). The Ninth Circuit has "repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly…. We are not allowed to proceed in the absence of fulfillment of the conditions merely because dismissal would visit a harsh result upon the plaintiff." *Vacek*, 447 F.3d at 1250 (citations omitted).

The FTCA provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages… unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). In short, "[t]he plaintiff is permitted to sue the United States only after the claim is denied or six months have elapsed without final disposition by the agency." *Warren v. DOI BLM*, 724 F.2d 776, 778 (9th Cir. 1984). Here, instead of waiting until their administrative claim was denied or at least until the six-month period had expired, Plaintiffs filed this suit on February 6, 2020—a mere three days after they filed their administrative claims.[23] The failure to exhaust their administrative remedies before

---

[23] Three days according to the original Complaint filed on February 6, 2020, which alleged, "Plaintiffs submitted an Administrative Claim to the Federal Bureau of Investigation, the Bureau of Land Management and to the United States Department of Justice on or about February 3, 2020." Doc. 1, ¶ 228. Apparently recognizing the folly of this paragraph, the alleged date of service of the Administrative Claim was excised from the FAC, which merely alleged a claim was served. Doc. 11, ¶ 182. Defendant reserves the right to argue in a future motion, should it be necessary, that the Administrative Claim

40

filing their FTCA claims deprives this Court of jurisdiction over them.  *See Johnson*, 704 F.2d at 1442.

Although the six-month period expired on August 3, 2020,[24] filing suit prior to the expiration of the six-months and then simply waiting until that date arrives does not save the FTCA claims from dismissal.  In *McNeil v. United States*, 508 U.S. 106, 107 (1993), the Court addressed "whether such an action may be maintained when the claimant failed to exhaust his administrative remedies prior to filing suit, but did so before substantial progress was made in the litigation."  *Id*.  In other words, *McNeil* addressed the precise issue raised here: what to do when an FTCA lawsuit "[i]s filed too early."  *Id*. at 111.

The Court's answer was unequivocal: by filing suit in federal court before exhausting his administrative remedies, "[the] petitioner failed to heed [the FTCA's] clear statutory command, [and] the District Court properly dismissed his suit."  *Id*. at 113.  The Court recognized the potential harshness of this rule, but noted:

> Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions.  Although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims.  The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command.

*Id*. at 112.  The Court further explained, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  *Id*. at 113 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, (1980)).

*McNeil* requires dismissal here.  *See also Jerves v. United States*, 966 F.2d 517, 518-20 (9th Cir. 1992) (dismissing FTCA claim prematurely filed five months after plaintiff filed administrative claim); *Pesnell v. United States*, 64 F. App'x 73, 74 (9th Cir. 2003)

---

was not timely served on the federal agencies.

[24] Again, assuming the original Complaint was accurate that the Administrative Claims were filed on February 3, 2020. Doc. 1, ¶ 228.

(dismissing FTCA claim prematurely filed two months after plaintiff filed administrative claim); *Wiens v. U.S. Veterans Hosp.*, No. 17-1672, 2017 U.S. Dist. LEXIS 186386, *4-5 (E.D. Cal. Nov. 7, 2017) (dismissing FTCA claim prematurely filed four months after plaintiff filed administrative claim); *Watson v. United States*, No. 16- 608, 2017 U.S. Dist. LEXIS 104853, *10-11 (D. Nev. July 6, 2017) (dismissing FTCA claim prematurely filed 18 days after plaintiff filed administrative claim); *see also Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) ("Since the district court had no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the motion to dismiss until the requisite [six month] period had expired.").

Finally, amendment cannot cure this defect. As one court explained:

> If the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless. Because § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment, but instead, plaintiff must file a new suit. This Court lacks subject matter jurisdiction over the present action, which was commenced before the exhaustion requirement under § 2675(a) was satisfied.

*Sparrow v. USPS*, 825 F. Supp. 252, 255 (E.D. Cal. 1993). This Court should follow the reasoning of Sparrow, particularly in light of the repeated admonitions by the Ninth Circuit that "the exhaustion requirement is jurisdictional in nature and must be interpreted strictly." *Vacek*, 447 F.3d at 1250. This Court should dismiss the Fourth Claim (FTCA) for lack of subject matter jurisdiction without granting leave to amend.

IX.   **CONCLUSION**

For the reasons stated herein, Plaintiffs' FAC against Defendants United States of America, Nadia Ahmed, Steven Myhre, Daniel Bogden, Mark Brunk, Rand Stover, and Joel Willis should be dismissed.

RESPECTFULLY SUBMITTED this 22nd day of September, 2020.

WILLIAM P. BARR
United States Attorney General


*s/ Brock Heathcotte*
BROCK HEATHCOTTE
Special Assistant United States Attorney, Acting Under Authority Conferred by 28 U.S.C. § 515
*Attorneys for Defendants*

43

# X.  <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

Bret O Whipple
Bret Whipple, Law Office of
1100 S. 10th Street
Las Vegas, NV 89104
702 257-9500
Fax: 702 974-4008
Email: admin@justice-law-center.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Craig A. Marquiz
Marquiz Law Office, P.C.
3088 Via Flaminia Court
Henderson, NV 89052
(702) 263-5533
Fax: (702) 263-5532
Email: marquizlaw@cox.net
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

*s/ James Gilmore*
United States Attorney's Office

44