Crane M. Pomerantz, Esq.
Nevada Bar No.: 14103
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile: (702) 360-0000
Email: cpomerantz@sklar-law.com

*Attorneys for Defendant Daniel P. Love*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Joseph O'Shaughnessy, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, *et al.,* <br><br> Defendants. | No. 2:20-cv-00268-RFB-EJY <br><br> **Motion for Joinder to Defendants' Motion To Dismiss First Amended Complaint and Supplemental Briefing** |

Defendant Daniel P. Love ("Love"), by and through undersigned counsel, respectfully joins in, adopts, and incorporates by reference Defendants' Motion to Dismiss First Amended Complaint ("Motion to Dismiss") (Doc. No. 44), filed on September 22, 2020, as though fully set forth herein.

Love respectfully submits that he is situated similarly to defendants Brunk, Stover, and Willis (the "Individual BLM Defendants") and, thus, all of the arguments made on their behalf are applicable to him. In order to facilitate the Court's review of the issues, and to underscore Love's position that the claims against him should be dismissed, he offers the following supplemental argument.

Like the other Individual BLM Defendants, Love's conduct is entitled to qualified immunity, which "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341. Critically, the facts alleged do

not demonstrate that he violated a Constitutional right. *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). Alternatively, the Plaintiffs have not established that those rights he allegedly violated were clearly established at the time. *Id.*

Similarly to Defendant Stover, the First Amended Complaint ("FAC") makes virtually no allegations of constitutional violations against Love individually. First, he is alleged to have participated in the Cattle Impoundment Operation. According to the FAC, Love "coordinated, timed, and orchestrated the arrival of . . . 'contract cowboys' . . . to coincide with a pre-arranged television interview between Cliven Bundy," FAC at ¶ 54, he "secretly filmed the encounter between the Bundys and the BLM's 'contract cowboys,'" *id.* at ¶55, and otherwise engaged in conduct intending to provoke the Bundy family into a physical altercation. *Id.* at ¶¶ 55, 57-59. None of these suggest a violation of Constitutional dimensions. Moreover, the bigger picture should not be ignored: The Cattle Impoundment Operation is not alleged to have, and did not, in fact, violate the Plaintiff's rights in a manner that could give rise to a *Bivens* remedy because it ultimately floundered. Due to the intervention of various state and local officials the government aborted the Cattle Impoundment Operation in order to reduce the obvious tensions that were building in the area. *Id.* at ¶¶ 65-67. No seizure of cattle occurred because Love, and the other Individual BLM Defendants, "evacuated the impoundment site and left the cattle" for the Bundys to reclaim. *United States v. Bundy*, No. 12-cv-804 (D. Nev. July 9, 2013) (ECF 35, at 5); Motion to Dismiss at 1.

The allegations that the "Government Defendants" acted with a discriminatory purpose based on Plaintiffs' religious beliefs also falls short of alleging a Constitutional violation. FAC at ¶ 156. This allegation, which appears to allude to the so-called Wooten memorandum, is insufficient to state a claim against Love. As the Wooten memorandum, which contains a series of unfounded *allegations* by an apparently disgruntled former BLM colleague, is articulated in the FAC, it speaks to general dysfunction at the BLM, *id.* at ¶¶ 133(A), (B), and (G), alleges general bias against the Bundys and religious bias against Mormons, none of which is attributed to the any of the individual defendants, including Love, *id.* at ¶ 133(F), and complains of purportedly

- 2 -

1  unprofessional conduct by Love directly against Wooten, himself, but not against any of the

2  individual Plaintiffs. *Id*. at ¶¶ 133(N) – (Q).[1]

3      Love (and the other Individual BLM Defendants) are also entitled to qualified immunity

4  because the Constitutional rights they are alleged to have violated were not clearly established at

5  the time of their conduct. For a right to be "clearly established," "[t]he contours of the right must

6  be sufficiently clear that a reasonable official would understand that what he is doing violates that

7  right." *Community House, Inc.*, 623 F.3d at 967 (internal citations omitted). This means that the

8  "unlawfulness must be apparent," and the "dispositive inquiry is whether it would be clear to a

9  reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. (quoting

10  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

11      The most recent Supreme Court decision to address qualified immunity held that the

12  "clearly established" right must be defined with exacting specificity. In *City of Escondido v.*

13  *Emmons*, 586 U.S. ___ (2019), a plaintiff sued two police officers and their municipality employer

14  under 42 U.S.C. § 1983 after he was tackled leaving a house from which a domestic violence call

15  had been made. Slip Op. at 2. His Fourth Amendment claim alleged excessive force. *Id*. The

16  district court granted summary judgment in favor of one of the officers, concluding he had

17  qualified immunity because the law did not clearly establish that he could not take down an arrestee

18  under the circumstances presented. *Id*. The Ninth Circuit reversed, but on the relatively spartan

19  grounds that "the right to be free of excessive force was clearly established at the time of the events

20  in question." *Id*. The Supreme Court held that the Ninth Circuit defined the right to be free from

21  excessive force at too high a level of generality:

22

23  _____

[1]      Like Defendant Stover, Love has absolute immunity for his grand jury testimony. *See*
24  *Rehberg v. Paulk*, 566 U.S. 356, 367-69 (2012) (holding that grand jury witnesses enjoy the same
    immunity as witnesses at trial; immunity applies to lay and law enforcement witnesses alike). It
25  bears emphasizing, however, that beyond the overly generalized allegation that *all of the*
    *defendants*, "deliberately, maliciously and intentionally mislead the Grand Jury so that they could
26  falsely obtain indictments against the Tier 2 Plaintiffs," FAC at ¶76, the FAC does not allege that
27  Love actually lied to the grand jury. Paragraph 75 of the FAC alleges that Love truthfully testified
    that he abandoned the Incident Command Post, the effect of which was to release the cattle. *Id*.
28  at ¶75.

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. . . It does not suffice for a court simply to state that an officer may not use unreasonable and excessive force . . .

*Id*. at 4.

According to the Supreme Court, the proper inquiry was whether "clearly established law prohibited the officers from stopping and taking down a man *in these circumstances*." *Id*. at 5 (emphasis added).   Because the Ninth Circuit's inquiry – whether plaintiff had a right to be free from excessive force – was "far too general," the Supreme Court reversed its denial of qualified immunity. *Id*.

Such is the road Plaintiffs go down here.  Paragraph 139 of the FAC lays out a laundry list of Constitutional rights that the Individual Defendants allegedly violated.  They do so, however, at too high a level of generality for the Individual Defendants to have fully appreciated they were violating such rights.  See FAC at ¶ 139(A) (Defendants violated the "Tier 2 Plaintiff's right to assemble together, exercise free speech, and lawfully protest . . . in contravention of the First Amendment to the United States Constitution."); FAC at ¶ 139(B) (Defendants violated the "Tier 2 Plaintiff's right to . . . keep and bear arms as provided for in the Second Amendment to the United States Constitution."); FAC at ¶ 139(C) (Defendants "fabricated indictments, unlawful arrests, rogue detainments, preclusion of bail, false imprisonment and malicious prosecution of the Tier 2 Plaintiffs . . . deprived [them] of their of their life, liberty and property rights, and constituted cruel and unusual punishment in contravention of the Fourth, Fifth and Eighth Amendments to the United States Constitution.")  Plaintiffs weave a complex tale in which a group of federal agents and prosecutors set out years ago to persecute them, via a lawless impoundment based on personal

or religious animus and a misguided federal prosecution in which they were unjustly detained and illegally prosecuted on the basis of fabricated testimony and concealed evidence, even though: (1) the original impoundment operation was initiated pursuant to a lawful court order that had been flouted for many years; (2) the agents engaged in the impoundment operation neglected to use any violence or illegal tactics and, in fact, preserved a spot for protesters to exercise their First Amendment rights; (3) the agents abandoned the operation in the face of a rapidly escalating tensions; (4) a grand jury subsequently returned an indictment based on a finding of probable cause; (5) a magistrate judge independently made detention decisions pursuant to the Bail Reform Act, some of which were appealed to, and upheld by, the district court; and (6) the district court rejected multiple challenges to the Indictment.  Under these circumstances, a reasonable official standing in the place of the Individual BLM Defendants would not have understood that what they were doing violated the many rights they are alleged to have violated.

For all of the reasons set forth herein, and all of the reasons set forth in the Motion to Dismiss, Love respectfully requests that the Court dismiss the FAC.

Dated this 22nd day of September, 2020

Respectfully submitted:

SKLAR WILLIAMS PLLC

Crane M. Pomerantz, Esq.
Nevada Bar No.: 14103
410 South Rampart Blvd., Suite 350
Las Vegas, Nevada 89145
Telephone:  (702) 360-6000
Facsimile:  (702) 360-0000

*Attorneys for Defendant Love*

- 5 -

1

## **CERTIFICATE OF SERVICE**

2

3    I hereby certify that on September 22, 2020, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to all CM/ECF registrants.

5

6    Bret O Whipple
Bret Whipple, Law Office of
7    1100 S. 10th Street
Las Vegas, NV 89104
8    702 257-9500
Fax: 702 974-4008
9    Email: admin@justice-law-center.com
10

11    Craig A. Marquiz
Marquiz Law Office, P.C.
12    3088 Via Flaminia Court
Henderson, NV 89052
13    (702) 263-5533
Fax: (702) 263-5532
14    Email: marquizlaw@cox.net
15

16

Brock Heathcotte
17    Special Assistant U.S. Attorney
Two Renaissance Square
18    40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
19    (602) 514-7500
Fax: (602) 514-7693
20    Email: Brock.Heathcotte@usdoj.gov
21

22

23

*/s/ Terri Scott*
24

An employee of SKLAR WILLIAMS PLLC
25

26

27

28