Marquiz Law Office
Professional Corporation

3088 Via Flaminia Court
Henderson, NV 89052
Phone: (702) 263-5533
Fax: (702) 263-5532
Craig A. Marquiz, Esq.
NV Bar #7437
MarquizLaw@cox.net

Bret O. Whipple, Esq.
NV Bar # 6168
900 E. Charleston Blvd.
Las Vegas, Nevada 89104
Phone: (702) 257-9500
Fax: (702) 974-4008
BretWhipple@gmail.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH O'SHAUGHNESSY, et al. | Case No.:    2:20-cv-00268-RFB-EJY |
| Plaintiffs, | |
| v. | **PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 44) & DEFENDANT LOVE'S JOINDER THERETO (DKT. 46)** |
| UNITED STATES OF AMERICA et al., | |
| Defendants. | |

Plaintiffs Joseph O'Shaughnessy, Jason D. Woods, Mel Bundy and Dave Bundy (hereinafter the "Tier 2 Plaintiffs") and the Bundy Family Members (i.e., Marylynn Bundy, Briana Bundy, Brett Roy Bundy, Maysa Lynn Bundy, Dally Anne Bundy, Bronco Cliven Bundy, Payton Alma Bundy, Peper Bodel Bundy, Montana Bundy, Bentile Bundy, Presly Bundy, Kymber Bundy and Adahlen Bundy), by and through undersigned counsel, respectfully submit their Consolidated Opposition to the Motion to Dismiss filed by the United States of America, Nadia Ahmed, Steven Myhre, Daniel Bogden, Mark Brunk, Rand Stover and Joel Willis (Dkt. 44) and the Joinder thereto by Defendant Daniel Love (Dkt. 46). Plaintiffs' Consolidated Opposition is supported by the accompanying Memorandum of Points and Authorities.

# TABLE OF CONTENTS

Page

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Memorandum of Points and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Introduction & Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Plaintiffs' First Claim (42 U.S.C. § 1983) Is Properly Before This Court
      & Was Timely Filed as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Plaintiffs' § 1983 Claim Properly States A Claim for Relief . . . . . . . . . . . . 4

      B.    Plaintiffs' § 1983 Claim Was Timely Filed . . . . . . . . . . . . . . . . . . . . . . . . .7

III.  The Individual Defendants Are Not Entitled to Either Absolute or Qualified
      Immunity for Their Egregious, Unprivileged Conduct as to Plaintiffs' First
      and Second Claims for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Defendants Bogden, Myhre and Ahmed Are Not Entitled to Absolute
            Prosecutorial Immunity on Plaintiffs' First and Second Claims . . . . . . . . . . 8

      B.    Absolute Immunity Does Not Shield the Government Defendants
            from Their Non-Testimonial / Pre-Grand Jury Conduct . . . . . . . . . . . . . . . . 10

      C.    Plaintiffs' FAC Unequivocally Alleges the Absence of Qualified
            Immunity To Shield the Government Defendants from Their
            Personal Participation in, and Intentional Violation of, Clearly
            Established Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            1.    The Absence of Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    The Government Defendants' Personal Participation . . . . . . . . . . . . . . 13

            3.    Clearly Established Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . 15

IV.   Plaintiffs' Second Claim (*Bivens*) Properly States a Claim for Relief . . . . . . . . . . . . 17

      A.    Plaintiffs' Second Amendment Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.    Plaintiffs' Fourth & Fifth Amendment Claims . . . . . . . . . . . . . . . . . . . . . . 20

      C.    Plaintiffs' Conspiracy Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.    Plaintiffs' Third Claim (Declaratory Relief) Properly States a Claim for
      Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.   Plaintiffs' Fourth Claim (FTCA) Is Properly Before This Court . . . . . . . . . . . . . . . . 25

VII.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Allen v. McCurry*, 449 U.S. 90, 94 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 17, 20

*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) . . . . . . . . . . . . . . . . . 15

*Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985) . . . . . . . . . . . . . . . 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 869 (10th Cir. 1985) . . . . . . 6

*Bisson v. Bank of Am., N.A.*, 919 F.Supp. 2d 1130, 1139 (W.D.Wash. 2013) . . . . . . . . . 23

*Bivens Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, . . . . . . . . 15, 17
    403 U.S. 388, 397 (1971)

*Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) . . . . . . . . . . . . . . . . . 21

*Bradford v. Scherschligt*, 803 F.3d 382, 388-89 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . 20

*Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 12, 17

*Burns v. Reed*, 500 U.S. 478, 494-496 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Callan v. New York Community Bank*, 643 Fed.Appx. 666, 667 (9th Cir. 2016) . . . . . . . 1

*Carlson v. Green*, 446 U.S. 14 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) . . . . . . . . . . . . . . . 12

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61,70 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Davis v. Passman,* 442 U.S. 228 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Dennis v. Sparks*, 449 U.S. 24, 27 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2018 WL 10247483, at *15 . . . . . . . . . . . . . . 13
    (N.D. Cal. Sept. 24, 2018)

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 16

**<u>CASES</u>**                                                                                                        **<u>Page(s)</u>**

*District of Columbia v. Heller*, 554 U.S. 570, 593 (2008) . . . . . . . . . . . . . . . . . . . . . . . .  18

*Dooley v. Reiss*, 736 F.2d 1392, 1994-95 (9th Cir.), *cert. Denied*, . . . . . . . . . . . . . . . . .  22
    469 U.S. 1038 (1984)

*Dyniewicz v. United States*, 742 484, 485 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . .  26

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) . . . . . . . .  4

*Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Foman v. Davis*, 371 U.S. 178, 182 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). . . . . . . . . . . . . . . . .  15

*Fry v. Melaragno*, 939 F.2d 832, 834, 837 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . .  9

*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002) . . . . . . . . 15, 21

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) . . . . . . . . . . . . . . .  3

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Gregory v. City of Louisville*, 444 F. 3d 725, 741 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . 10, 11

*Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Hartman v. Moore*, 547 U.S. 250, 260-61 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Hells Cyn. Preserv. Counsel v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005). . . .  2

*Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Hobbs v. City of Long Beach*, 534 F.Appx. 648, 649 (9th Cir. 2013). . . . . . . . . . . . . . . .  16

*Ibrahim v. DHS*, 538 F.3d 1250, 1257 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Larry's Apartment, LLC*, 249 F.3d 832, 837 (9th Cir. 2001) . . . . . . . . . . . . . . . . .  23

*In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456, at *3 (N.D.Cal. 2019) . . . . . . . . . . .  13

*Isaza v. Trotter*, 2016 WL 1579250 at *2 (D.Nev. 2016) . . . . . . . . . . . . . . . . . . . . . . . .  4

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Jerves v. United States*, 966 F.2d 517, 518-20 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . .  26

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

**CASES**                                                                                                    **Page(s)**

*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Keko v. Hingle*, 318 F.3d 639, 642-44 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lanuza v. Love*, 899 F.3d 1019, 1025-26 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Koerner v. Cox*, 2011 WL 7021182 at *2, *5 (D.Nev. 2011) . . . . . . . . . . . . . . . . . . . . . 11, 13

*Krave Entertainment, LLC v. Liberty Mut. Ins. Co.*, 667 F.Supp.2d 1232, . . . . . . . . . . . . 23
    1237 (D.Nev. 2009)

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, . . . . . . . . . . 3
    507 U.S. 163, 168 (1993)

*LHF Productions, Inc. v. Kabala*, 2017 WL 4801656 at * 6 (D.Nev 2017) . . . . . . . . . . 3

*Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241-42 (9th Cir. 2015) . . . . . . . . . . . . . . 10

*Loeffler v. Frank*, 486 U.S. 549 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Manuel v. City of Joliet*, 137 S.Ct. 911, 917 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

*Mason v. Dept. of Defense*, 821 Fed.Appx. 888, 889 (9th Cir. 2020) . . . . . . . . . . . . . . . 2

*McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 9

*McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McDonald v. Chicago*, 561 U.S. 742, 778 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McNeil v. United States*, 508 U.S. 106, 107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126 (2007) . . . . . . . . . . . . . . . . . . . . 23

*Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Montana v. United States*, 440 U.S. 147, 153 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mooney v. Holohan*, 294 U.S. 103 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 18

*Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1342 (1977) . . . . . . . . . . . . . 5

*Napue v. Illinois*, 360 U.S. 264 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) . . . . . . . . 4

**CASES**                                                                                          **Page(s)**

*Paine v. City of Lompoc*, 265 F.3d 975, 981-82 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . .  10, 11

*Patterson v. United States*, 999 F.Supp.2d 300, 307-08 (D.D.C. 2013) . . . . . . . . . . . . .  17

*Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . .  9

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 20

*Pesnell v. United States*, 64 F.Appx 73, 74 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . .  26

*Phyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . .  26

*Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 21

*Rehberg v. Paulk*, 566 U.S. 356, 367-69 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Rendnell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Richmond  Newspapers, Inc. v. Virginia*, 448 U.S. 555, 594 n. 19 (1980) . . . . . . . . . . .  21

*Reyn's Pasta Bella, LLC v. USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) . . . . . . . .  1

*Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 127, 130 (2d Cir. 1997). . . . . . . . . . .  10, 20

*Roche v. Barclays Bank Delaware*, 2019 WL 4855141 (D.Nev. 2019) . . . . . . . . . . . . . . .  2

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Sherman v. United States*, 356 U.S. 369, 380 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Spurlock v. Satterfield*, 167 F.3d 995, 1001-04 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . .  10

*Strickland ex rel. Strickland v Shalala*, 123 F.3d 863, 866-67 (6th Cir. 1997). . . . . . . . .  6

*Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . .  22

*Tivoli LLC v. Sankey*, 2015 WL 12683801 at * 3 (C.D.Cal. 2015) . . . . . . . . . . . . . . . . . .  13

*United States v. Bundy et al.*, Case No. 2:16-cr-00046-GMN-PAL . . . . . . . . . . . . . . . . . .  1

*United States v. Bundy*, 968 F.3d 1019, 1045 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . .  1

*United States v. Orleans*, 425 U.S. 807, 813 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*United States v. Price*, 383 U.S. 787, 794, n. 7 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*United States v. Struckman*, 611 F.3d 560, (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . .  1

*Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . .  8

**CASES**                                                                        **Page(s)**

*D. L. v. Vassilev*, 858 F.3d 1242, (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Watson v. United States*, 2017 WL 2904263 (D.Nev. 2017) . . . . . . . . . . . . . . . . . . . . . . . 26

*West v. Atkins*, 487 U.S. 42, 48 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Western Radio Services Co. v. U.S. Forrest Service*, 578 F.3d 1116, 1119 . . . . . . . . . . . 15, 17,
    (9th Cir. 2009)                                                                       18

*Wiens v. U.S. Veterans Hosp.*, No. 17-1672, 2017 U.S. Dist. LEXIS 186386 . . . . . . . . . 26
    *4-5 (E.D. Cal. Nov. 7, 2017)

*Wilkie v. Robbins*, 551 U.S. 537, 561-562 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Valdez-Lopez v. Chertoff*, 656 F.3d 851, 855-58 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . 26

*Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Vincent v. Trend Western Technical Corp.*, 828 F.2d 563 (9th Cir. 1987) . . . . . . . . . . . 5

*Zahrey v. Coffey*, 221 F.3d 342, 255 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Ziglar v. Abbassi*, 137 S.Ct. 1843, 1857-58 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

**STATUTES**

NRS 11.190(4)(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. ¶ 1346(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 2201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 2401(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 2671 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 2679(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 2679(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

**RULES**

Fed.R.Civ.P. 8(a)(2)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Civ.P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **Introduction & Standard of Review**

In a transparent attempt to rewrite history while cavalierly disregarding the egregiousness of their conduct in the Underlying Action,[1] the United States and the Government Defendants[2] (collectively "Defendants") baldly attempt to refocus the discussion into a self-serving justification for their actions against Cliven Bundy (the father of Tier 2 Plaintiffs Mel Bundy and Dave Bundy).[3]  The Defendants, however, need look no further than the law of this case and the binding Judgment which prohibits them from challenging or otherwise denying their "***flagrant prosecutorial misconduct***," their "***outrageous conduct, amounting to a due process violation***" and a "***reckless disregard for [their] Constitution[al] obligations***" with respect to the Tier 2 Plaintiffs' and the Bundy Family Members' affirmative claims for relief. *See* FAC (Dkt. 11) at ¶ 136 generally, and ¶¶ W, X and AA specifically.[4]  Notably, after BLM Special Agent Larry

---

[1]    *See* Plaintiffs' First Amended Complaint ("FAC") (Dkt. 11) at ¶ 7 (*United States v. Bundy et al.*, Case No. 2:16-cr-00046-GMN-PAL ("Underlying Action") - a sham proceeding which wrongfully forced the Tier 2 Plaintiffs to endure twenty-three (23) months of incarceration and monitoring, mostly at a sweltering federal-contractor prison in Pahrump, Nevada, and which caused severe emotional, physical, mental, occupational and financial distress for the Tier 2 Plaintiffs and the Bundy Family Members - damages and injuries which continue to this day; *see also* Statement of the Case, *Id.* at ¶¶ 27 - 139.

[2]    Consistent with Plaintiffs' FAC, Defendants Nadia Ahmed, Steven Myhre, Daniel Bogden, Mark Brunk, Rand Stover, Joel Willis and Daniel Love shall hereinafter collectively be referred to as the "Government Defendants."

[3]    Notably, on August 6, 2020 (more than 45 days before the Defendants' Motion to Dismiss and Joinder were filed), the Ninth Circuit Court of Appeals affirmed Judge Navarro's dismissal of the indictment against Cliven Bundy and the other Tier 1 Defendants for the government's *Brady* violations. *United States v. Bundy*, 968 F.3d 1019, 1045 (9th Cir. 2020) (holding "[t]he district court can dismiss an indictment under is supervisory powers '(1) to implement a remedy for the violation of a recognized statutory or constitutional right, (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury, and (3) to deter future illegal conduct.'" [*citing United States v.] Struckman*, 611 F.3d [560,] [(9th Cir. 2010)].

[4]    *See also* Transcript of Proceedings dated January 8, 2018 in *United States v. Bundy*, Case No. 2:16-cr-046 (Dkt. 3122). *See Callan v. New York Community Bank*, 643 Fed.Appx. 666, 667 (9th Cir. 2016) (claims barred by doctrine of res judicata) (*quoting Reyn's Pasta Bella, LLC v. USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

Wooten's "Whistleblower Complaint" was uncovered and the egregiousness of the Defendants' conspiracy was on the heels of being exposed,[5] the United States voluntarily moved to dismiss, with prejudice, their fabricated claims against the Tier 2 Plaintiffs on February 7, 2018. *Id.* at ¶ 137; *see also* Motion to Dismiss Superseding Indictment from the Underlying Action (Dkt. 3178).  That same day, the District Court's Order Granting the United States' Motion was entered. *Id.*; *see also* Order from the Underlying Action (Dkt. 3179).  That Order, a final judgment on the merits,[6] prohibits the United States and all those acting on its behalf in the Underlying Action (i.e., the Government Defendants here) from re-litigating or challenging those matters that were or otherwise could have been litigated in the Underlying Action.[7]

As a general rule, "[d]istrict courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss." *Roche v. Barclays Bank Delaware*, 2019 WL 4855141 (D.Nev. 2019).  "The court must first accept as true all well-pled factual allegations [in the complaint], recognizing that legal conclusions are not entitled to the assumption of truth." *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  "The court must then consider whether the well-pled factual allegations state a plausible claim for relief." *Id.* "A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.*  In particular, "a

---

[5]    *See* FAC (Dkt. 11) at ¶¶ 126 - 136.

[6]    *See Mason v. Dept. of Defense*, 821 Fed.Appx. 888, 889 (9th Cir. 2020) (*citing Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) (dismissal with prejudice is a final judgment on the merits); *see also Hells Cyn. Preserv. Counsel v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("'[F]inal judgment in the merits' is synonymous with 'dismissal with prejudice.'")

[7]    "The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (*citing Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)).  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* (*citing Montana v. United States*, 440 U.S. 147, 153 (1979)).  "[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* (*citing Montana*, 440 U.S. at 153-154).

1  complaint must make direct or inferential allegations about 'all the material elements necessary

2  to sustain recovery under some viable legal theory.'" *LHF Productions, Inc. v. Kabala*, 2017 WL

3  4801656 at * 6 (D.Nev 2017) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)).

4      In determining whether a pleading states a claim upon which relief can be granted, the

5  Court should bear in mind that the Federal Rules have a "relaxed notice pleading standard" for

6  claims. *Twombly*, 550 U.S. at 575.  A complaint need only set forth "'a short and plain statement

7  of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the

8  grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence &*

9  *Coordination Unit*, 507 U.S. 163, 168 (1993) (*quoting Conley v. Gibson*, 355 U.S. 41, 47

10 (1957)); *see also* Fed.R.Civ.P. 8(a)(2)-(3) ("a short and plain statement of the claim showing that

11 the pleader is entitled to relief," and "a demand for the relief sought").  The liberal pleading

12 standard of the Federal Rules "contains 'a powerful presumption against rejecting pleadings for

13 failure to state a claim'." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997)

14 (*quoting Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)).  "The issue is not

15 whether the plaintiff ultimately will prevail but whether he is entitled to offer evidence in support

16 of his claims." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (*quoting Scheuer v. Rhodes*,

17 416 U.S. 232, 236 (1974)).

18      Consequently, the court should not grant a motion to dismiss "for failure to state a claim

19 unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim

20 which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *see also Hicks v. Small*, 69 F.3d

21 967, 969 (9th Cir. 1995).  Further, where a complaint can be amended to state a claim for relief,

22 leave to amend, rather than dismissal, is the preferred remedy.[8]

23 _____

24      [8]      To the extent the Court believes that factual averments necessary to support
   Plaintiffs' affirmative claims are missing or otherwise inadequate, Plaintiffs respectfully request
25 leave of Court to provide same.  In this regard, "[l]eave [to amend] shall be freely given when
   justice so requires." Fed.R.Civ.P. 15(a).  "In the absence of any apparent or declared reason –
26 such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to
   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by
27 virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as
   the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Notably, "the
28 purpose of pleading is to facilitate a proper decision on the merits.'" *Id*. at 181-82 (*quoting
   Conley*, 355 U.S. at 48).  The strong policy permitting amendment is to be applied with "extreme

1    Application of the foregoing standard here unequivocally confirms that Plaintiffs'

2  affirmative claims were all timely filed; they validly set forth claims for which relief can be

3  granted; and all such claims are properly before this Court as a matter of law. Defendants Motion

4  (Dkt. 44) and Joinder (Dkt. 46), therefore, should be summarily denied as a matter of law.

**II.    Plaintiffs' First Claim (42 U.S.C. § 1983) Is Properly Before This Court & Was Timely Filed as a Matter of Law**

**A.    Plaintiffs' § 1983 Claim Properly States A Claim for Relief**

8    "Pursuant to 42 U.S.C. § 1983, persons who, acting under color of state law,

9  deprive another of rights guaranteed under the Constitution are accountable for same." FAC at

10  ¶ 141 (*citing Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  "Although 'Section 1983 does not

11  create any substantive rights,' it serves as 'the vehicle whereby plaintiffs can challenge actions by

12  governmental officials.'" *Id.* at ¶ 142 (*citing Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002)).

13  Therefore, "[t]o state a claim under 42 U.S.C. 1983, a plaintiff must allege two essential

14  elements:  (1) violation of a right secured by the Constitution or laws of the United States, and

15  (2) that the alleged deprivation was committed by a person acting under color of state law." *Id.* at

16  ¶ 143 (*citing West v. Atkins*, 487 U.S. 42, 48 (1988)).  While it is true that "Section 1983 does not

17  provide a cause of action against federal officers acting under color of federal law,"[9] a § 1983

18  action is proper when, as here, *federal officers act under color of state law*.

19    "The question of whether a person who allegedly caused a constitutional injury

20  was acting under color of state law is a factual determination." *Isaza v. Trotter*, 2016 WL

21  1579250 at *2 (D.Nev. 2016).  Notably, "there is no rigid formula for measuring state action for

22  purposes of section 1983 liability[;] [r]ather, it is a process of 'sifting facts and weighing

23  circumstances' which must lead [a court] to a correct determination."*McDade v. West*, 223 F.3d

24  1135, 1139 (9th Cir. 2000).  "In cases under § 1983, 'under color' of law has consistently been

25  treated as the same thing as the 'state action' required under the Fourteenth Amendment."

26  ─────────────

27  liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*quoting Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

28

[9]    *Morgan v. U.S.*, 60 Fed.Appx. 180, 181 (9th Cir. 2003)

*Rendnell-Baker v. Kohn*,[10] 457 U.S. 830, 838 (1982) (*quoting United States v. Price*, 383 U.S. 787, 794, n. 7 (1966)).  "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: *is the alleged infringement of federal rights "fairly attributable to the State?"* Id.* (*quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)) (Emphasis Added).

        Here, the United States and the Government Defendants do not contest that: (a) the former Governor of Nevada (Brian Sandoval), former Clark County Sheriff (Doug Gillespie) or Assistant Clark County Sheriff (Joe Lombardo) were, at the time, duly authorized representatives of the State of Nevada; (b) these State representatives intervened into, and took control of, the Cattle Impoundment Operation due to increased political pressure, public outrage and to de-escalate the scene; (c) these State representatives issued Orders to the United States and Government Defendants' to wind-down their Operation and to release the Bundy family's cows from the cattle pen; (d) under color of Nevada law, they formulated a plan to ensure that "a Bundy," if not Cliven Bundy himself, would pull the pins from the cattle pens so that the DOJ could use that affirmative act to establish the Defendants' fabricated theories of criminal conspiracy, extortion, armed robbery, among other false claims, against the and Tier 2 Plaintiffs; or that (e) the Government Defendants implemented those orders / directives. FAC (Dkt. 11) at ¶¶ 65-68.  Instead, the Defendants baldly contend that if "federal officers 'initiate the law enforcement activities at issue' and state officers were working at their 'bequest,' ... they were acting jointly, [and] under federal law.'" Motion to Dismiss (Dkt. 44) at 6:23 to 7:02.  In advancing this position, however, the Defendants' expressly ignore controlling precedent directly holding to the contrary.  In particular, as the Supreme Court has expressly declared, "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State[;] [i]t is enough that he is a willful participant in joint action with the State or its

_____

        [10]      "Although *Rendell-Baker* involved a § 1983 challenge to the actions of a private entity operating under color of State law, [the Ninth Circuit has] held that the standard for determining te existence of federal government action can be no broader than the standard applicable to State action under § 1983." *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1342 (1977) (*citing Vincent v. Trend Western Technical Corp.*, 828 F.2d 563 (9th Cir. 1987)).

agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Here, the Government Defendants were not acting pursuant to federal law; they were acting in furtherance of the Nevada State representatives' directives issued under Nevada State law to wind down the Cattle Impound Operation and release the Bundy family's cows from the cattle pen, and their conspired plan to ensure that "a Bundy," if not Cliven Bundy himself, would pull the pins from the cattle pens so that the DOJ could use that affirmative act to establish the Government Defendants' fabricated criminal charges against the Bundy defendants and the Tier 2 Plaintiffs. Therefore, because there irrefutably was "a sufficiently close nexus between the State and the challenged action of the [federal actors] ... the action of the latter may be fairly treated as that of the State itself" and § 1983 liability found as a matter of law. *Ibrahim v. DHS*, 538 F.3d 1250, 1257 (2008); *see also Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 869 (10th Cir. 1985) ("[f]ederal officers can act under color of state law when they 'conspire with state officials to infringe a protected constitutional right.'"); *Strickland ex rel. Strickland v Shalala*, 123 F.3d 863, 866-67 (6th Cir. 1997).

Defendants, in a distorted circular analysis regarding Margaret Houston's role in releasing the cattle, cavalierly ignore that the pin removal / cattle release acts (conduct directed and performed under color of Nevada law) served as the catalyst from which all of the Defendants' fabricated criminal theories against the Tier 2 Plaintiffs originated. Defendants also ignore that, the ongoing / continuing nature of their egregious individualized, unprivileged and co-conspiratorial conduct deprived Plaintiffs' of their federal and state Constitutional and statutory rights and for that conduct, the Government Defendants are individually liable[11] -. *See* FAC (Dkt. 11) at ¶¶ 138-139. For example:

---

[11]    *See e.g.*, FAC (Dkt. 11) at ¶¶ 46, 49 - 50, 53, 59, 65 - 73, 76, 81, and 84 - 86. Notably, when, as here, a claim for unlawful pretrial detention exists in conjunction with claims of fabricated evidence leading to false arrests and rogue indictments, a valid § 1983 claim based upon a Fourth Amendment "deprivation of liberty" is properly stated. *Manuel v. City of Joliet*, 137 S.Ct. 911, 917 (2017) ("Our holding - that the Fourth Amendment governs a claim for unlawful pretrial detention ... addresses ... the threshold inquiry in a § 1983 suit, which requires courts to 'identify the specific constitutional right' at issue." *Albright* [*v. Oliver*,] 510 U.S. [266] at 271 [(1994)]).

40.    "Although Plaintiffs Dave Bundy, Mel Bundy, O'Shaughnessy and Woods did not engage in any wrongful conduct, they, nevertheless, were:  wrongfully arrested, detained, imprisoned and in-custody for twenty-three (23) months, mostly in federally-contracted prisons, including, without limitation, a prison in Pahrump, Nevada (i.e., before being summarily released from custody based upon the United States own pre-trial motion and judicially-determined wrongdoings, including, without limitation, prosecutorial misconduct, the Government Defendants' knowing and intentional use of fabricated evidence to wrongfully arrest, detain and imprison the Tier 2 Plaintiffs, and their knowing and intentional failure to disclose extensive exculpatory evidence memorializing same); wrongfully separated from their families, friends and loved ones; forced to endure the Government Defendants' rogue prosecution based upon fabricated charges for crimes they did not commit; and egregiously placed them and the Bundy Family on the "No Fly List" along with precluding Plaintiffs from purchasing firearms based upon the Government Defendants' designation of them as "domestic terrorists."

41.    "Notably, Plaintiffs Dave Bundy, Mel Bundy, O'Shaughnessy and Woods were falsely indicted in the Underlying Action on sixteen (16) criminal counts, including, without limitation, conspiracy, conspiracy to impede federal officers, assaulting, threatening, extorting, and obstructing federal officers, and four (4) counts of using firearms in crimes of violence resulting from a 'standoff' with agents of the BLM and other federal agencies near Bunkerville, Nevada in connection with the Government Defendants' Cattle Impoundment Operation."

42.    "During that same period of time, Plaintiffs Marylynn Bundy and Briana Bundy were harassed, targeted, repeatedly followed and instigated by the Government Defendants and other agents / officers of the aforementioned federal agencies; and they, along with their children, were forced to endure, among other things: stress and mental, physical and emotional anguish; loss of consortium resulting from the Government Defendants' egregious imprisonment of Plaintiffs Dave Bundy and Mel Bundy; the inability for their family to freely practice their faith and attend weekly family worship services / other church events – tenants of the LDS faith; and financial, occupational and reputational harm as a result of the Government Defendants' egregious branding and characterization of Plaintiffs as 'domestic terrorists.'"

Based upon the foregoing, Plaintiffs have validly stated a § 1983 claim by alleging:

(1) violations of rights secured by the Constitution or laws of the United States (*See* Discussion

in § III.C.3 below), and (2) that the deprivation thereof was committed by a person acting under

color of state law.  As such, Defendants' Motion and Joinder thereto are without merit and

should be summarily denied.

**B.    <u>Plaintiffs' § 1983 Claim Was Timely Filed</u>**

Equally unavailing is Defendants' argument that Plaintiffs § 1983 claim was filed

untimely. *See* Motion to Dismiss (Dkt. 44) at 9:1-13.  Notably, in advancing this argument, the

Defendants materially mislead the Court regarding the pertinent trigger / accrual date for

purposes of Plaintiffs' § 1983 claim.   While it is true that, the applicable statute of limitations in

Nevada for a § 1983 claim is two (2) years,[12] the two (2) year statute of limitations does not begin to run (i.e., a claim is not deemed to have accrued) until the Underlying Action was concluded in the Tier 2 Plaintiffs' favor.  Consequently, in this case, the relevant statute of limitations trigger for purposes of Plaintiffs' § 1983 claim was the District Court's Order dismissing the Underlying Action as to the Tier 2 Plaintiffs with prejudice on February 7, 2018.[13]  Thus, since Plaintiffs' initial Complaint in this action was filed on February 6, 2020 (within Nevada's two (2) year statutory period for § 1983 claims), Plaintiffs' § 1983 Claim was timely filed as a matter of law.

### III.    The Individual Defendants Are Not Entitled to Either Absolute or Qualified Immunity for Their Egregious, Unprivileged Conduct as to Plaintiffs' First and Second Claims for Relief

The Defendants also erroneously suggest that the Government Defendants are immune from their abhorrent and unprivileged investigatory (i.e., non-advocate) conduct - conduct performed by the Government Defendants with knowing, intentional and wilful disregard of the Plaintiffs' well-established Constitutional rights.  As detailed below, the Government Defendants are not entitled to either absolute or qualified immunity as a matter of law.

#### A.    Defendants Bogden, Myhre and Ahmed Are Not Entitled to Absolute Prosecutorial Immunity on Plaintiffs' First and Second Claims

As detailed in Plaintiffs' FAC, "federal prosecutors, as advocates, normally enjoy near absolute immunity from lawsuits over their conduct," including, without limitation, § 1983 and *Bivens* actions.[14] FAC (Dkt. 11) at ¶ 44; *see also Imbler v. Pachtman*, 424 U.S. 409, 427

---

[12]    *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985) (applicable statute of limitations for a § 1983 claim is the limitations period for a personal injury action); *see also Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991) (statute of limitations for B*ivens* claims is the same as that for § 1983 claims); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (Nevada's residual statute of limitations for personal injury actions, NRS 11.190(4)(e), is the statute applicable statute of limitations applicable to § 1983 actions in Nevada).

[13]    *See* Order (Dkt. 3179) from Underlying Action (Filed 02/07/18).

[14]    "The Supreme Court has established several principles for analyzing a prosecutor's claim of absolute immunity." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).  "First, immunity decisions are based on 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (*quoting Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).  "'[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor.'" *Id.* (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

1  (1976); *Fry v. Melaragno*, 939 F.2d 832, 834, 837 (9th Cir. 1991).  When, as here, however,

2  "prosecutors abandon the confines of their offices and assume the role of an investigator, they are

3  exposed to the same liability which attaches to any officer or investigator for performing that

4  investigative function."[15] FAC (Dkt. 11) at ¶ 44; *see also Buckley*, 509 U.S. at 273-74 ("A

5  prosecutor's administrative duties and those investigatory functions that do not relate to an

6  advocate's preparation for the initiation of a prosecution or for judicial proceedings are not

7  entitled to absolute immunity."); *Burns v. Reed*, 500 U.S. 478, 494-496 (1991).

8          Defendants here, however, completely ignore ¶¶ 45 to 47 of Plaintiffs' FAC and

9  the specific reasons why Defendants Bogden, Myhre and Ahmed are not entitled to absolute

10  prosecutorial immunity for purposes of Plaintiffs' First and Second Claims for relief; namely:

11  (1) their direction of law enforcement efforts, including, without limitation, the planning and

12  staging of events well before the rogue criminal prosecution ever commenced; and (2) their

13  obtaining of false statements from witnesses / fabricating evidence. *See Buckley*, 509 U.S. at 262-

14  63 (absolute immunity denied "to prosecutors who were sued for fabricating evidence 'during the

15  early states of the investigation' where 'police officers and assistant prosecutors were performing

16  essentially the same investigatory functions'").  Defendants Bogden, Myhre and Ahmed, by

17  engaging in the aforementioned conduct, abandoned their prosecutorial roles, assumed the role of

18  investigators and removed their absolute immunity veils. FAC (Dkt. 11) at  ¶¶ 44-45.

19  Consequently, these Defendants are exposed to the same liability that would attach to any officer

20  or investigator performing similar investigatory functions and/or for their role in procuring /

---

21

22  "Second, the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* (quoting *Buckley*, 509 U.S. at 269).  "Finally, acts undertaken by a prosecutor 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [his] role as an advocate ...' are entitled to the protections of absolute immunity." *Id.* (quoting *Kalina*, 522 U.S. at 126).  Further, as Defendants note, "[t]he intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987).

26  [15]    As the Defendants note, Courts generally "take a functional approach when determining whether a given action is protected by prosecutorial immunity." *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018).  "In applying [that] approach, [courts] distinguish between acts of advocacy, which are entitled to absolute immunity, and administrative 'police-type' acts which are not." *Id.*   In particular, "[t]o qualify as advocacy, an act must be 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Imbler*, 424 U.S. at 430).

fabricating evidence. *Buckley*, 509 U.S. at 273-74.  Defendants' conclusory argument to the contrary is unavailing in light of Plaintiffs well-pled factual allegations – allegations which, for purposes of the instant Motion, are deemed true. *Ashcroft,* 556 U.S. at 678-79.  Thus, Defendants' Motion on this issue must be summarily denied.

### B.  Absolute Immunity Does Not Shield the Government Defendants from Their Non-Testimonial / Pre-Grand Jury Conduct

While it is true that witnesses are absolutely immune from liability for testimony provided at trial[16] and before a grand jury,[17] no such immunity exists to shield those witnesses from their pre-testimonial conduct. *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241-42 (9th Cir. 2015).  Notably, the Ninth Circuit has distinguished "between conspiracies to testify falsely from 'non-testimonial' acts, such as 'tampering with documentary or physical evidence or preventing witnesses from coming forward.'" *Id.* (*quoting Paine v. City of Lompoc*, 265 F.3d 975, 981-82 (9th Cir. 2001); *see also Keko v. Hingle*, 318 F.3d 639, 642-44 (5th Cir. 2003) (declining to extend absolute immunity to forensic examiner's report); *Spurlock v. Satterfield*, 167 F.3d 995, 1001-04 (6th Cir. 1999) (manufacturing a false tape-recorded interview and providing hush money to a would-be witness are not privileged acts).  "As the Sixth Circuit has [also] recognized, police investigative materials have evidentiary value wholly apart from assisting trial testimony – they 'comprise part of the documentary record before the prosecution and defense' and affect charging decisions, plea bargaining, and cross-examination of the investigating officers." *Id.* (*quoting Gregory v. City of Louisville*, 444 F. 3d 725, 741 (6th Cir. 2006); *see also Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 127, 130 (2d Cir. 1997) (recognizing a falsification-of-evidence claim).  When, as here, "defendants have 'dual roles as witness and fabricator,' extending protection from the testimony to the fabricated evidence 'would transform the immunity from a shield to ensure' candor into 'a sword allowing

---

[16]    *See e.g., Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983).

[17]    *See e.g., Rehberg v. Paulk*, 566 U.S. 356, 367-69 (2012).  Notably, however, absolute immunity does not protect a prosecutor who presented false evidence to a grand jury that was "empaneled for investigative purposes." *Milstein,* 257 F.3d at 1008 (knowingly obtaining false evidence for the purpose of *establishing* probable cause to prosecute is unprotected by absolute immunity).

10

them to trample the statutory and constitutional rights of others.'"[18] *Id.* (*quoting Paine*, 265 F.3d at 982-83).

Defendants, by requesting absolute immunity for "all claims" related to their grand jury testimony, egregiously seek to shield their unprivileged, investigatory and non-testimonial conduct, including, without limitation, their willful, knowing and intentional fabrication of evidence. Extending absolute immunity to such conduct here would not only constitute a travesty of justice, it would reprehensibly reward the Government Defendants for "compound[ing] a constitutional wrong." *Id.* (*quoting Gregory*, 444 F.3d at 739). Fairness, equity, justice and the law, however, demand that no such protection be afforded! The Defendants' Motion and Joinder on this issue, therefore, should be summarily denied.

**C.    Plaintiffs' FAC Unequivocally Alleges the Absence of Qualified Immunity To Shield the Government Defendants from Their Personal Participation in and Intentional Violation of Clearly Established Constitutional Rights**

As detailed above, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Koerner v. Cox*, 2011 WL 7021182 at *2 (D.Nev. 2011) (*quoting Twombly*, 550 U.S. at 570). To that end, Plaintiffs FAC here irrefutably details each Government Defendant's personal participation in, and their knowing and intentional violation and deprivation of, Plaintiffs' Constitutional rights – rights which each Defendant knew existed and

_____

[18]    As detailed in Plaintiffs' FAC, "[u]nder the direction, guidance and control of Defendants Ahmed, Myhre and Bogden, Defendants Love, Stover, Brunk and others carefully prepared and fabricated evidence through the investigation stage of the Underlying Action, and knowingly, intentionally and willfully concealed exculpatory evidence regarding the Tier 2 Plaintiffs' innocence and the outrageous, unlawful and unconstitutional aspects of the Government Defendants' conduct related thereto." FAC (Dkt. 11) at ¶ 49. "For example, Defendants Willis, Love, Brunk and Stover, along with other agents and officers of the FBI and BLM, intentionally and systematically fabricated, shaped and 'clarified' evidence and testimony, altered records, withheld evidence, and gave false testimony so that the Government Defendants could falsely accuse, obtain grand jury indictments against, detail, prosecute and convict the Tier 2 Plaintiffs of crimes they did not commit." *Id.* at ¶ 50. Further, "[t]he Government Defendants, at the direction of Defendants Ahmed, Myhre and Bogden, also prepared, instructed, and directed others to prepare fabricated investigative documents ..., thus manufacturing false evidence that would be used in their rogue prosecution against the Tier 2 Plaintiffs in violation of law and said Plaintiffs' constitutional and due process rights." *Id.* at ¶ 64; *see also Id.* at ¶¶ 139.A-G.

1  were being violated at the time when each such Defendant engaged in, or otherwise directed

2  others to engage in, the unconstitutional conduct at issue.

3       **1.    The Absence of Qualified Immunity**

4              Qualified immunity "represents the norm" for government officials

5  exercising discretionary authority (*Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)), including,

6  without limitation, prosecutors for non-advocacy conduct (*Buckley*, 509 U.S. at 273).  While it is

7  true that, qualified immunity protects a federal officer from suit for reasonable mistakes of law

8  and/or fact (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Groh v. Ramirez*, 540 U.S. 551, 567

9  (2004)), no such protection exists when, as here, the official's conduct violates a clearly

10 established constitutional right which a reasonable person would have known. *Anderson v.*

11 *Creighton*, 483 U.S. 635, 640 (1987); *see also Harlow*, 457 U.S. at 818.

12             Generally speaking, "[q]ualified immunity balances two important

13 interests – the need to hold public officials accountable when they exercise power irresponsibly

14 and the need to shield officials from harassment, distraction, and liability when they perform

15 their duties reasonably." *Pearson*, 555 U.S. at 231.   Courts, in evaluating qualified immunity

16 challenges at the pleading stage, generally answer two questions: "(1) whether, '[t]aken in the

17 light most favorable to the party asserting the injury, ... the facts alleged show the [official's]

18 conduct violated a constitutional right'; and (2) whether that right was clearly established.'"

19 *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (*quoting Saucier v. Katz*,

20 533 U.S. 194, 201 (2001), *modified by Pearson*, 555 U.S. at 236).  Although "[c]ourts may

21 'exercise their sound discretion in deciding which of the two prongs of the qualified immunity

22 analysis should be answered first in light of the circumstances of the particular case at hand,"

23 (*Id.*, *quoting Pearson*, 555 U.S. at 236), the Supreme Court has recognized that, at the pleading

24 stage, "the precise factual basis for the plaintiff's claim or claims may be hard to identify."

25 *Pearson*, 555 U.S. at 239., Thus, as several courts have recognized, "the two-step inquiry 'is an

26 uncomfortable exercise where ... the answer [to] whether there was a violation may depend on a

27 kaleidoscope of facts not yet fully developed." *Id.*

28

As detailed below, however, the factual averments contained in Plaintiffs' FAC unequivocally establish: (1) that the Government Defendants conduct violated Plaintiffs' Constitutional rights and (2) those rights were clearly established and well known to the Defendants when they engaged in, or otherwise directed others to engage in, the unconstitutional conduct at issue.

### 2.    The Government Defendants' Personal Participation [19]

Pursuant to § 1983, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Jones*, 297 F.3d at 934. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participated in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Koerner*, 2011 WL 7021182 at *5 (D.Nev. 2011) (*quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743-44.

Plaintiffs' FAC irrefutably details each Defendant's personal participation in the performance of specific unconstitutional acts and/or the direction of others to do so

---

[19]    "A plaintiff's so-called "group pleading" is not fatal to a complaint if it still "gives defendants fair notice of the claims against them." *Tivoli LLC v. Sankey*, 2015 WL 12683801 at * 3 (C.D.Cal. 2015). Thus, when a group of defendants is small, closely related, or engaged in the same wrongful conduct, group pleading can be sufficient to offer fair notice of the wrongs alleged. *Id.* at * 4; *see also In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456, at *3 (N.D.Cal. 2019) ("[W]here the defendants are alleged to be 'related entities' who acted in concert it is entirely possible that the [undifferentiated] allegations of wrongdoing are intended to include each and every entity defendant [and are thus sufficient].")); *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2018 WL 10247483, at *15 (N.D. Cal. Sept. 24, 2018) (finding collective allegations against four Uber-related entities who were corporate affiliates and who participated in the same alleged wrongful conduct sufficient to provide fair notice). The United States and Defendants Bogden, Myhre, Ahmed, Love, Brunk, Stover and Willis, therefore, should not be heard to complain otherwise - especially since each of the individually-named Defendants here engaged in the fabrication, destruction and concealment scheme.

(i.e., factual averments detailing each Defendant's purposeful violation and impairment of Plaintiffs' Constitutional rights).[20]  Defendants, in contesting Plaintiffs' factual averments, selectively identify a few isolated paragraphs from the FAC to advance their cause while ignoring the fully-integrated nature of Plaintiffs' Complaint[21] and the judicial bar which precludes Defendants from challenging same.[22]  To that end, specific instances of each Defendant's individual's conduct includes, without limitation, the fabrication of evidence, obtaining false statements from witnesses, destroying and/or concealing exculpatory evidence which established the Tier 2 Plaintiffs' innocence, intentionally misrepresenting the underlying factual record and the absence of probable cause, and the intentional withholding of *Brady* materials.

Notably, as detailed in Plaintiffs' FAC, the express and conspired purpose of said Defendants' egregious conduct was to falsely arrest, wrongfully detain, surreptitiously hold and maliciously prosecute the Tier 2 Plaintiffs so that their potential release could be used as a bargaining chip in securing a negotiated plea arrangement from one of the Tier 1 defendants,

---

[20]    *See* FAC (Dkt. 11):  ***Bogden*** at ¶¶ 52, 57-59, 61-64, 67, 69-74, 76, 81-82, 92-94, 96-122, 124-127, 124, 134, 139; ***Myhre*** at ¶¶ 52, 57-59, 61-64, 67, 69-79, 81-82, 92-94, 96-130, 134, 139; ***Ahmed*** at ¶¶ 52, 57-59, 61-64, 69-72, 76, 81-94, 96-127, 134, 139; ***Love*** at ¶¶ 50, 53-55, 58-59, 61, 67, 75-76, 92, 96-119, 133.A-R, 139; ***Brunk*** at ¶¶ 50-51, 58-59, 61, 76, 92, 96-119, 139; ***Stover*** at ¶¶ 50, 54-55, 58-59, 61, 76, 84-92, 96-119, 139; and ***Willis*** at ¶¶ 50-52, 69-72, 76-79, 81-83, 92-94, 96-119, 139.

[21]    For example, Defendants selectively identify ¶ 156 of Plaintiffs' FAC for the proposition that Plaintiffs merely made a "conclusory and non-specific allegation that the Government Defendants' individual-capacity conduct was purposefully directed with a discriminatory purpose against them based upon their religious beliefs and status and 'Mormons,' and in express contravention of their equal protection and freedom of expression rights." Motion (Dkt.. 44) at 13:5-7.  Notably, however, Defendants ignore Defendants Love and Stover's animus toward Plaintiffs and members of the LDS faith, as detailed in ¶¶ 133.F and the balance of ¶ 156; Defendants purposeful interference with Plaintiffs' ability to freely practice their faith with loved ones / family members, direction of others to ridicule the Tier 2 Plaintiffs' LDS undergarments (a sacred symbol of their personal commitment to God and their fidelity) as noted in ¶¶ 42, 137 and 139.G.  Similarly, Defendants ignore that Plaintiffs' FAC thoroughly details Defendant Bogden's, Myhre's and Ahmed's direction and control of the underlying investigation and decision to prosecute, along with the other Defendants role in implementing and directing the fabricated evidence regarding same. *See* FN 20.

[22]    Defendants are estopped from relitigating matters that have already been decided against them, including, without limitation, the Government's concealment and non-production of *Brady* materials, the express finding of prosecutorial misconduct and Defendants' due process violations. *See* Footnote 7; *see* also January 8, 2018 Hearing Transcript, Case No. 2:16-cr-046 (Dkt. 3122); FAC at ¶¶ 136.A-BB.

1   most notably, Cliven Bundy.  The Government Defendants conduct was specifically directed

2   toward using the Tier 2 Plaintiffs as pawns in the Defendants' fabricated game against their true

3   target.  To that end, Defendants' knowingly, intentionally and purposefully deprived and/or

4   violated Plaintiffs' First Amendment rights (e.g., to exercise free speech / protest the

5   Government's clandestine activities and impair Plaintiffs' ability to freely exercise their religious

6   beliefs), Second Amendment rights (e.g., designating Plaintiffs "domestic terrorists," placing

7   them on the Prohibited Persons List and precluding them from exercising their right to purchase,

8   keep and bear arms); and their Fourth, Fifth and Eighth Amendment rights (e.g., fabricated

9   indictments, unlawful arrest, rogue detainments, preclusion of bail, false imprisonment and

10  malicious prosecution – without probable cause, and in contravention of their substantive and

11  procedural due process rights).

12                   **3.    Clearly Established Constitutional Rights**

13                   As Defendants concede, "a plaintiff may bring an action under 42 U.S.C.

14  § 1983 to redress violations of his 'rights, privileges, or immunities secured by the Constitution

15  and [federal] laws" by a person ... acting under the color of state law."[23] *Awabdy v. City of*

16  *Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  "To prevail on a § 1983 claim of malicious

17  prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without

18  probable cause, and that they did so for the purpose of denying [him] equal protection or another

19  specific constitutional right." *Id.* (*quoting Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th

20  Cir. 1995)).  "Malicious prosecution actions are not limited to suits against prosecutors but may

21  be brought, as here, against other persons who have wrongfully caused the charges to be filed."

22  *Id. (quoting Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

23  _____

24          [23]     For purposes of Plaintiffs' Second Claim for relief, a *Bivens* remedy is also
        available for Plaintiffs' malicious prosecution claim (*Hartman v. Moore*, 547 U.S. 250, 260-61
25      (2006) and for the already judicially-established *Brady* violations (*Engel v. Buchan*, 710 F.3d
        698, 708 (7th Cir. 2013).  Moreover, due to the false imprisonment and wrongful detention,
26      *Bivens* also expressly recognizes a damages claim for Defendants violations of Plaintiffs' Fourth,
        Fifth and Eighth Amendment rights. *Western Radio Services Co. v. U.S. Forrest Service*, 578
27      F.3d 1116, 1119 (9th Cir. 2009) (*citing Bivens Bivens v. Six Unknown Named Agents of the Fed.
        Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (Fourth Amendment)); *see also Davis v.
28      Passman,* 442 U.S. 228 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980)
        (Eighth Amendment).

1    Further, when, as here, wrongful detention / incarceration are involved, Fourth Amendment

2    deprivation of liberty claims under *Bivens* are also involved. *Manuel*, 137 S.Ct. at 914-15.

3             In an egregious attempt to re-litigate issues that have already been decided

4    against them in the Underlying Action,[24] the Defendants baldly interject "probable cause" as a

5    purported substantive defense to Plaintiffs' § 1983 claim for malicious prosecution. Motion (Dkt.

6    44) at 15:19 to 20:01. By so doing, however, Defendants' ignore the well-pled allegations of

7    Plaintiffs FAC and the establishment of all claim requisites necessary to properly state a claim

8    for relief (elements which vitiate the very arguments advanced by Defendants in their Motion

9    (Dkt. 44) and Joinder (Dkt. 46)). *See* FAC (Dkt. 11). Namely: (1) the absence of probable cause

10   (*Id.* at ¶¶ 80, 82, 83, 93, 96, 104, 107, 139.C, 157, 180.C); (2) Defendants' malicious pursuit of

11   charges against the Tier 2 Plaintiffs (*Id.* at ¶¶ 48, 76, 139.C, 144, 157, 158, 180.C); (3) the

12   termination of the Underlying Action in the Tier 2 Plaintiffs' favor (*Id.* at ¶¶ 7, FN 1, 137); and

13   (4) the damages and injuries sustained by Plaintiffs (*Id.* at ¶¶ 7, 150, 162, Prayer for Relief).

14   Defendants' surreptitious attempt to convert a pleading-stage inquiry into a dispositive summary

15   judgment adjudication (especially when discovery has yet to commence) is completely improper

16   and should be summarily rejected.

17             Notwithstanding the foregoing, a right is "clearly established" when "the

18   contours of the right were already delineated with sufficient clarity to make a reasonable

19   offic[ial] in the defendant's circumstances aware that what he was doing violated the right."

20   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To that end, the Supreme Court and

21   Ninth Circuit have expressly held that when, as here, the prosecution knowingly uses perjured

22   testimony or fabricated evidence to wrongfully charge or otherwise convict someone of a crime,

23   such conduct violates the Constitution. *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Devereaux*,

24   _____

25         [24]    In their Motion, Defendants erroneously summarize the fabricated criminal
      charges asserted by the United States against the Tier 2 Plaintiffs in the Underlying Action.
26    Motion (Dkt. 44) at 16:23 to 20:01. Notably, Defendants ignore Plaintiffs' affirmative
      allegations establishing that the Tier 2 Plaintiffs' arrest warrants and grand jury indictments were
27    "induced by fraud, corruption, perjury, fabricated evidence and other wrongful conduct
      undertaken [by the Defendants] in bad faith"– allegations which directly undermine Defendants'
28    contention that a grand jury indictment creates a presumption of probable cause. *Hobbs v. City of
      Long Beach*, 534 F.Appx. 648, 649 (9th Cir. 2013).

                                    16

263 F.3d at 1074-75 ("the wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious, and *Pyle* sufficiently analogous, that the right to be free from such charges is a constitutional right").

With regard to Defendants' knowing violation of Plaintiffs' rights, when, as here, prosecutors and law enforcement officers knowingly, intentionally and willfully engage in the fabrication or falsification of evidence, subornation and providing of perjurious testimony, and engage in other egregious acts during the 'investigative function [ ] normally performed by a detective or police officer," that conduct irrefutably constitutes a violation of due process and no reasonably competent officer could believe otherwise. *Anderson,* 483 U.S. at 641; *Lanuza v. Love*, 899 F.3d 1019, 1025-26 (9th Cir. 2018) (*citing Buckley*, 509 U.S. at 273).  Based upon the foregoing, Plaintiffs have sufficiently pled the violation of clearly established constitutional rights to overcome Defendants' qualified immunity defense at the pleading stage and, as such, Defendants' Motion (Dkt. 44) and Joinder (Dkt. 46) should be denied.

## IV.    Plaintiffs' Second Claim (*Bivens*) Properly States a Claim for Relief[25]

In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Western Radio Services Co.,* 578 F.3d at 1119 (*quoting Ashcroft*, 556 U.S. at 673).  "Specifically, the Court in *Bivens* allowed a plaintiff to bring a damages action in federal court against individual federal officials for violating the Fourth Amendment, despite the absence of any federal statute authorizing such an action." *Id.* (*citing Bivens*, 403 U.S. at 397).  Since that time, the Supreme

[25]     While it is true that Plaintiffs' FAC asserted a *Bivens* claim for the Government Defendants' violation of Plaintiffs First Amendment rights based upon their status as "Mormons" and in express contravention of their equal protection and freedom of expression rights, (FAC, Dkt. 11, at ¶ 56), Plaintiffs acknowledge that the statutory time frame to pursue this claim expired before Plaintiffs' initial Complaint was filed.  Plaintiffs expressly note, however, that *Bivens* (contrary to Defendants' contention) has been extended to address First Amendment claims. *See e.g.*, *Patterson v. United States*, 999 F.Supp.2d 300, 307-08 (D.D.C. 2013) ("it is well established that where, as here, there is an allegation of retaliatory arrest in the absence of probable cause, the plaintiff has a viable First Amendment claim").

Further, for clarification, Plaintiffs did not, nor are they, asserting an excessive force claim. *See* Motion (Dkt. 44) at 20:2 to 21:11.

17

1    Court has concluded that "an implied right of action for money damages was consistent with

2    congressional intent" for individual federal official's violations of the Fifth and Eighth

3    Amendments. *Id.*; *see also Davis*, 442 U.S. 228 (Fifth Amendment); *Carlson v. Green*,

4    446 U.S. 14 (1980) (Eighth Amendment). The Ninth Circuit has further clarified that a complaint

5    "sufficiently sets forth the elements of a *Bivens* claim by alleging a violation of ... constitutional

6    rights by agents acting under the color of federal law." *Morgan v. United States*, 323 F.3d 776,

7    780 (9th Cir. 2003).

8         In 2007, the Supreme Court provided further guidance and declared "a two-step analysis

9    for determining congressional intent as to the appropriateness of a *Bivens* remedy." *Western*

10   *Radio Services Co.*, 578 F.3d at 1119 (*quoting Wilkie v. Robbins*, 551 U.S. 537, 561-562 (2007)).

11   Namely: (1) "whether there is 'any alternative, existing process for protecting' the plaintiff's

12   interests" and, "if the Court cannot infer that Congress intended a statutory remedial scheme to

13   take the place of a judge-made remedy," (2) "whether there nevertheless are 'factors counseling

14   hesitation' before devising such an implied right of action.'" *Id.* (*quoting Wilkie*, 551 U.S. at

15   550).

16        A.    **Plaintiffs' Second Amendment Claims**

17             For purposes of Plaintiffs' Second Amendment *Bivens* claims, an individual's

18   right to keep and bear arms is a fundamental right guaranteed by the Second Amendment to the

19   United States Constitution. *See McDonald v. Chicago*, 561 U.S. 742, 778 (2010) ("the right to

20   keep and bear arms [is] among those fundamental rights necessary to our system of ordered

21   liberty"); *see also District of Columbia v. Heller*, 554 U.S. 570, 593 (2008).  Although courts

22   have previously declined to extend *Bivens* protections to persons advancing claims based upon

23   the Second Amendment, none of those cases ever raised the discrete issue presented here

24   (i.e., a monetary damages claim based upon a sham criminal prosecution, the Defendants'

25   egregious designation of Plaintiffs as "domestic terrorists,"[26] and Defendants' placement and

26   _____

27        [26]    Section 802 of the USA Patriot Act from 2001 (Pub. L. No. 107-56) defines
domestic terrorism as a dangerous act occurring within a U.S. territory that violates criminal laws

28   in ways that are "intended to intimidate or coerce a civilian population; influence the policy of a
government by intimidation or coercion; affect the conduct of a government by mass destruction,

continued maintenance of Plaintiffs on a "Prohibited Persons List").  Consequently, in answering

the first question, there are no alternative, existing processes for protecting the Plaintiffs'

interests (i.e., awarding monetary damages for the underlying claim).  Therefore, absent judicial

intervention, Plaintiffs will have absolutely no recourse whatsoever to secure damages arising out

of, related to or connected with the Defendants' egregious branding of them as "domestic

terrorists" and the elimination of Plaintiffs' Second Amendment rights.[27]  To that end,

application of the "special factor" considerations[28] fully support the recognition of such an

implied damages remedy here.

     While this case does present a "new context,"[29] as it entirely "different from previous

*Bivens* cases, and its significance mandates recognition.[30]  Importantly, when, as here, innocent

people are victimized by federal officers' transgressions, those victims must be afforded the

ability to obtain monetary relief.  As noted above, Congress did not create any alternative process

for Plaintiffs to recover monetary damages associated with the Government's "domestic

terrorist" branding and placement of them on the Prohibited Persons List - in fact, the legislation

---

assassination or kidnaping."  This Legislation, however, does not contain any provisions for challenging or otherwise appealing the Government's unilateral determination that a person is a "domestic terrorist" and/or their placement on the Prohibited Persons List.

[27]    As detailed in the Third Claim (Declaratory Relief) of Plaintiffs' FAC (Dkt. 11), Plaintiffs are also seeking an Order from this Court restoring their Second Amendment rights, removal of their names from the Prohibited Persons List, and attorneys' fees and costs pursuant to 42 U.S.C. ¶ 1988. FAC at ¶¶ 163-171.

[28]    Although the Supreme Court has not defined the phrase "special factors counseling hesitation," it has instructed that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed" and that "to be a 'special factor counseling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative."*Ziglar v. Abbassi*, 137 S.Ct. 1843, 1857-58 (2017).

[29]    A case presents a "new context" if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbassi*, 137 S.Ct. at 1859.

[30]    "A case might differ in a meaningful way because of ... the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the right of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." *Abassi*, 137 S.Ct. at 1860.

1  provides no recovery mechanism at all for victims of Government transgressions.[31]  Thus, there

2  are no other alternatives or processes by which Plaintiffs can pursue monetary damage claims for

3  this discrete issue.

4          **B.      Plaintiffs' Fourth & Fifth Amendment Claims**

5                  For purposes of Plaintiffs' Fourth and Fifth Amendment *Bivens* claims, the

6  underlying factual record here is predicated upon arrest warrants and indictments procured

7  through fabricated evidence / perjured testimony which resulted in the wrongful detention and

8  incarceration of the Tier 2 Plaintiffs for twenty-three (23) months without due process of law.

9  Because the relevant statute of limitations trigger for these claims was (and is) two years from the

10  date of the District Court's Order dismissing the Underlying Action with prejudice (i.e., on

11  February 7, 2018),[32]  Plaintiffs' Fourth and Fifth Amendment Claims were timely filed and are

12  properly before the Court.

13                  A claim under *Bivens* is "the federal analog to suits brought against state officials

14  under [§ 1983]." *Ashcroft*, 556 U.S. at 675.  The purpose of an implied *Bivens* action "is to deter

15  individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v.*

16  *Malesko*, 534 U.S. 61,70 (2001).  To that end, "[it] is firmly established that a constitutional right

17  exists not to be deprived of liberty on the basis of false evidence fabricated by a government

18  officer. *Zahrey v. Coffey*, 221 F.3d 342, 255 (2d Cir. 2000) (prosecutor not entitled to qualified

19  immunity on *Bivens* claim alleging that he had conspired with other defendants in an

20  investigative capacity to manufacture false evidence for use against plaintiff at trial).[33]

---

21          [31]      "[N]ational security concerns must not become a talisman used to ward off

22  inconvenient claims." *Abassi*, 137 S.Ct. at 861.

23          [32]      *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991) (statute of limitations for

24  B*ivens* claims is the same as that for § 1983 claims); *see also Lanuza*, 899 F.3d at 1034 ("in a
    case involving the submission of fabricated evidence, [a *Bivens* claim accrues] when the case is

25  'fully and finally resolved.'") (*quoting Bradford v. Scherschligt*, 803 F.3d 382, 388-89 (9th Cir.
    2015)); *Perez*, 869 F.2d at 426 (statute of limitations begins "*after the last act allegedly caused*

26  *by the defendants*") (Emphasis Added).

27          [33]      Notably, "[w]hen a police office creates false information likely to influence a
    jury's decision and forwards that information to prosecutors, he violates the accused's

28  constitutional right to a fair trial." *Ricciuti*, 124 F.3d at 130.  "It has also long been established
    that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts

1  "Evidence that a law enforcement officer or government investigator intentionally or recklessly

2  made false statements that proximately caused an individual's false arrest and prosecution can

3  support a *Bivens* claim for damages" under the Fourth and Fifth Amendments.[34] *See e.g.,*

4  *Galbraith,* 307 F.3d at 1126-27 (9th Cir. 2002); *Lanuza*, 899 F.3d at 1034.  As the Ninth Circuit

5  expressly noted in *Lanuza* (a  judicial declaration equally applicable here):

6  > ***At its core, this case is about a lie, and all the ways it was used, over***
   > ***several years, to defraud the courts.  Government attorneys are given***
7  > ***great power, and with that power comes great responsibility.  These***
   > ***attorneys represent the United States, and when they act, they speak***
8  > ***for our government.  "[T]he federal courts have an obligation to set***
   > ***their face against enforcement of the law by lawless means or means***
9  > ***that violate rationally vindicated standards of justice, and to refuse to***
   > ***sustain such methods by effectuating them .... Public confidence in the***
10 > ***fair and honorable administration of justice, upon which ultimately***
   > ***depends the rule of law, is the transcending value at stake.***

11 899 F.3d at 1034-1035 (*citing Sherman v. United States*, 356 U.S. 369, 380 (1958); *Richmond*

12 *Newspapers, Inc. v. Virginia*, 448 U.S. 555, 594 n. 19 (1980)) (Emphasis Added).

13      As noted above, the Supreme Court and Ninth Circuit have expressly recognized a

14 implied private action for damages against federal officers for Fourth and Fifth Amendment

15 violations.  Therefore, Plaintiffs' *Bivens* claims here fall squarely within the context of claims

16 already recognized.  To that end, Defendants' references to the Rules of Criminal Procedure, the

17 Bill Reform Act, the Hyde Amendment and House Rules Committee Amendments as purported

18 "safeguards" is truly disingenuous.  When prosecutors and federal officers purposefully

19 circumvent the law and don't play by the rules, those safeguards are disregarded.  As a result,

20 innocent victims, like Plaintiffs' here, must be afforded the opportunity to pursue judicial

21

22  ─────────────────

23  unconstitutionally." *Zahrey*, 221 F.3d at 355 (*citing Napue v. Illinois*, 360 U.S. 264 (1959); *Pyle,*
    317 U.S. 213; *Mooney v. Holohan*, 294 U.S. 103 (1935).  Based upon this authority, federal

24  officers unequivocally know that if they "fabricate evidence in an investigative role, that violates
    the standards of due process and a resulting loss of liberty is a denial of a constitutional right."

25  *Zahrey*, 221 F.3d at 356.

26      [34]     *See also Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007)
    (police officer who maliciously or recklessly makes false reports to prosecutor may be held liable

27  for damages incurred as proximate result of those reports); *Hervey v. Estes*, 65 F.3d 784, 790 (9th
    Cir. 1995) (government investigators violate Fourth Amendment when they make "deliberately

28  false statements or recklessly disregard the truth" in an arrest warrant affidavit and the
    falsifications were "material" to the finding of probable cause).

1   recourse to redress those wrongs; otherwise prosecutors and federal officers will operate above

2   the law.  Fairness, equity and justice mandate that such a distorted outcome not be condoned and,

3   to that end, the Government Defendants here be held accountable for their egregious misconduct.

4   To rule otherwise would only serve to undermine the public confidence in the fair and honorable

5   administration of justice and allow the transgressors to add further insult to Plaintiffs' injury.

6          **C.    Plaintiffs' Conspiracy Claim**

7                  To state an actionable *Bivens* conspiracy claim, a plaintiff "must establish (1) the

8   existence of an express or implied agreement among the defendant officers to deprive him of his

9   constitutional rights and (2) an actual deprivation of those rights resulting from that agreement."

10  *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).  Plaintiffs here have properly

11  established both requisites.  Namely, the existence of an express or implied agreement between

12  Defendants Bogden, Myhre, Ahmed, Love, Brunk, Stover and Willis to deprive Plaintiffs of their

13  Constitutional rights (memorialized, in part, in their Cattle Impoundment Operation plan and the

14  aforementioned fabrication, destruction and concealment scheme)[35] and Plaintiffs' valid assertion

15  of Second, Fourth and Fifth Amendment *Bivens* claims (*See* §§ IV.A and B, above).

16                 As detailed throughout this Opposition and specifically in footnotes 18 and 20,

17  Defendants Bogden, Myhre, Ahmed, Love, Brunk, Stover and Willis carefully prepared and

18  fabricated evidence through the investigation stage of the Underlying Action, and knowingly,

19  intentionally and willfully concealed exculpatory evidence regarding the Tier 2 Plaintiffs'

20  innocence and the outrageous, unlawful and unconstitutional aspects of the Government

21  Defendants' conduct related thereto." This conspiracy, and the Government Defendants'

---

23    [35]  "A conspiracy to deprive a plaintiff of a civil rights action by lying or concealing
24  evidence might constitute such an actionable deprivation." *Id.* (*citing Dooley v. Reiss*, 736 F.2d
    1392, 1994-95 (9th Cir.), *cert. Denied*, 469 U.S. 1038 (1984).  As detailed throughout this
25  Opposition and specifically in footnotes 18 and 20, Defendants Bogden, Myhre, Ahmed, Love,
    Brunk, Stover and Willis carefully prepared and fabricated evidence through the investigation
26  stage of the Underlying Action, and knowingly, intentionally and willfully concealed exculpatory
    evidence regarding the Tier 2 Plaintiffs' innocence and the outrageous, unlawful and
27  unconstitutional aspects of the Government Defendants' conduct related thereto." This
    conspiracy, and the Government Defendants' unlawful/unconstitutional conduct, was confirmed
28  by BLM Special Agent Wooten and detailed in his Whistleblower Complaint – facts which
    Defendants cavalierly ignore in their moving papers.

1  unlawful/unconstitutional conduct related thereto, was detailed in BLM Special Agent Wooten's

2  Whistleblower Complaint (FAC, Dkt. 11, at ¶¶ 126-133) and discussed, at length, by Chief

3  District Court Judge Navarro during the January 8, 2018 evidentiary hearing (*Id*. at ¶¶ 134-136) –

4  facts which Defendants cavalierly ignore in their moving papers.

5  **V.    Plaintiffs Third Claim (Declaratory Relief) Properly States a Claim**

6       As a general rule, "federal courts have limited authority to grant declaratory relief under

7  the Declaratory Judgment Act." *Bisson v. Bank of Am., N.A.*, 919 F.Supp. 2d 1130, 1139

8  (W.D.Wash. 2013).  Namely, "[i]n a case of actual controversy within its jurisdiction ... any court

9  of the United States ... may declare the rights and other legal relations of any interested party

10  seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v.*

11  *Genetech, Inc.*, 549 U.S. 118, 126 (2007) (*quoting* 28 U.S.C. § 2201(a)).  Consequently, in order

12  to obtain declaratory relief, a claimant must allege the existence of a justiciable controversy as

13  that phrase is interpreted under Article III of the U.S. Constitution.[36] *Id*.  Ultimately, the decision

14  of "[w]hether to exercise jurisdiction under the Federal Declaratory Judgment Act lies within the

15  Court's discretion."*Krave Entertainment, LLC v. Liberty Mut. Ins. Co.*, 667 F.Supp.2d 1232,

16  1237 (D.Nev. 2009) (*citing In re Larry's Apartment, LLC*, 249 F.3d 832, 837 (9th Cir. 2001)).

17       Plaintiffs here have properly alleged a justiciable controversy and, as such, their request

18  for relief under the Declaratory Judgment Act is properly before this Court.[37]  Specifically:

19  (1) "[a] justiciable controversy exists between Plaintiffs and the United States regarding

20  Plaintiffs' egregious placement and continuing existence on the 'Prohibited Persons List' for

21  _____

22  [36]    Stated differently, "whether the facts alleged, under all the circumstances, show
that there is a substantial controversy, between parties having adverse legal interests, of sufficient
23  immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*,
24  549 U.S. at 127.

25  [37]    Plaintiffs, having validly set forth affirmative claims for relief, are well within
their rights to obtain the requested remedy of declaratory relief.  As detailed in ¶¶ 40 and 137 of
26  Plaintiffs' FAC, their request also includes removal from the United States "No Fly List"
(i.e., harassment and embarrassment resulting from the Government Defendants' placement and
27  continued maintenance of Plaintiffs on the "No Fly List" which results in *improper detainment,*
*interrogation, delays and other travel restrictions when they attempt to fly commercially*").  FAC,
28  Dkt. 11, at ¶ 137(i) (Emphasis Added).  Thus, Defendants' suggestion to the contrary is without
merit. Motion (Dkt. 44) at 36:10 to 37:20.

1   purchasing or otherwise acquiring a weapon governed by the Gun Control Act, 18 U.S.C. 922(g)

2   (i.e., based upon fabricated evidence and the Government Defendants' egregious branding and

3   characterization of Plaintiffs as 'domestic terrorists'" (FAC, Dkt. 11, at ¶ 166); (2) "Plaintiffs and

4   the United States respective interests are adverse to one another," (*Id*. at ¶ 167); (3) "Plaintiffs

5   have a legally protectable interest in the outcome of this Court's resolution of said dispute, (*Id*. at

6   ¶ 168); (4) "The issue is ripe for adjudication," (*Id*. at ¶ 169); and (5) the specific impairment of

7   Plaintiffs' Constitutional and statutory rights, and the relief being sought (*Id*. at ¶¶ 170-71).

8       As detailed in Plaintiffs FAC, a justiciable controversy exists between Plaintiffs and the

9   United States regarding Plaintiffs egregious placement and continuing existence on the

10  "Prohibited Persons List" for purchasing or otherwise acquiring a weapon governed by the Gun

11  Control Act, 18 U.S.C. 922(g).  Specifically, "interference with Plaintiffs' right to lawfully

12  acquire and bear arms due to the Government Defendants' placement of Plaintiffs on secret lists

13  which disqualifies and precludes them from purchasing firearms." FAC, Dkt. 11, at ¶ 137(j).

14      Defendants' proffered "exhaustion of administrative remedies" arguments for Plaintiffs'

15  "No Fly List" and "Prohibited Persons List" arguments are unavailing.  Plaintiffs here seek a

16  judicial declaration and damages for the Defendants' egregious placement and maintenance of

17  Plaintiffs on both lists.  Plaintiffs did not brand themselves "domestic terrorists," nor did they

18  place their names on either list – the Defendants did.  Defendants interference with Plaintiffs

19  right to travel and Second Amendment rights to keep and bear arms was, and is, unconscionable.

20  Defendants' suggestion that Plaintiffs submission of an "inquiry" form to a government agency

21  for a decision controlled exclusively by the United States (a Defendant here) will miraculously

22  resolve either problem is not only misguided, it underscores the absurdity of Defendants'

23  argument.  Consequently, Defendants' Motion to Dismiss this Claim should be summarily denied

24  as a matter of law.

25  **VI.   Plaintiffs' Fourth Claim (FTCA) Is Properly Before This Court**

26      Pursuant to 28 U.S.C. ¶ 1346(b), "federal district courts have jurisdiction over a certain

27  category of claims for which the [United States] has waived its sovereign immunity and

28  'render[ed]' itself liable," including, without limitation, "claims that are: [1] against the United

1    States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death

2    [4] caused by the negligent or wrongful act or omission of any employee of the Government [5]

3    while acting in the scope of his office or employment, [6] under circumstances where the United

4    States, if a private person, would be liable to the claimant in accordance with the law of the place

5    where the act or omission occurred." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (*quoting*

6    28 U.S.C. § 1346(b)).  "A claim comes within this jurisdictional grant – and thus is 'cognizable'

7    under § 1346(b) – if it is actionable under § 1346(b)[;] [a]nd a claim is actionable under

8    § 1346(b) if it alleges the six elements outlined above," *Id.* (*citing Loeffler v. Frank*, 486 U.S.

9    549 (1988)).  The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*., is the exclusive

10   remedy for tort actions against a Federal agency (28 U.S.C. § 2679(a)) and against Federal

11   employees who commit torts while acting within the scope and course of their employment

12   (28 U.S.C. § 2679(b)(1)); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976).

13       As the Government concedes, Plaintiffs filed their Administrative Claim with the United

14   States on February 3, 2020. Motion (Dkt. 44) at 40, n. 23.  The United States, having failed to

15   respond thereto within six months, was deemed to have finally denied that claim on August 3,

16   2020. 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within

17   six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a

18   final denial of the claim for purposes of this section."); *see also* Motion (Dkt. 44) at 41:3;

19   FAC (Dkt. 11) at ¶ 182.  Notwithstanding those facts, the Government takes issue with Plaintiffs

20   filing of their initial Complaint on February 6, 2020 and argues that, because Plaintiffs failed to

21   exhaust their administrative remedies, their FTCA claim should be dismissed. Motion (Dkt. 44)

22   at 39:17 to 42:21.  In support thereof, the United States cites several cases where an FTCA claim

23   was the only federal jurisdictional-granting claim[38] – a jurisdictional scenario inapposite to this

24   case.  Namely, as detailed above, Plaintiffs' here have validly exercised this Court's subject

25   matter jurisdiction for purposes of their First, Second and Third Claims for relief.  Further, since,

26   _____

27       [38]    *McNeil v. United States*, 508 U.S. 106, 107; *Jerves v. United States*, 966 F.2d 517, 518-20 (9th Cir. 1992); *Pesnell v. United States*, 64 F.Appx 73, 74 (9th Cir. 2003); *Wiens v. U.S.*

28   *Veterans Hosp.*, No. 17-1672, 2017 U.S. Dist. LEXIS 186386, *4-5 (E.D. Cal. Nov. 7, 2017); *Watson v. United States*, 2017 WL 2904263 (D.Nev. 2017); *Phyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990).

the sixth (6) month limitations period with which to file an FTCA claim (i.e., based upon the United States' presumptive denial date of August 3, 2020) has not yet expired,[39] a dismissal of Plaintiffs' FTCA Claim here would be without prejudice; Plaintiffs would Amend file a Second Amended Complaint reiterating the identical FTCA Claim as appears in the existing FAC; and the parties, procedurally, would be in the identical position they currently occupy. Alternatively, forcing Plaintiffs to file a separate lawsuit and then consolidate same with the pending action similarly serve to undermine Fed.R.Civ.P. Rule 1's mandate of ensuring the "just, speedy and inexpensive determination" of this action. *See Valdez-Lopez v. Chertoff,* 656 F.3d 851, 855-58 (9th Cir. 2011) ("[a] requirement to file a new separate lawsuit and then consolidate it with a prior pending action would undermine the objectives of the exhaustion requirement as recognized by the Supreme Court and ours: saving judicial resources and promoting settlement") (*citing McNeil,* 508 U.S. at 113).[40]

**VII.    Conclusion**

Based upon the foregoing, Plaintiffs' respectfully request that Defendants Motion to Dismiss (Dkt. 44) and Joinder Thereto (Dkt. 46) be summarily denied as a matter of law and, should the Court deem same necessary, for leave to file any amendments to clarify or add additional specificity to their claims / causes of action.

---

[39]     28 U.S.C. § 2401(b) (lawsuit must be commenced within six months after the receipt of a final agency decision); *see also Dyniewicz v. United States*, 742 484, 485 (9th Cir. 1984).

[40]     The Ninth Circuit in *D. L. v. Vassilev*, 858 F.3d 1242, 1247 (9th Cir. 2017), observed that, "in *Valadez-Lopez* this court rejected the very argument that the United States now makes in this case – that the FTCA's exhaustion requirement demands that a plaintiff institute an entirely new action after exhausting his administrative remedies." Notably, the Court concluded that "the exhaustion requirement's goal of "reduc[ing] unnecessary congestion in the courts," *McNeil* , 508 U.S. at 112, n. 8, would be undermined, not served, by a rule requiring FTCA litigants to maintain parallel ... suits, against different defendants but involving the same events ...." *Id*.

1    RESPECTFULLY SUBMITTED this 12<u>th</u> day of November, 2020.

2                                              ♦

                                   Marquiz Law Office
3                                Professional Corporation
                                              ♦
4
                          By: <u>/s/ Craig A. Marquiz, Esq.</u>
5                             Craig A. Marquiz, Esq.
                              3088 Via Flaminia Court
6                             Henderson, NV 89052

7
                          By: <u>/s/ Bret O. Whipple, Esq.</u>
8                             Bret O. Whipple, Esq.
                              900 E. Charleston Blvd.
9                             Las Vegas, NV 89104
                              Counsel for Plaintiffs
10

11

12                      **<u>CERTIFICATE OF SERVICE</u>**

13        The undersigned hereby certifies that, on this 12<u>th</u> day of November, 2020, he

14   electronically filed Plaintiffs' Consolidated Opposition to Defendants Motion to Dismiss (Dkt.

15   44) and Joinder Thereto (Dkt. 46) with the Clerk of the Court with a copy of same electronically

16   served upon the following counsel of record:

17
                             <u>Craig A. Marquiz, Esq.</u>
18                           Craig A. Marquiz, Esq.

19

20

21

22

23

24

25

26

27

28