1  WILLIAM P. BARR
   United States Attorney General
2  Brock Heathcote
   Arizona State Bar No. 014466
3  Special Assistant U.S. Attorney
   Two Renaissance Square
4  40 North Central Avenue, Suite 1800
   Phoenix, Arizona  85004-4449
5  Telephone: (602) 514-7500
   Facsimile:  (602) 514-7693
6  Brock.Heathcote@usdoj.gov
   *Attorneys for Defendants United States, Ahmed,*
7  *Myhre, Bogden, Brunk, Stover, and Willis*

8  Crane M. Pomerantz, Esq.
   Nevada Bar No.: 14103
9  SKLAR WILLIAMS PLLC
   410 South Rampart Boulevard, Suite 350
10 Las Vegas, Nevada 89145
   Telephone: (702) 360-6000
11 Facsimile: (702) 360-0000
   Email: cpomerantz@sklar-law.com
12 *Attorneys for Defendant Daniel P. Love*

13

14            IN THE UNITED STATES DISTRICT COURT

15              FOR THE DISTRICT OF NEVADA

16  Joseph O'Shaughnessy, *et al*.,

17                 Plaintiffs,                  No. 2:20-cv-00268-RFB-EJY

18        v.                                    **DEFENDANTS' CONSOLIDATED**
                                                **REPLY IN SUPPORT OF THEIR**
19  United States of America, *et al.,*         **MOTION TO DISMISS  FIRST**
                                                **AMENDED COMPLAINT (DOC. 44)**
20                 Defendants.

21

22

23

24

25

26

27

28

1

2

# I.    TABLE OF CONTENTS

I.      TABLE OF CONTENTS ................................................................. - 2 -

II.     TABLE OF AUTHORITIES ............................................................  - 3 -

III.    INTRODUCTION................................................................... - 4 -

IV.     SECTION 1983 – FIRST CLAIM ............................................. - 5 -

V.      SECTION 1983 AND *BIVENS* IMMUNITIES .................................... - 9 -

VI.     BIVENS – CLAIM TWO........................................................ - 14 -

VII.    DECLARATORY RELIEF CLAIM THREE................................ - 18 -

VIII.   FTCA CLAIM FOUR ......................................................... - 20 -

IX.     CONCLUSION ..................................................................... - 22 -

X.      CERTIFICATE OF SERVICE........................................................ - 23 -

1

## II.    TABLE OF AUTHORITIES

2

**CASES**                                                                  **PAGE(S)**

3   *Barnes v. AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168 (N.D. Ga. 2017) .................. 4

4   *Chapman v. City of Reno*, 85 Nev. 365, 455 P.2d 618 (1969) ........................ 12

5   *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................ 11

6   *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995) ........................ 17

*Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994) ........................ 13

7   *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018) ........................ 16

8   *Perez v. Seevers*, 869 F.2d 425 (9th Cir. 1989) ........................ 7

9   *Petersen v. Bruen*, 106 Nev. 271 (1990) ........................ 8

10   *S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017) ........................ 11

11   *Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) ........................ 19

12   *United States v. Bingham*, 653 F.3d 983 (9th Cir. 2011) ........................ 12

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ........................ 13

13   *United States v. Navarro*, 608 F.3d 529 (9th Cir. 2010) ........................ 12-13

14   *Valdez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011) ........................ 20

15   *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116 (9th Cir. 2009) .................. 14

16   *Wilson v. Garcia*, 471 U.S. 261 (1985) ........................ 7

17   *Yousefian v. City of Glendale*, 779 F.3d 1010 (9th Cir. 2015) ........................ 13

18   *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ........................ 14

19   **STATUTES**

20   N.R.S. § 11.190(4)(e) ........................ 7

21   8 U.S.C. § 1101(a)(26) ........................ 15

22   18 U.S.C. § 922(g) ........................ 15, 19

21 U.S.C. § 802 ........................ 15

23   42 U.S.C. § 1983 ........................ *passim*

24

25   **RULES**

26   28 C.F.R. § 25.2 ........................ 15

Fed. R. Civ. P. § 12(b)(1) ........................ 4

27

28

Defendants United States of America, Nadia Ahmed, Steven Myhre, Daniel Bogden, Mark Brunk, Rand Stover, Joel Willis, and Daniel Love (hereafter "Defendants"), through counsel, submit the following Consolidated Reply in support of their Motion to Dismiss First Amended Complaint (Doc. 44) and Joinder (Doc. 46) asking the Court to dismiss Plaintiffs' FAC pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.[1]

## III.    INTRODUCTION

Plaintiffs brought many claims in their First Amended Complaint ("FAC"), all of which Defendants moved to dismiss in their opening motion and joinder. *See* Doc. 44 (hereafter, "MTD") and Doc. 46. In their Consolidated Opposition (Doc. 52) (hereafter, "Response")[2] Plaintiffs have not substantively responded to Defendants' arguments for dismissal of the following claims and, accordingly, they should be dismissed. *See, e.g., Barnes v. AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal.")

Section 1983 claim against all Defendants except Bogden and Love due to lack of allegations in the FAC of personal participation;

Section 1983 claim based on acts by Defendants during the federal prosecution;

Section 1983 claim based on acts by Defendants during the "winding down" of the cattle impoundment operation to the extent that alleged "state action" can be distinguished from the pin pulling;

---

[1] Defendant Love filed a Motion for Joinder (Doc. 46), in which he joined in the other defendants' Motion to Dismiss (Doc. 44) and offered supplemental briefing on the issue of qualified immunity. Plaintiffs filed a single consolidated opposition. In light of this, all defendants, including Love, respectfully seek leave of court to file a single consolidated Reply.

[2] All page number references to the "Response" (Doc. 52) and the "MTD" (Doc. 44) are references to the docket page number, not the internal page numbers.

1    Section 1983 and *Bivens* claims against Ahmed, Myhre, and Bogden based on their

2    prosecutorial functions;

3    Section 1983 and *Bivens* claims against all individual defendants based on their

4    Grand Jury testimony;

5    *Bivens* claims based on alleged First Amendment violations;

6    *Bivens* claims based on alleged Eighth Amendment violations; and

7    *Bivens* claims based on alleged excessive force.

8    Plaintiffs did respond to and opposed dismissal of these claims:

9    Section 1983 claim for ordering a "member of the Bundy family" to pull the pin on

10   the cattle pen releasing the impounded cattle, allegedly pursuant to direction by Nevada

11   state authorities;[3]

12   *Bivens* claims against Ahmed, Myhre, and Bogden based on their alleged

13   investigative functions;

14   *Bivens* claims based on alleged Second Amendment violations;

15   *Bivens* claims based on alleged Fourth and Fifth Amendment violations;

16   Claim Three for declaratory judgment regarding the alleged placement of Plaintiffs

17   on a "prohibited persons list" and the "No-Fly List."

18   Claim Four brought under the Federal Tort Claims Act (FTCA).

19                      **IV.    SECTION 1983 – FIRST CLAIM**

20   As an initial matter, Plaintiffs stated in their Response that the Defendants "do not

21   contest" several allegations contained in the FAC about Nevada state authorities. Response

22   at 12.  This is incorrect and Defendants will contest those allegations at the appropriate

23   stage of litigation, if necessary.

24   _____

25            [3] As noted in fn 4 of the Motion to Dismiss, the FAC is vague about whether
     Plaintiffs are alleging the Nevada state authorities directed Bogden and Love *to order a*
26   *member of the Bundy family* to pull the pin, or just directed them to release the cattle.  In
     their Response, Plaintiffs apparently realized the futility of their claim if they left that issue
27   vague so they asserted that the Nevada state authorities did so direct Bogden and Love. See
     MTD at 15 and Response at 12.  The claim still fails.  Notably, Plaintiffs did not sue the
28   Nevada state authorities they now allege in their Response conspired against them.

1        Plaintiffs alleged the Nevada authorities gave orders to United States agencies

2    concerning legal federal operations conducted on federal land, as unlikely as that sounds,

3    giving rise to state action.[4] While the Court may accept the well-pled factual allegations of

4    Plaintiffs as made in the FAC for purposes of this motion, it need not accept aspirational

5    allegations. On several occasions, Plaintiffs assert that the FAC says more than it actually

6    says.

7        Plaintiffs' Response abandoned the Section 1983 (and *Bivens*) claims against the

8    three prosecutor defendants Ahmed, Myhre, and Bogden, based on their actions during the

9    prosecution of the underlying criminal matter. *See* FAC ¶ 149.  Plaintiffs also admitted

10   there can be no Section 1983 (or *Bivens*) liability for the individual Defendants' Grand Jury

11   testimony. Response at 17.  As a matter of law, none of the individual Defendants acted on

12   behalf of the State of Nevada during the federal prosecution.  Plaintiffs also did not address

13   the critical omission identified in Defendants' motion—namely, that Plaintiffs' FAC "did

14   not allege any acts under color of state law by any of the Defendants in the First Claim

15   except by Bogden and Love." MTD at 15.  The First Claim unquestionably fails to state a

16   claim as to all individual Defendants except Bogden and Love, and should be dismissed

17   against Ahmed, Myhre, Willis, Stover, and Brunk for that reason.

18       Furthermore, Plaintiffs did not identify in their FAC or Response any allegations

19   that their constitutional rights were violated by the act of "winding down" the cattle

20   impoundment operation.  Nor have Plaintiffs alleged that the act of having a non-party

21   Bundy relative pull the pin to release the cattle directly violated their constitutional rights.

22   Therefore, Plaintiffs' section 1983 claim is premised entirely on the allegation that Bogden

23   and Love conspired to have a member of the Bundy family pull the pin on the cattle pen,

24   allegedly "so that the DOJ could use that affirmative act to establish the Defendants'

25   fabricated theories" in the federal prosecution of four of these Plaintiffs which had not yet

26   ────────────────

27       [4] In their motion, Defendants cited the Ninth Circuit's statement of facts surrounding
the Bunkerville incident. The Ninth Circuit wrote that the FBI advised BLM to suspend

28   operations and the Nevada Sheriff merely reported to Bundy and his supporters that
operations were being suspended. MTD at 9-10.

begun. *See* Response at 12.

For an act to be considered "under color of state law," the act must be done pursuant to a state authority. But Plaintiffs did not allege anywhere in the FAC that the Nevada state authorities were involved in this alleged conspiracy to *misuse* the evidence to support "fabricated theories" that could be used as the basis for a federal prosecution. Plaintiffs have failed to allege such facts, and thus have failed to state a plausible claim for relief.[5]

In contending that their Section 1983 claim was filed within the applicable statute of limitations, Plaintiffs accuse the Defendants of "materially mislead[ing] the Court" regarding the accrual date of their claims. Response at 14. Without citation, Plaintiffs contend that the "two year statute of limitations does not begin to run (i.e., a claim is not deemed to have accrued) until the Underlying Action was concluded in the Tier 2 Plaintiffs' favor." *Id.*  Because their claim accrued much earlier, it was not timely filed and must be dismissed.

The parties agree that the applicable statute of limitations for a Section 1983 action is two years. *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989); N.R.S. 11.190(4)(e); *see Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that Section 1983 claims "are best characterized as personal injury actions" and upholding application of New Mexico's four year statute of limitations for personal injury actions to that Section 1983 claim); Response at 14 -15 (" . . . it is true that, the applicable statute of limitations in Nevada for a § 1983 claim is two (2) years . . ."). They vary wildly, however, as to when that claim accrued.

Plaintiffs' position that the claim accrued from the dismissal of the indictment against the Tier 2 Plaintiffs misconstrues how to measure the accrual of claims.  NRS 11.190(4)(e) provides that civil actions must be commenced within two years "for injuries to a person . . . caused by the wrongful act . . . of another."  As construed by Nevada courts, "[a] cause of action accrues when *the wrong occurs* and a party sustains injuries for which

---

[5] Notably, Plaintiffs argued in their Response that the statute of limitations on this claim was tolled until the federal prosecution ended, which is an assertion that the act was part of the federal prosecution. Response at 14-15.

1    relief could be sought." *Petersen v. Bruen*, 106 Nev. 271, 273, 792 P.2d 18, 19 (1990)

2    (emphasis added).   Thus, the fundamental question is when the "wrong" giving rise to

3    Plaintiffs' injuries occurred.   This is where Plaintiffs' argument crumbles.

4         As alleged, the Plaintiff's injuries occurred during the infamous Bunkerville

5    standoff in April 2014.  Plaintiffs' concede as much: "the pin removal / cattle release acts

6    (conduct directed and performed under color of Nevada law) *served as the catalyst from*

7    *which all of the Defendants' fabricated criminal theories against the Tier 2 Plaintiffs*

8    *originated*."   Response at 13 (emphasis added).   A common sense reading of the FAC

9    supports this conclusion.  The gravamen of the FAC is that the Defendants implemented

10   an order to induce the pulling of the pin on a cattle pen to use as a predicate for a bogus

11   theory of criminal prosecution, as a result of which the Plaintiffs were wrongfully indicted,

12   arrested, and detained.

13        Significantly, the pin removal and subsequent cattle release are the only events that

14   could possibly be characterized as occurring "under color of state law" - the alleged

15   implementation of orders from Nevada authorities to wind down the Cattle Impound

16   Operation and inducement of "a Bundy" to open the cattle pen.  FAC ¶¶ 66-68 and 146-

17   148; *see* Response at 13 ("Government Defendants . . . were acting in furtherance of the

18   Nevada State representatives directives . . .").   The filing of the Indictment – *federal*

19   prosecutors presenting a *federal* indictment to a *federal* grand jury based on the testimony

20   of *federal* agents – and subsequent arrest and detention were federal acts that cannot fairly

21   be characterized as "acting under color of state law."

22        The Plaintiffs' position – that the statute of limitations begins to run from the district

23   court's dismissal of the indictment against the Tier 2 Plaintiffs – is inherently contradictory.

24   The dismissal of the Indictment – an act *favorable* to the Plaintiffs – cannot possibly

25   constitute the "wrong" on which Plaintiffs' Section 1983 claim is based.  It may, reading

26   the FAC most favorably to the Plaintiffs, constitute *evidence* of the constitutional violations

27   they allege.  But it is not when their alleged injuries *occurred*.  That was in April 2014.

28   Accordingly, the Complaint filed on February 6, 2020 was grossly out of time and must be

1  dismissed.

2  **V.    SECTION 1983 AND *BIVENS* IMMUNITIES**

3  **A.    Absolute Prosecutorial Immunity Applies.**

4  Plaintiffs' Response asserts that the prosecutor defendants, Ahmed, Myhre, and

5  Bogden do not have absolute immunity because they participated in the investigation and

6  fabricated evidence.  Plaintiffs cite paragraphs 45-47 of the FAC in support of their claim

7  that they have properly alleged facts which demonstrate the prosecutors operated outside

8  their traditional function. Response at 16.  Otherwise, Plaintiffs concede prosecutorial

9  immunity should apply to their 1983 and *Bivens* claims against Ahmed, Myhre, and

10  Bogden.

11  Plaintiffs' FAC does not support their argument.  Paragraph 45 simply asserts the

12  cause of action, but does not allege any specific facts.  Paragraph 46 generically alleges

13  that the United States Attorney's Office for the District of Nevada ("USAO") directed

14  enforcement efforts but it fails to specify what the USAO allegedly directed, and there are

15  no specific facts alleged as to any actions by either the USAO, as a whole, or Ahmed,

16  Myhre, or Bogden, individually.  Paragraphs 45 and 46 simply set forth generic allegations

17  that are insufficient for the prosecutor defendants to understand what they are alleged to

18  have done.  This does not withstand scrutiny under *Iqbal*. Similarly, Paragraph 47 generally

19  alleges the prosecutors "knowingly obtain[ed] false statements from witnesses."  This

20  generic statement does not meet pleading muster.[6]

21  Plaintiffs repeatedly alleged in nonspecific terms that the three prosecutors acted as

22  investigators and gave directions to non-attorneys during the investigation. Aside from

23  hyperbole and conclusory allegations, however, the FAC does not actually contain specific

24  factual allegations that any one of these three prosecutors did anything outside of their roles

25  as prosecutors.  Plaintiffs repeatedly harped on the language in the order by Judge Navarro

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[6] Other portions of the FAC echo this allegation with slightly more detail, but were
28  addressed in the Motion to Dismiss. MTD at 18-19.

1    in the criminal trial of non-parties Cliven Bundy and others, as if that order proves their

2    case.  *See, e.g.*, Response at 9.  But that order was entirely based on the prosecutors'

3    litigation decisions concerning disclosure of evidence,[7] and had nothing to do with the

4    Plaintiffs' allegations that the prosecutors performed investigative functions.[8]  Judge

5    Navarro's Order, and the stipulation to dismiss the indictment, concerned issues unrelated

6    to the claims here.  To the extent Plaintiffs wish to make their case about those same issues,

7    it is defeated by absolute prosecutorial immunity.

8              **B.    Qualified Immunity Applies.**

9              First, for purposes of defeating qualified immunity, the Plaintiffs re-package the

10    allegations in the FAC to an over-simplified claim of "malicious prosecution."  Because,

11    so the argument goes, the right not to be maliciously prosecuted under any circumstances

12    is so obvious, this was a clearly established constitutional right about which a reasonable

13    person would have known.  *Id*. at 22 – 23.  But the Plaintiffs actually allege an exceptionally

14    complex – and, at times, difficult to believe – scheme in which a large group of government

15    officials contrived a plan to provoke someone at the Bunkerville standoff to pull the pin on

16    a cattle pen, in order to induce a violent reaction, so that the government could fabricate

17    criminal charges and, thereafter, falsely arrest and wrongfully detain one group of Plaintiffs

18    so that their potential release could be used as a bargaining chip to secure a harsh plea

19    agreement from another group of Plaintiffs.  Response at 13, 21-22.

20              To now suggest that this is merely a case about "malicious prosecution" misstates

21    the wide-ranging allegations of "First, Second, Fourth, Fifth and Eighth Amendment

22    rights" alleged in the FAC.[9]  *See* FAC at ¶ 144.  The Plaintiffs bear the significant burden

23    _____

24              [7] Plaintiffs devoted over four pages of their FAC to summarizing Judge Navarro's
       order.  Doc. 11 at 33-37.  Those four pages included only these few factual allegations:

25    failure to produce *Brady* materials to the defense/withholding of evidence (¶G, I); and
       failure to look for and disclose potentially exculpatory evidence (¶¶ J, L, W, Y).

26              [8] At least nothing in Plaintiffs' FAC says or even implies it did.

27              [9] The phrase "malicious prosecution" only appears twice in the Plaintiffs' fifty-three
       (53) page, one hundred and eighty two (182) plus paragraph complaint.  *See* FAC at ¶¶

28    139(c) and 180(c).

1    of demonstrating that Defendants' conduct was obviously constitutionally deficient "*in*

2    *these particular circumstances*." *S.B. v. County of San Diego*, 864 F.3d 1010, 1016 (9th

3    Cir. 2017). Since there is no adequate point of comparison between the allegations in this

4    case and any other case, the alleged violations were not so obvious to the reasonable law

5    enforcement officer in Defendants' shoes, such that qualified immunity does not apply.

6         In the Response, the Plaintiffs vacillate between asserting malicious prosecution and

7    the use of fabricated evidence in prosecuting the criminal case, both of which provide

8    catchy soundbites, but constitute over-generalizations of their own allegations. Response

9    at 23. They cite *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) for the

10   proposition that the knowing use of *fabricated evidence* violates the Constitution. *Id.* That

11   is correct, as far as it goes, but *Devereaux* does not speak to malicious prosecution at all.

12   In that case, the Ninth Circuit addressed whether allegations that law enforcement officers

13   fabricated evidence in a sexual abuse investigation negated their qualified immunity. 263

14   F.3d at 1074-76. Significantly, the Ninth Circuit granted summary judgment *in favor* of

15   the law enforcement defendants on qualified immunity grounds, concluding that the

16   plaintiff in that case failed to plead adequately that evidence was deliberately fabricated.

17   *Id.* at 1076. *Devereaux* does not render the Defendants' conduct in this case so obviously

18   constitutionally deficient to overcome the strong presumption in favor of qualified

19   immunity.[10]

20   _____

21   [10] Ironically, the *Devereaux* Court also noted that "a *Brady* violation cannot in itself
     support a deliberate-fabrication-of-evidence claim." *Id.* at 1079. Yet Judge Navarro's
22   Order dismissing the indictment for non-production of *Brady* material is at the front and
     center of Plaintiffs' argument – literally. The very first page of Plaintiff's Response quotes
23   liberally, in bolded and italicized text, from that Order. But Plaintiffs paint with too broad
     a brush throughout their Response. Judge Navarro dismissed the indictment for a *Brady*
24   violation – the non-production of material discovery helpful to the defense. Her order did
     not speak to the methods or tactics used during the Bunkerville standoff, malicious
25   prosecution, or the alleged use of fabricated evidence. Plaintiffs repeated references to "re-
     litigat[ing] issues . . . decided against them in the Underlying Action," "rewrite[ing]
26   history," and "the law of the case," are misguided, especially as they relate to alleged
27   conduct that has nothing to do with Judge Navarro's decision to dismiss the criminal case.
     Response at 8, 23.
28

- 11 -

1    Finally, to the extent the Plaintiffs' Fourth and Fifth Amendment *Bivens* claims can

2    be distilled to a simple allegation of "malicious prosecution," their analysis of that theory

3    is flawed.  They accuse the Defendants of "baldly interject[ing] 'probable cause' as a

4    purported substantive defense to Plaintiffs' § 1983 claim."  Response at 23.  Yet in the

5    FAC, they correctly list the elements of a claim for malicious prosecution in Nevada: a

6    Plaintiff must allege that (1) the defendant *lacked probable cause* to initiate a prosecution;

7    (2) malice; (3) the prior criminal proceedings were terminated in his favor; and (4) plaintiff

8    suffered damages.  FAC at ¶ 180(C) (emphasis added); *Chapman v. City of Reno*, 85 Nev.

9    365, 455 P.2d 618, 620 (1969).  Probable cause is inescapably a defense to malicious

10   prosecution.  *Id*.  Far from needlessly interjecting the grand jury's probable cause

11   determination into this case, it is actually a critical factor.

12   As explained in great detail in the Defendants' motion, lack of probable cause is an

13   absolutely essential element of Plaintiffs' claim.  Doc. 44 at 15-20.  Plaintiffs ask this Court

14   to completely ignore the fundamental nature of the charges against the Tier-2 Plaintiffs—

15   conspiracy to threaten, assault, and impede a federal officer, use of a firearm during a crime

16   of violence, and aiding and abetting (Doc. 11 ¶ 41)—and focus its entire analysis of

17   probable cause on the relatively insignificant issue of whether or not the United States

18   employed snipers.  Although they do not say so expressly,  Plaintiffs apparently believe

19   *they were justified in their behavior by the presence of government snipers* and that is why

20   the prosecution failed.  Indeed, the Tier-1 defendants argued to the criminal court that they

21   had a right to claim self-defense based on the evidence of snipers. *See* FAC ¶ 136(I).

22   Plaintiffs' theory is that the prosecutors did not tell the Grand Jury that the government

23   employed snipers and thus the Grand Jury's indictment did not establish probable cause.

24   This theory is legally incorrect because the evidence of snipers was only relevant to a (very

25   weak) self-defense argument.

26   There is no duty to present exculpatory evidence to a grand jury.  *United States v.*

27   *Bingham*, 653 F.3d 983, 999 (9th Cir. 2011) ("[T]he government has no obligation to

28   disclose 'substantial exculpatory evidence' to a grand jury."); *United States v. Navarro*,

1    608 F.3d 529, 537 (9th Cir. 2010) ("[We] have held that prosecutors have no obligation

2    to disclose 'substantial exculpatory evidence' to a grand jury.").  Instead, exculpatory

3    evidence only becomes relevant for purposes of the probable-cause presumption where it

4    completely "obviate[s] probable cause."  *See Haupt v. Dillard*, 17 F.3d 285, 290 n.5 (9th

5    Cir. 1994). It is well settled that the existence of some evidence suggesting self-defense is

6    an issue for the criminal trier of fact; it does not negate probable cause for the initiation of

7    proceedings.  *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015)

8    ("[The] claim of self-defense apparently created doubt in the minds of the jurors, but

9    probable cause can well exist (and often does) even though ultimately, a jury is not

10   persuaded that there is proof beyond a reasonable doubt.").

11        Snipers or not, there was probable cause to charge the Tier-2 Plaintiffs. The Ninth

12   Circuit's description of the events that gave rise to the indictments make that clear.

13
14   > By April 11, [Bureau of Land Management] BLM had seized approximately
     > 400 animals. FBI agents informed BLM that the gathering militia posed a
15   > significant threat to federal officials and private contractors, and advised
     > BLM to cease the operation. The next day, Bundy and his supporters, then
16   > estimated to be more than 200 people, assembled to reclaim Bundy's cattle.
     > Clark County Sheriff Doug Gillespie intervened with Bundy and told the
17   > group that BLM had called off the impoundment. Bundy made additional
     > demands, and when they were not met, told the crowd that it was time to "get
18   > those cattle." The crowd then moved to the entrance of the impoundment site,
     > located in a dry-wash bed under an Interstate 15 bridge. Armed supporters
19   > took up threatening and tactically advantageous positions, pointing guns at
     > BLM officers. Additional supporters arrived, some on horseback, swelling
20   > Bundy's ranks to more than 400 people. The Bundys demanded that the
21   > officers leave. Heavily outnumbered and interested in avoiding bloodshed,
     > federal officials evacuated the impoundment site and left the cattle.
22

23   *United States v. Bundy*, 968 F.3d 1019, 1024 (9th Cir. 2020).[11]

24        The grand jury's probable cause determination is determinative and the Plaintiffs

25   cannot conclusively establish that a reasonable official standing in the place of the law

26

27   _____

28   [11] It does not matter if the Ninth Circuit was stating the facts as reasonably asserted
     by the prosecution.  Those are the facts that should be presented to the Grand Jury, and
     they are the facts that establish probable cause.

1    enforcement officers named as Defendants would have understood that they were violating

2    a clearly established constitutional right.  Plaintiffs have not demonstrated that Defendants'

3    qualified immunity should be abrogated.

4                            **VI.    BIVENS – CLAIM TWO**

5           Plaintiffs acknowledge the statute of limitations expired before their First

6    Amendment *Bivens* claim was filed and that it should be dismissed. Response at 24, n 25.

7    Plaintiffs also concede they did not assert a claim for excessive force. *Id.*  In addition,

8    Plaintiffs do not oppose dismissal of their Eighth Amendment *Bivens* claim with any

9    argumentation in their response.  These claims should be dismissed because they have

10   either been conceded or abandoned by Plaintiffs.

11          **A.    The Second Amendment Claim Fails.**

12          Plaintiffs oppose Defendants' motion to dismiss their Second Amendment *Bivens*

13   claim.  Their argument fails, however, because they have misinterpreted the special factors

14   test articulated in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  Plaintiffs contend their

15   "interest" is whether there is a method of obtaining money damages for a constitutional

16   violation of their Second Amendment rights. Response at 26-27.  The actual test is simply

17   whether some other method exists for protecting a plaintiff's interests in his Second

18   Amendment rights, whether that method includes money damages or not. "Even where

19   Congress has given plaintiffs no damages remedy for a constitutional violation, the Court

20   has declined to create a right of action under *Bivens* when doing so 'would be plainly

21   inconsistent with Congress' authority in this field.'" *W. Radio Servs. Co. v. U.S. Forest*

22   *Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009) *citing to Chappell v. Wallace,* 462 U.S. 296,

23   304 (1983). Moreover, even if no alternative process exists to protect the interest (properly

24   defined) at issue, the inquiry does not end.  In every *Bivens* case, "[t]he question is who

25   should decide whether to provide for a damages remedy, Congress or the courts?" *Abbasi*

26   at 1857 (internal quotations and citation omitted).

27          Plaintiffs have asserted a claim for declaratory relief to restore the Second

28   Amendment rights they allege were taken from them. As noted in **Section V.** below,

Plaintiffs have not alleged any factual basis for their contention that their Second Amendment rights were violated. For *Bivens* purposes, not only do the Plaintiffs fail to allege any facts supporting their claim that their Second Amendment rights have been violated, they also do not identify with any specificity which of the individual defendants are alleged to have violated those rights. In light of the personal liability a *Bivens* claim imposes, Plaintiffs' Second Amendment *Bivens* claim should be dismissed on this ground alone.

Even if Plaintiffs had properly alleged Second Amendment violations by one or more specific Defendants, "special factors" counsel against authorizing a Second Amendment *Bivens* claim which unquestionably presents a new context for *Bivens* purposes. The NICS Index is defined in 28 C.F.R. § 25.2 as "the database, to be managed by the FBI, containing information provided by Federal and state agencies about persons prohibited under Federal law from receiving or possessing a firearm." Exposing every police agency and officer to a Section 1983 or *Bivens* suit whenever they report someone for inclusion in the database would result in an enormous burden on resources and chill law enforcement action at all levels. Many individuals are placed on the NICS index on a weekly basis.[12] The myriad of factors a court would need to take into account in

---

[12] 18 U.S.C. § 922(g) states, it shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

(5) who, being an alien--

 (A) is illegally or unlawfully in the United States; or

 (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));

(6) who has been discharged from the Armed Forces under dishonorable conditions;

(7) who, having been a citizen of the United States, has renounced his citizenship;

(8) who is subject to a court order that--

- 15 -

establishing a framework for Second Amendment *Bivens* suits is seriously unlikely to provide sufficient guidance to officers on the ground.

Furthermore, historic attempts to bring novel *Bivens* claims have overwhelmingly failed. While the Supreme Court has implied a damages remedy under the Constitution for certain alleged Fourth, Fifth, and Eighth Amendment violations, those cases are considered exceptions to a general rule of denial. The court should decline to recognize a Second Amendment *Bivens* remedy, and dismiss Plaintiffs claim.

**B.    The Fourth and Fifth Amendment Claims Fail.**

Plaintiffs apparently believe the criminal case against them teetered atop the alleged falsification of evidence about the existence of snipers, or possibly the alleged order to a member of the Bundy family to pull the pin to release the cattle. These misconceptions are readily apparent in their emphasis of the *Lanuza* case. Response at 28; *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018). In *Lanuza*, an Immigration and Customs Enforcement official forged Lanuza's signature on a Form I-826 and used the forged document as the sole and dispositive piece of evidence to prevent Lanuza from obtaining a cancellation of removal proceedings. *See id*. at 1022. ("[A]t Lanuza's actual immigration hearing, Love submitted an I-826 form agreeing to voluntary departure, purportedly signed by Lanuza on January

---

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

(9) who has been convicted in any court of a misdemeanor crime of domestic violence,

--to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

- 16 -

13, 2000, making Lanuza ineligible for cancellation of removal. Based solely on that I-826 form, the immigration judge issued an order of removal on January 5, 2010.")[13]  The *Lanuza* court held that "a *Bivens* remedy is available" because the government attorney submitted a forged document to the immigration court as a "complete[ ] bar of relief to which [Lanuza] was entitled." It further noted that this constituted a "narrow remedy for such an egregious constitutional violation."  *Id.* at 1034.

While Plaintiffs trumpet the *Lanuza* court's rightful assertion that its case was entirely about a lie—a forged document that was the sole and dispositive piece of evidence against Lanuza in the underlying action – they bury in a footnote the quote from *Hervey v. Estes* that Fourth Amendment violations only occur where false statements are material to a finding of probable cause. 65 F.3d 784, 790 (9th Cir. 1995).  The situation in this case is different. Here, there was clearly probable cause to indict the Tier-2 Plaintiffs with or without any evidence that could be used as a self-defense claim.  Also, the *Lanuza* court saw fit to conduct a lengthy examination of the relevant factors from *Abbasi* because it acknowledged the claim provided a new context for a *Bivens* claim.  Plaintiffs here simply assert their claims do not arise in a new context (Response at 28) but do not even address Defendants' arguments as to why it does arise in a new context, and why a *Bivens* claim would not be appropriate.

### C.    The *Bivens* Conspiracy Claim fails.

Plaintiffs cite to Paragraphs 126 through 136 of the FAC, which contains incomplete portions of the Wooten letter and Judge Navarro's dismissal Order in favor of non-parties Cliven Bundy and others, as evidence of conspiracy, and Plaintiffs wonder why Defendants "cavalierly" ignore those allegations. Response at 29-30.  Defendants did not ignore those allegations. They are included in the relevant facts section of Defendants' motion. MTD at 12-13.  The allegations simply do not support Plaintiffs' position.

The Wooten letter, as summarized at paragraph 133 in the FAC, does not make specific allegations that any of the individual defendants violated any of Plaintiffs'

---

[13] It is a coincidence that the defendant in the *Lanuza* case was also named Love.

constitutional rights, and thus does not support Plaintiffs' *Bivens* claims. To the extent it could be interpreted to be alleging facts about misconduct by the prosecutors involved in the Cliven Bundy prosecution, the nondisclosure of evidence is clearly subsumed within those prosecutors' absolute prosecutorial immunity.[14] As noted in the Motion to Dismiss, those allegations are also insufficient against the investigators because Plaintiffs alleged the prosecutors knew about everything, and an investigator discharges his duty under *Brady* when he passes information to the prosecutor. *See* MTD at 22-23. The Wooten letter cannot do the heavy lifting Plaintiffs hope, and fails to establish, or support, a *Bivens* claim for conspiracy.

Nor does Judge Navarro's Order, as summarized at paragraph 136 of the FAC, create a factual basis for Plaintiffs to allege a *Bivens* conspiracy claim. Judge Navarro found prosecutorial misconduct based on nondisclosure of *Brady* material and dismissed the prosecution of non-parties Cliven Bundy and others for that reason. Judge Navarro's Order, as summarized in the FAC, does not contain even a hint of any facts that could give rise to *Bivens* liability. Like the Wooten letter, Judge Navarro's order concerned issues for which there is absolute prosecutorial immunity.

Indeed, there is nothing in either the Wooten letter or Judge Navarro's Order that could be considered a valid allegation that the Defendants manufactured evidence during the investigation phase. Consequently, neither support Plaintiffs' *Bivens* claim against the non-prosecutorial defendants in this action. For all of these reasons, Plaintiffs' *Bivens* claim for conspiracy also fails.

## VII. DECLARATORY RELIEF CLAIM THREE

As noted in the Motion to Dismiss, the FAC does not allege facts that the Plaintiffs have been prevented from purchasing or possessing firearms. Furthermore, as argued in the Motion to Dismiss, the relevant statute, 18 U.S.C. § 922(g), provides statutory

---

[14] The portion of the FAC discussing the Wooten letter implies that Plaintiffs were also alleging an excessive force claim. But in their Response, Plaintiffs said they were not alleging excessive force. Therefore, the Plaintiffs have abandoned such a claim if they inadvertently alleged one in the FAC.

limitations on the ability of certain categories of persons to ship, transport, receive, or possess firearms or ammunition. Based on the facts alleged in the FAC, Plaintiffs, as they readily admit, do not appear to fall within the statute's purview or proscriptions.  If it is Plaintiff's contention that they are nonetheless improperly included on a § 922(g) list, then it is incumbent upon Plaintiffs to allege some factual basis for that contention for a justiciable controversy to exist.  As the FAC stands now, all seventeen Plaintiffs are asking this Court to issue a judgment that all of them should be removed from a "Prohibited Persons List," without specifically alleging any one of them was included on such a list in the first place, and offer no examples in which any of them have been prohibited from purchasing or possessing a firearm. *See* FAC ¶ 171. The Plaintiffs' have failed to state a claim.

As noted in the Motion to Dismiss, Plaintiffs dropped their "No Fly List" claim when they amended their complaint.  Plaintiffs are now apparently seeking to resurrect that claim in their Response. As with the "Prohibited Persons List" claim, Plaintiffs do not offer a factual basis for their contention they are on a "No Fly List."  A footnote in Plaintiffs' Response refers the Court to paragraphs 40 and 137 of the FAC for factual allegations allegedly supporting their "No Fly List" claim. Response at 30, n 37.  But Paragraph 40 makes the nonspecific allegation that the "Bundy family" was placed on a "No Fly List." Paragraph 137 makes a conclusory allegation about the "No Fly List" but does not allege any actual instances in which any of the Plaintiffs were subjected to the sort of travel difficulties that might ensue from being on such a list. In the motion to dismiss, Defendants cited the holding of a California District Court case that dismissed this kind of claim where no factual basis that plaintiff was being injured was asserted.  Plaintiffs did not cite any authority in opposition.

Nor did Plaintiffs cite any case or statute in opposition to *Shearson v. Holder, 725 F.3d 588* (6th Cir. 2013), which noted that a plaintiff should exhaust administrative remedies through the Department of Homeland Security's Traveler Redress Inquiry Program for jurisdiction to exist in the District Court. *Id.*, at 594. Instead, they request that

1    this court declare that the United States Department of Homeland Security cannot be

2    trusted to properly administer such a claim, and that it is "absurd" to believe they would,

3    so Plaintiffs should not have to file one. Response at 31.  Such a finding would make a

4    mockery of the entire administrative process. Plaintiffs' claim for declaratory relief should

5    be dismissed.

6                              **VIII.  FTCA CLAIM FOUR**

7           With respect to Plaintiffs' FTCA claim, as an initial matter, Defendants did not, and

8    do not, concede that Plaintiffs' administrative claim was timely filed.  *See* Response at 32.

9    Instead, the Defendants reserved the right to argue that the Administrative Claims were not

10   timely served. *See* MTD at 48-49, n. 23.

11          It is clear that Plaintiffs' FTCA claim was prematurely filed and this Court does not

12   have jurisdiction to entertain it. *See* MTD at 47-50.  Plaintiffs do not attempt to argue

13   otherwise.  Rather, Plaintiffs argue the Court has jurisdiction over their other claims and

14   thus the FTCA claim should also be heard.  Plaintiffs did not cite any authority supporting

15   that argument and it has no merit.  The existence of some claims over which this Court

16   may have jurisdiction does not open the door for other claims over which the Court does

17   not have jurisdiction.

18          Plaintiffs then argued this Court has jurisdiction over the FTCA claim based on

19   *Valdez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011).  But in *Valdez-Lopez,* the plaintiff

20   served his administrative claim properly and waited six months to comply with the statute

21   before amending his Complaint to add an FTCA claim against the United States.  The

22   *Valdez-Lopez* defendants claimed plaintiff filed the lawsuit (against other parties and

23   making other claims) before the six months had expired, which was true.  However, no

24   FTCA claim was prematurely filed in *Valdez-Lopez*, nor was the United States a defendant

25   prior to the amendment.  The Ninth Circuit held that the plaintiff's choice to file against

26   the individual defendants before exhausting administrative remedies under the FTCA, then

27   amending his complaint to add an FTCA claim was proper. *Id.* at 857 ("Furthermore,

28   *McNeil* ought not be read as preventing a plaintiff who wishes to state a number of federal

and state law claims against an array of defendants from filing a complaint alleging common facts and amending it after exhaustion to state an additional claim under the FTCA. Such a reading would require undue acrobatics of such a plaintiff, given the different statutes of limitations at play.")  *Valdez-Lopez* is inapposite, and does not state that a plaintiff can file an FTCA claim before exhausting administrative remedies.

For these reasons, and those stated in the Motion to Dismiss, the FTCA claim should be dismissed for lack of jurisdiction.  Plaintiff is correct that such a dismissal should be without prejudice.

1

2                    **IX.    CONCLUSION**

3          For the reasons stated herein, and in the Motion to Dismiss and Joinder, Plaintiffs'

4    FAC against Defendants United States of America, Nadia Ahmed, Steven Myhre, Daniel

5    Bogden, Mark Brunk, Rand Stover, Joel Willis, and Daniel Love should be dismissed.

6

7          RESPECTFULLY SUBMITTED this 23rd day of December, 2020.

8
                                   WILLIAM P. BARR
9                                  United States Attorney General

10
                                   *s/ Brock Heathcotte*
11                                 BROCK HEATHCOTTE
                                   Special Assistant United States Attorney, Acting
12                                 Under Authority Conferred by 28 U.S.C. § 515
                                   *Attorneys for Defendants United States, Ahmed,*
13                                 *Myhre, Bogden, Brunk, Stover, and Willis*

14

15                                 SKLAR WILLIAMS PLLC

16
                                   /s/ Crane Pomerantz
17                                 Crane M. Pomerantz, Esq.
                                   Nevada Bar No.:  14103
18                                 410 South Rampart Blvd., Suite 350
                                   Las Vegas, Nevada 89145
19                                 Telephone:  (702) 360-6000
                                   Facsimile:  (702) 360-0000
20                                 *Attorneys for the Defendant Love*
21

22

23

24

25

26

27

28

1        **X.    CERTIFICATE OF SERVICE**

2        I hereby certify that on December 23, 2020, I electronically transmitted the attached

3    document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4    Notice of Electronic Filing to all CM/ECF registrants.

5

6    Bret O Whipple
     Bret Whipple, Law Office of
7    1100 S. 10th Street
     Las Vegas, NV 89104
8    702 257-9500
     Fax: 702 974-4008
9    Email: admin@justice-law-center.com
     LEAD ATTORNEY
10   ATTORNEY TO BE NOTICED
11

12   Craig A. Marquiz
     Marquiz Law Office, P.C.
13   3088 Via Flaminia Court
     Henderson, NV 89052
14   (702) 263-5533
     Fax: (702) 263-5532
15   Email: marquizlaw@cox.net
     LEAD ATTORNEY
16   ATTORNEY TO BE NOTICED
17

18
     Crane M. Pomerantz, Esq.
19   SKLAR WILLIAMS PLLC
     410 South Rampart Blvd., Suite 350
20   Las Vegas, Nevada 89145
     Telephone:  (702) 360-6000
21   Facsimile:  (702) 360-0000
22   *Attorneys for the Defendant Love*
23

24
     *s/ James Gilmore*
25   United States Attorney's Office

26

27

28

- 23 -